# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUL 1 1 2023

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| SANTOS GOMEZ III,<br>PLAINTIFF. | § |
| VS. | § |
| JESSICA MARSH, in her official<br>capacity And in her individual<br>capacity, | § |
| JOSHUA CASTRO, in his official<br>capacity And in his individual<br>capacity, | § |
| KARA GOUGLER, in her<br>official capacity and in her individual<br>capacity, | § |
| KARON GONZALES, in her official<br>and in her individual capacity, | § |
| MANAGEMENT & TRAINING<br>CORPORATION, in it's official<br>capacity and in it's individual<br>capacity, | § |
| HENERY ANTENCIO, in his official<br>capacity and in his individual capacity, | § |
| WAYNE SCHMOKER, in his official<br>capacity and in his individual capacity, | § |
| JAMES WINCKLER, in his official<br>capacity and in his individual capacity, | § |
| CAPTAIN STETSON FISHER, in his<br>official capacity and in his individual<br>capacity, | § |

**5:23-CV-148-H**

**CIVIL ACTION NO.: 5:23-CV-059-BQ**

**42 U.S.C. § 1983 Civil Rights
Complaint and Claim
Amended**

**BENCH TRIAL REQUESTED**

1

SERGEANT MICHAEL ARNIVAS, in          §
his official capacity and in his individual
capacity,
                    DEFENDANTS.        §

# PLAINTIFF'S AMENDED COMPLAINT

COMES NOW SANTOS GOMEZ III, PLAINTIFF Pro se, and presents the following 42 U.S.C. § 1983 Civil Rights Complaint and Claim, in the name of justice and common sense, to redress civil and/or constitutional deprivations because DEFENDANTS, in bad faith have intentionally, knowingly, arbitrary, and capriciously exaggerate and misinterpreted facts and utterly failed in their obligations to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment by forcing PLAINTIFF to stagnate and regress in his treatment, through no fault of his own, for malicious and sadistic non-medical rationality, as plainly demonstrated by the DEFENDANT'S bad faith acts.

This action places before the Court a law suit complaint involving the conditions of detention in a state detention program for civilly committed sex offenders in violation of the United States Constitution Amendment 1, Amendment 5, Amendment 6, Amendment 8 and Amendment 14 substantive due process requirements. The Civil Rights of Institutionalized Persons Act, 42 U.S.C. 1997 et seq., authorizes the United States Attorney General to investigate and seek equitable relief for a pattern of practice of unconstitutional conditions in State and Local institutions, including those holding Civilly Committed patients. The United States has a substantial interest in ensuring

Courts properly apply the United States Constitution Amendment 1, Amendment 5, Amendment 6, Amendment 8 and Amendment 14 Substantive Due Process requirements of the United States Constitution in this context and PLAINTIFF ask that the United States Attorney General would take such an interest in this Case.

The issue of this law suit concern the administration of TEXAS CIVIL COMMITMENT OFFICE [TCCO] and Management & Training Corporation [MTC] of the TEXAS CIVIL COMMITMENT CENTER [TCCC] in Littlefield, Texas, managed by MTC under contract with TCCO to provide patients, specifically PLAINTIFF to this Case, with an adequate means for recovery and/or release. Detainees are "patients" in that "the issues of civil commitment 'are essentially medical in nature'". MEZA V. LIVINGSTON, 607 F.3D 392, 408, (2010 U.S. App.); PARHAM V. J.R., 442 U.S. 548, 607, 609, 99 S. CT. 2493, 61 L. ED.2D 101 (1979), quoting IN ROGER S., 19 CAL3D 921, 942, 141 CAL. RPTR. 298, 569 P.2D 1286, 1299 (1977).

PLAINTIFF ask this Court to liberally construe this Pro se Complaint.  PLAINTIFF is not a prisoner, within the meaning of 28 U.S.C. § 1915 (h), nor is he incarcerated in a prison. PLAINTIFF is not a pre-trial detainee.  PLAINTIFF is not subject to the screening provisions of the Prisoner Litigation Reform Act of 1995.  The Prisoner Litigation Reform Act of 1995 does not apply to PLAINTIFF or to this Complaint, nor do the standards for prisons and/or prisoners apply to him.  Even though PLAINTIFF is detained in a prison setting, he maintains he freedoms and liberty as a free citizen of the United States of America under the Constitution of the United States of America.

# IMMUNITY OF DEFENDANTS

DEFENDANTS are not Judges, Prosecutors, Probation/Parole Officers, Public Defenders or others performing any judicially acts and therefore are not protected from Absolute Immunity.

A State Official may be sued in their Official Capacity for Injunctive Relief, without violating the Eleventh Amendment. EX PARTE YOUNG, 209 U.S. 123, 159,160, 28 S. CT. 441, 52 L. ED.714 (1908) In this Case, because TCCO and MTC, and its employees, play such an integral role in determining and executing PLAINTIFF'S protected civil liberty interests to progress and/or the restriction of progress in Tier Levels and in medical issues, PLAINTIFF may in fact seek injunctive relief against all implicated DEFENDANTS. They fail to enjoy any Eleventh Amendment Immunity.

DEFENDANTS, acting in bad faith, are being sued in their official government capacities as government agents for Injunctive and Declaratory Relief's and in their individual capacities for money damages.

DEFENDANTS performing executive/administrative functions occurring in the course of executing government duties which past and present conduct has and does violate "clearly established" constitutionally protected rights of PLAINTIFF, Qualified Immunity fails. DEFENDANTS did not and do not act in good faith. DEFENDANTS past and present conduct was and is in significant and gross violation of PLAINTIFF'S protected rights and DEFENDANTS were fully aware, or at least should have been aware of such significant violations. PLAINTIFF contends DEFENDANT'S conduct was and is intentional, malicious, arbitrary, capricious, sadistic and plainly incompetent non-medical rationality, as plainly demonstrated by their acts.

# INTRODUCTION

PLAINTIFF SANTOS GOMEZ III is a patient, being involuntarily detained at TCCC. DEFENDANTS have been tasked with his health care and the protection of his federally protected civil rights.

This civil rights suit, filed in response to DEFENDANT'S intentional, malicious, arbitrary, capricious, sadistic plainly incompetent non-medical rationality and knowing, as plainly demonstrated by their acts, misinterpretation of the facts and the retaliation and in violation of the United States Constitution Amendment 1, Amendment 5, Amendment 6, Amendment 8 and Amendment 14 substantive due process requirements, depriving PLAINTIFF, involuntarily committed by TCCO of constitutional and/or civil rights, challenges DEFENDANT'S implementation of Texas Health & Safety Code § 841 in a way that involuntarily hospitalizes PLAINTIFF without adequate means for any release or recovery.

Effectively, TCCO and MTC employees are hospitalizing and treating PLAINTIFF under Texas Health & Safety Code § 841 without any adequate process for PLAINTIFF to progress in effective treatment and to be released from hospitalization safely and in reasonably good health. As demonstrated by DEFENDANT'S intentional, malicious, arbitrary, capricious, sadistic plainly incompetent non-medical rationality and knowing misinterpretation of the facts and the retaliation, as plainly demonstrated by their acts and, violation of the United States Constitution Amendment 1, Amendment 5, Amendment 6, Amendment 8 and Amendment 14 substantive due process requirements, PLAINTIFF has a very minimal chance of progressing past Tier Four and out of hospitalization.

The fundamental goal and intention of effective treatment is always "recovery". Hospitalization is an extreme last and "temporary" resort. As demonstrated by their acts, DEFENDANTS are treating PLAINTIFF to confinement rather than treating to a cure, or at least to a point of healthy stability for effective release from care. Without any effective means for release and recovery, DEFENDANTS are punishing PLAINTIFF rather than treating him. This is an unmistakable violation of PLAINTIFF'S Constitutional and/or Civil Rights.

# PARTIES

**PLAINTIFF:**

PLAINTIFF, SANTOS GOMEZ III, is a patient at TCCC in Littlefield, Texas. PLAINTIFF was civilly committed under Texas Health & Safety Code § 841 after completing his prison sentence and is thus subject to effective Statutory and Constitutional "supervision and treatment" by TCCO and MTC. Since at least 2021, DEFENDANTS have wrongfully failed in their Statutory and Constitutional obligations to provide PLAINTIFF effective supervision and/or treatment, forcing PLAINTIFF, through no fault of his own, to be stagnate and even regress in substandard treatment for intentional, malicious, arbitrary, capricious, sadistic plainly incompetent non-medical rationality's and knowing misinterpretation of the facts, as plainly demonstrated by their bad faith acts, in the retaliation and the violation of PLAINTIFF'S United States Constitution Amendment 1, Amendment 5, Amendment 6, Amendment 8 and Amendment 14 Substantive Due Process requirements. DEFENDANTS intentionally, maliciously, arbitrarily, capriciously, misinterpreted facts and sadistic plainly and utterly failed in their obligations to fully and effectively return PLAINTIFF back in the progress

of his treatment, with harassment(s), fallacious assertions and they continue their intentional stagnation of PLAINTIFF'S progress in treatment [restoring PLAINTIFF back to "A.G.E. Panel" consideration], generated prior and after PLAINTIFF being investigated and cleared of any possible prosecution and/or wrong doings, by state authorities for violation of statutory law, even in the face of two Texas State District Court ORDERS to do so.  DEFENDANTS have and continue to force PLAINTIFF to undergo harassing and unnecessary substandard treatment modalities.  DEFENDANTS have knowingly and intentionally made unhealthy treatment decisions and overridden healthy professional decisions, by licensed medical/treatment professionals, specifically MTC administration and security staff and TCCO administration and staff who are named DEFENDANTS in this Case.  As a result of the named DEFENDANT'S wrongful acts, PLAINTIFF has and continues to languish in institutional care without effective and healthy progress in his treatment care, through no fault of his own.  As a result of DEFENDANT'S wrongful acts, PLAINTIFF has lost employment, his relationships with his family, support team and treatment team have significantly suffered.  PLAINTIFF has lost years of progression in treatment and out of his life.

**DEFENDANTS:**

DEFENDANT JESSICA MARSH – is the Deputy Director of TEXAS CIVIL COMMITMENT OFFICE, acting under color of state law is being sued in her official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.  DEFENDANT JESSICA MARSH can be served with process through her Attorney of record:  Texas Office of Attorney General, 209 W. 14th St., P.O. Box 12548, Austin, Texas    78711-2548,

7

www.texasattorneygeneral.gov.

DEFENDANT JOSHUA CASTRO – an Operations Specialist for the TEXAS CIVIL COMMITMENT OFFICE, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.   DEFENDANT JOSHUA CASTRO can be served with process through his Attorney of record:  Texas Office of Attorney General, 209 W. 14th St., P.O. Box 12548, Austin, Texas   78711-2548, www.texasattorneygeneral.gov.

DEFENDANT KARA GOUGLER – the Director of Case Managers for the TEXAS CIVIL COMMITMENT OFFICE, acting under color of state law is being sued in her official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.   DEFENDANT KARA GOUGLER can be served with process through her Attorney of record:  Texas Office of Attorney General, 209 W. 14th St., P.O. Box 12548, Austin, Texas   78711-2548, www.texasattorneygeneral.gov.

DEFENDANT KARON GONZALES – is a Case Manager for the TEXAS CIVIL COMMITMENT OFFICE, acting under color of state law is being sued in her official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.   DEFENDANT KARON GONZALES can be served with process through her Attorney of record:  Texas Office of Attorney General, 209 W. 14th St., P.O. Box 12548, Austin, Texas   78711-2548, www.texasattorneygeneral.gov.

DEFENDANT MANAGEMENT & TRAINING CORPORATION – a private entity under contract with TEXAS CIVIL COMMITMENT OFFICE to operate the TEXAS CIVIL COMMITMENT CENTER facility, acting under color of state law is being sued in it's official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally. DEFENDANT MANAGEMENT & TRAINING CORPORATION can be served with process through it's Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas, Texas 75201 (214) 722-7100.

DEFENDANT HENERY ANTENCIO – was, at the time, Facility Administrator for Management & Training Corporation at TCCC, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally. DEFENDANT HENERY ANTENCIO can be served with process through his Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas, Texas 75201 (214) 722-7100.

DEFENDANT WAYNE SCHMOKER – [was, at the time Assistant Facility Administrator for Management & Training Corporation at TCCC, now] Facility Administrator for Management & Training Corporation at TCCC, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally. DEFENDANT WAYNE SCHMOKER can be served with process through his Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas, Texas 75201 (214) 722-7100.

DEFENDANT JAMES WINCKLER –Facility Chief of Security, for Management & Training Corporation at TCCC, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.   DEFENDANT JAMES WINCKLER can be served with process through his Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas, Texas 75201  (214) 722-7100.

DEFENDANT CAPTAIN STETSON FISHER – Security Captain, for MANAGEMENT & TRAINING CORPORATION at TCCC, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.   DEFENDANT CAPTAIN STETSON FISHER can be served with process through his Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas,  Texas 75201  (214) 722-7100.

DEFENDANT SERGEANT MICHAEL ARNIVAS – was a Security Sergeant, for MANAGEMENT & TRAINING CORPORATION at TCCC, acting under color of state law is being sued in his official capacity for Declaratory and Injunctive Relief and individual capacities for Compensatory and Punitive Damages, jointly and severally.  DEFENDANT SERGEANT MICHAEL ARNIVAS can be served with process through his Attorney of record: LEWIS, BRISBOIS, BISGAARD & SMITH, LLP – Attorney Nicole Ordonez, 2100 Ross Ave., Suite 2000, Dallas,  Texas 75201  (214) 722-7100.

## JURISDICTION & VENUE

This Court has Federal Question Jurisdiction over this 42 U.S.C. § 1983 action pursuant to 28 U.S.C. §§ 1331 and 1343.

Venue is proper in this Court, pursuant to 28 U.S.C. § 1391 (b) (1) as at least one DEFENDANT resides in the Northern District of Texas – Lubbock Division and at least one DEFENDANT was acting in their official capacity under the color of state law.

## PREVIOUS LAW SUIT

PLAINTIFF has never before filed a civil suit, nor has there been previous litigation regarding any of these issues described in this suit.

## STATEMENT OF FACTS

PLAINTIFF was civilly committed as being a sexually violent predator on August 17, 2016 in the 103rd Judicial District Court of Cameron County, Texas. [In Re The Civil Commitment of Santos Gomez III, Cause Number:  2016-DCL-00365]  [EXHIBIT - 01 ] Copy of Judgement and final Order

PLAINTIFF has been a patient at TCCC. Managed by MTC, in Littlefield, Texas since 2017.  PLAINTIFF is statutorily subject to biennial Court Review to determine his status in the treatment program at TCCC by MTC.  TEXAS HEALTH & SAFETY CODE – Subchapter F Commitment Review § 841.102

## PLAINTIFF'S CLAIMS

PLAINTIFF is suing DEFENDANTS in their official and individual capacity, under color of state law, as a Pro se litigant and would ask the Court to construe liberally and hold to a less stringent standard than pleadings drafted by lawyers.  If the Court can

11

reasonably interpret PLAINTIFF'S Pro se Pleadings to state a cognizable Claim on which PLAINTIFF could prevail, this Court should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence structure, or PLAINTIFF'S unfamiliarity with Pleading requirements. HAINES V. KERNER, 404 U.S. 519, 92 S. CT. 594, 30 L.ED.2D 652 (1972); BOAG V. MACDOUGALL, 454 U.S. 364, 102 S. CT. 594, 70 L.ED.2D 551 (1982)   PLAINTIFF contends this Court must view all allegations in this Complaint as being true.  COPPER V. PATE, 84 S.Ct. 1733, 378 U.S. 546, 12 L.Ed.2d 1030 (1964)

DEFENDANTS have and are acting in bad faith with conduct with misinterpreted facts that was and is utterly intentional, knowingly, malicious, arbitrary, capricious, exaggerated, sadistic and plainly incompetent non-medical rationality, as plainly demonstrated by their acts.   DEFENDANTS have and are utterly failing in their obligations to provide PLAINTIFF statutorily or constitutionally effective "treatment" and forcing PLAINTIFF, through no fault of his own, to stagnate and regress in his treatment for malicious, arbitrary, capricious, exaggerated, sadistic and plainly incompetent non-medical rationality.  DEFENDANTS set PLAINTIFF to redo years of treatment, of which PLAINTIFF already passed through before.  DEFENDANTS have meted out PLAINTIFFS supervision and treatment punitively rather than based upon sound professional medical and/or professional local law enforcement judgements.   PLAINTIFF has suffered significant grossly painful, malicious and sadistic harms, physically, mentally and emotionally as a result of the direct and indirect bad faith acts of all the DEFENDANTS in this Case.  However, PLRA provision barring "prisoners" from bringing suit for mental or emotional injury without prior showing of physical injury fails in

PLAINTIFF'S Complaint because the PLRA "physical injury" provision only applies to confined prisoners, which PLAINTIFF is not.  KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998)

## FACTUAL ALLEGATIONS

Since 2016, PLAINTIFF had a retained Pro Bono private Attorney, separate from State Counsel for Offenders.  PLAINTIFF'S private Attorney was retained exclusively for personal criminal issues, other than his Civil Commitment issues.

Plaintiff progressed from Tier Three to Tier Four on July 13, 2020.  PLAINTIFF worked very hard to complete all the Tier Four Curriculum Assignments.  As PLAINTIFF came close to the end of his Tier Four, MTC Clinical Therapist Mr. Gill [Not a Defendant] – PLAINTIFF'S Therapist at the time, and DEFENDANT KARON GONZALES, his TCCO Case Manager began to discuss with PLAINTIFF about his progressing in his supervision and treatment to transfer to A.G.E./Tier Five status.

On July 19, 2021, PLAINTIFF was a "model Tier Four".  PLAINTIFF was totally complete with all the Tier Four Curriculum Assignments.  PLAINTIFF had all prerequisites of appropriate approvals and recommendations submitted to his TCCO Treatment Team, Mr. Gill and DEFENDANT KARON GONZALES to progress to Tier Five and A.G. E. {EXHIBIT - 02]  TCCO Supervision & MTC Treatment Reports During This Time.  This was a very happy and zealous time for PLAINTIFF.  PLAINTIFF passionately inquired of his MTC Clinical Therapist, Mr. Gill and his TCCO Case Manager, DEFENDANT KARON GONZALES of what else he could do to move forward and progress to Tier Five/A.G.E. status.

In late July/early August 2021, PLAINTIFF in a chair.  When he stood up, he felt a

sudden excruciating pain coming from his left knee.  Prior to this incident, PLAINTIFF had never had any pain or problems with his left knee.

On August 23, 2021, DEFENDANT KARON GONZALES, without any basis or investigation, unsubstantially and blindly alleged PLAINTIFF was having an inappropriate affair with his private retained Attorney and confiscated his cell phone. DEFENDANT KARON GONZALES' rational for confiscating PLAINTIFF'S cell phone was because he was contacting his private retained Attorney on his cell phone.  His private retained Attorney was and still is on PLAINTIFF'S TCCO accepted and approved contact of entity, attorneys, public officials and Courts/Courthouses.

DEFENDANT KARON GONZALES failed to provide any forms and/or any documents serving as "NOTICE" or any explanation of PLAINTIFF'S rights from the confiscation of his cell phone.  DEFENDANT KARON GONZALES even failed to write an "Incident Report" on this matter.

On August 25, 2021, PLAINTIFF'S private Attorney contacted TCCO Administration in Austin, Texas and confirmed that PLAINTIFF was and is in fact her Client and she was and is representing him on legitimate personal Attorney/Client personal issues aside from his Civil Commitment issues.

On August 30, 2021, DEFENDANT KARON GONZALES, with a great and significant disdain display of an attitude, returned PLAINTIFF'S cell phone to him.  When PLAINTIFF walked into DEFENDANT KARON GONZALES' office cubicle, she very angrily told PLAINTIFF: "DO NOT SIT DOWN!!!  HERE IS YOUR PHONE!!!  I WILL SEE YOU WHEN I CALL FOR YOU!!!"

PLAINTIFF contends DEFENDANT KARON GONZALES' behaviors in this issue to

14

be a form of harassing and retaliatory bad faith and intentional, knowing, arbitrary, and capricious exaggerated and misinterpreted facts and utter failure in her obligations to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment in both her official and individual, under color of state law, capacities.

Since that time, DEFENDANT KARON GONZALES' relationship with PLAINTIFF has been significantly toxic, fearful and definitely unhealthy.  DEFENDANT KARON GONZALES has and continues to harass and retaliate against PLAINTIFF.  For example:

- On August 23, 2021, five MTC Security Officers suddenly and forcefully entered PLAINTIFF'S living quarters and performed a non-random search of all his property, but not his roommate's property;

- Arbitrarily and capriciously, with no authority or basis, removed all PLAINTIFF'S TCCO approved collateral contacts just prior to DEFENDANT KARON GONZALES leaving the TCCC facility for a couple of weeks before the upcoming holidays;

- Arbitrarily and capriciously, with no authority or basis, denied and delayed PLAINTIFF'S, lied his family/Treatment Support Team about PLAINTIFF having and using a contraband/illegal cell phone, causing undo stress between PLAINTIFF and his family.

- Arbitrarily and capriciously, with no authority or basis, utterly denied PLAINTIFF, no less than three times to access Courts – with his Attorney.  [EXHIBIT - 03] Copy of Communications – 10/18/21 & 12/13/21.

- It is common practice for Tier Four's to contact their TCCO Case Manager through a call on their cell phone.  Since August 30, 2021, DEFENDANT KARON GONZALES has demanded that PLAINTIFF never call her or message her for anything.  To distance herself from PLAINTIFF, DEFENDANT KARON GONZALES has ordered PLAINTIFF to exclusively contact her only through an MTC TCCC Communication Form.  Such bad faith acts on the part of DEFENDANT KARON GONZALES seems to indicate to PLAINTIFF that she is somewhat effectively making herself harder for PLAINTIFF to have needed effective

access to his TCCO Case Manager and has become unreliable
as an effective member of his "Treatment Team".

On August 30, 2021, PLAINTIFF sent in the first of a multitude of MTC TCCC Medical Sick-Call forms concerning daily great and significant constant chronic pain in his left knee, causing certain significant immobility and significant life-style changes in his abilities to run, exercise, and work effectively.

On September 09, 2021, PLAINTIFF was seen and examined by an MTC TCCC Medical Clinic Provider. On or about September 30, 2021, PLAINTIFF was given a second examination by an MTC TCCC Medical Clinic Provider. Medical notes indicated that "Xrays were negative".

On October 13, 2021, Dr. Guy told PLAINTIFF to buy his own meds for the constant chronic pain in his left knee. Dr. Guy refused to evaluate or prescribe any pain meds. On a scale of 1 [being low] to 10 [being high], PLAINTIFF was experiencing about a 9 of great significant constant pain.

In spite of the above issues, PLAINTIFF had been living and measuredly enjoying a positive, healthy and pro-social life as a patient in TCCC who had been progressing quite extremely well in his treatment.

October 23, 2021, was PLAINTIFF'S daughter's 17th birthday. Regretfully, Plaintiff's daughter is a victim of PLAINTIFF for which he had been convicted of and also civilly committed. As such, PLAINTIFF is grossly acutely knowingly statutorily barred from any form of direct or even indirect contact with any victim. Texas Health & Safety Code § 841. 082 (a) (2)

On October 23, 2021, grief stricken, missing his daughter and significantly

suffering with negative emotional pain, due to the nature of this particular day, PLAINTIFF felt a significant strong urge and destitution to find appropriate emotional relief from his grievous painful feelings. As a manner of personal self-soothing and appropriately coping with his emotions, PLAINTIFF sent, what became for PLAINTIFF, a very emotional proxy text on his phone to his mother and sister which referenced the victim's (his daughter's) birthday. There was never any indication or request to forward this message.

On November 04, 2021, DEFENDANT KARON GONZALES discovered PLAINTIFF'S text and immediately contacted law enforcement at the Lamb County, Texas Sheriff's Department and/or Lamb County, Texas District Attorney's Office to report the text and request a warrant against PLAINTIFF for allegedly attempting to make direct or indirect contact with one of his daughters, a victim of one of his offenses, in violation of Texas Health & Safety Code § 841 082 (a) (2).

At the same time, without any investigation, DEFENDANT KARON GONZALES drafted and filed an undated TCCO Incident Report which also alleged PLAINTIFF violated TCCO Rule #4, which states:

> "I agree to not contact, directly or indirectly, any victim of my offense. I understand that doing so may result in criminal prosecution."

PLAINTIFF was also, on the same day, placed into "Solitary Confinement" pending the criminal investigation, potential criminal prosecution and the TCCO disciplinary allegation of TCCO Rule #4 – Contacting the Victim.

Investigator Deputy Weston, of the Lamb County, Texas Sheriff's Department

quickly investigated the allegations of DEFENDANT KARON GONZALES' false and baseless allegations.  As a result, PLAINTIFF was now facing a state felony criminal investigation and possible state felony criminal charges, which would carry an expressive sentence of twenty-five years to ninety-nine years or LIFE in TDCJ-ID.

On November 10, 2021, while still under the state felony criminal investigation, was not given any form of any notice of "CHARGES" or "NOTICE" of a pending MTC/TCCC BMR Disciplinary Hearing or notification of his "RIGHTS" as the DEFENDANT in a pending Disciplinary Hearing.  Without knowing in advance, PLAINTIFF was brought out of the MTC/TCCC Solitary Confinement and taken before an MTC/TCCC BMR Disciplinary Hearing for the alleged violation of TCCO Rule #4.  Acting under color of state law, in his official and individual capacities, DEFENDANT JAMES WINCKLER, acting as "Committee Chair", knowingly proceeded with what PLAINTIFF terms as an arbitrary, capricious, intentionally malicious and sadistic MTC/TCCC BMR Disciplinary Hearing, exaggerating and misinterpreting facts and utterly failing in his statutory and protected federal constitutional obligations to provide PLAINTIFF with proper effective treatment.  PLAINTIFF contends effective due process requires an opportunity to be heard at a meaningful time and in a meaningful manner; due process must be afforded before the deprivation of life, liberty, or property.  ARMSTRONG V. MONZO, 85 S.Ct. 1187, 380 U.S. 545, 552, 14 L.Ed.2d 62 (1965)

DEFENDANT JAMES WINCKLER'S determination of guilt and the intervention [punishment] – "7 day wing restriction w/time served"; "30 day dorm restriction" and "180 day package ineligibility", all while PLAINTIFF was still officially under the

criminal investigation for the exact same charge/incident were wrongful unfounded acts which deprived PLAINTIFF of protected statutory and federal constitutional guaranteed rights perpetrated in DEFENDANT JAMES WINCKLER'S official and individual capacities under the color of state law.

Upon completion of the investigation on November 10, 2021, after the deficient MTC/TCCC BMR Disciplinary Hearing, Investigator Deputy Weston, of the Lamb County, Texas Sheriff's Department came to TCCC and informed PLAINTIFF that the Lamb County, Texas District Attorney's Office concluded, beyond a shadow of a doubt, there was no basis for any criminal charges against PLAINTIFF.

PLAINTIFF contends, on November 15, 2021, acting under color of state law and in her official and individual capacities, DEFENDANT KARON GONZALES, seemingly out of malice from past fallacious allegations, such as:

- PLAINTIFF having an inappropriate relationship with his own attorney;

- PLAINTIFF having an inappropriate relationship with staff;

- PLAINTIFF being in possession of an illegal/contraband phone;

- PLAINTIFF getting DEFENDANT KARON GONZALES in trouble; and

- DEFENDANT KARON GONZALES' false TCCO Incident Report.

Even though PLAINTIFF was found innocent of the allegations by the Lamb County, Texas District Attorney's Office, arbitrarily and capriciously voted to reduce PLAINTIFF'S Tier Four to a Tier Two, alleging:

"The Treatment Team agreed for Mr. Gomez to be demoted from a Tier Four to a Tier Two, with Tier One privileges, due to attempting to reach out to his daughter the (victim) though two of his approved collateral contacts by text message."

On November 16, 2021, PLAINTIFF sent/filed his first "MTC – TEXAS CIVIL COMMITMENT CENTER GRIEVANCE FORM Step 1", concerning being taken before an MTC/TCCC BMR Disciplinary Hearing for the alleged violation of TCCO Rule #4. Acting under color of state law, in his official and individual capacities, DEFENDANT JAMES WINCKLER, acting as "Committee Chair" knowingly proceeded with what PLAINTIFF terms as an arbitrary, capricious, intentionally malicious and sadistic MTC/TCCC BMR Disciplinary Hearing, exaggerating and misinterpreting facts and utterly failing in his statutory and protected federal constitutional obligations to provide PLAINTIFF with proper effective treatment.

PLAINTIFF, in fundamental and broken layman terms, did clearly attempt to make a judicious "Baxter v. Palmigiano" argument in his MTC – TEXAS CIVIL COMMITMENT CENTER GRIEVANCE FORM Step 1 statement:

"Lamb County has found not enough probable cause or evidence to criminally charge me.

"Therefore, I represent the sanctions were excessive for the allegation and a due process and constitutional violation."

CLUTCHETTE V. PROCUNIER, 497 F.2d 809 (9th Cir. 1974), reh'g 510 F.2d 613 (9th Cir. 1975); CARSON V. JOHNSON, 112 F.3d 818 (5th Cir. 1997)

On about November 29, 2021, Grievance Investigator, A. Ornelas fallaciously

20

responded and DEFENDANT WAYNE SCHMOKER, in his official capacity and in his individual capacity, concurred:

> "The outcome of an investigation conducted by outside law enforcement agency do not weigh themselves into this administrative process.  The committee found that your actions were enough to substantiate that you were responsible for violating the rules." [EXHIBIT - 04] Copy of MTC – TEXAS CIVIL COMMITMENT CENTER GRIEVANCE FORM Step – 1 November 16, 2021

PLAINTIFF contends that this response fails to comport with CLUTCHETTE and CARSON above.

On December 10, 2021, PLAINTIFF sent/mailed his "MTC – TEXAS CIVIL COMMITMENT CENTER GRIEVANCE FORM Step – 2". PLAINTIFF made an extremely in depth argument/reason.  DEFENDANT HENERY ANTENCIO, in his official capacity and in his individual capacity, similarly and fallaciously responded. [EXHIBIT - 05] Copy of MTC – TEXAS CIVIL COMMITMENT CENTER GRIEVANCE FORM Step – 2  December 10, 2021

On December 30, 2022, PLAINTIFF filed his "TEXAS CIVILCOMMITMENT OFFICE Step 1 Grievance Form", essentially reiterating his attempt to make a judicious "Baxter v. Palmigiano" argument in his grievance.   [EXHIBIT - 06 ] Copy of TEXAS CIVILCOMMITMENT OFFICE Step 1 Grievance Form & Response

After February 04, 2023, PLAINTIFF filed his "TEXAS CIVILCOMMITMENT OFFICE Step 2 Grievance Form", again essentially reiterating his attempt to make a judicious "Baxter v. Palmigiano" argument in his grievance.  [EXHIBIT - 07] Copy of TEXAS CIVILCOMMITMENT OFFICE Step 2 Grievance Form & Response

Also, DEFENDANT KARON GONZALES then amassed PLAINTIFF with an undo amount of "Special Assignments". PLAINTIFF contends this was done as a form of harassment for being found not guilty by the Lamb County, Texas District Attorney's Office of all charges by TCCO. Regardless, PLAINTIFF did do, complete and also presented every one of the "Special Assignment" by June 24, 2022. They were all accepted and approved by PLAINTIFF'S Clinical Therapist. PLAINTIFF remained stagnant and not able to progress in his treatment, at no fault of his own. DEFENDANT KARON GONZALES refused to place PLAINTIFF before the Treatment Team to transfer him to a Tier Three. PLAINTIFF contends this is a direct violation of Texas Health & Safety Code § 841.0831.(b) to provide for the seamless transition of PLAINTIFF to less restrictive housing, based upon PLAINTIFF'S behavior and progress in treatment, and also a violation of PLAINTIFF'S Federal Constitutional protections to be free from DEFENDANT KARON GONZALES' retaliations and harassment while acting under color of state law in her official and individual capacities.

On November 23, 2021, DEFENDANT KARON GONZALES alleged on an MTC/TCCC Communication Form from PLAINTIFF that she nor DEFENDANT JESSICA MARSH had not obtained "anything from Lamb County".

On November 23, 2021, PLAINTIFF also sent an MTC/TCCC Medical Sick-Call Request to the Medical Clinic to receive feedback from a previous medical visit, about a week prior, concerning his left knee. This was PLAINTIFF'S first request for a bottom bunk pass in connection with the injury of his left knee. This request was approved by an MTC/TCCC Medical Provider for sixty days, from November 29, 2021 to January 29, 2022.

On December 15, 2021, PLAINTIFF'S Clinical Therapist, Mr. Charles Gill, [who was a part of the "Treatment Team" on November 15, 2021 which unanimously agreed for PLAINTIFF to be demoted from a Tier Four to a Tier Two] stated to PLAINTIFF that in light of the results of the Lamb County, Texas investigation into the charges brought on PLAINTIFF by TCCO, he would reverse his determination on November 15, 2021 and reinstate PLAINTIFF to his original status as a Tier Four.

On December 20, 2021, DEFENDANT JESSICA MARSH, in response to PLAINTIFF'S "PUBLIC INFORMATION ACT REQUEST" regarding the Lamb County, Texas Investigator's discussions stated:

"TCCO has no information responsive to your request."

On March 16, 2022, PLAINTIFF'S bottom bunk was renewed for: "60 days awaiting further treatment" - to about June 16, 2022.

On May 03, 2022, an MTC/TCCC Medical Clinic Provider ordered an MRI of PLAINTIFF'S left knee which was still causing PLAINTIFF a significantly great deal of constant chronic pain and major resistance to flexion. On or about May 20, 2022, Dr. Guy examined PLAINTIFF'S left knee and found him to have: "much pain with lateral pressure to knee". In his "Narrative Note", Dr. Guy noted:

"1.  Pt. with left knee pain since august 2021.  Has MRI scheduled placed by Mrs. Pena.  I feel this pt needs oertho consdlt.

"2.  Bottom bunk until knee issue resolved."

On May 05, 2022, DEFENDANT KARON GONZALES stated to PLAINTIFF that she

23

"didn't like the fact" that PLAINTIFF was progressing as he was. DEFENDANT KARON GONZALES further stated that she did not think PLAINTIFF should remain in a Tier Four group.

At some point, during this same time, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS collaborated, enacted and began to enforce arbitrary, capricious, malicious, sadistic and baseless unwritten forms of abuses of authority tactics of overriding the MTC/TCCC Medical Clinic Provider's & staff's orders and began to remove PLAINTIFF, who in great and significant constant chronic pain, from his approved and assigned bottom bunk, regardless of legitimately necessary bottom bunk passes received from MTC/TCCC Medical Clinic Providers. JOHNSON V. WRIGHT, 412 F.3d 398 (2nd Cir. 2005)

On May 25, 2022, the State District Court for the 103rd Judicial District of Texas of Cameron County, Texas, PLAINTIFF'S, Committing Court, for the first time, did formally ORDER TEXAS CIVIL COMMITMENT OFFICE and MANAGEMENT & TRAINING CORPORATION to:

- "to have his [PLAINTIFF'S] clinical or treatment status restored to his status prior to October 23, 2021 (Tier 4 with AGE pending), in the Tier 5-Tier Program under the direction of the TEXAS CIVIL COMMITMENT OFFICE at the TEXAS CIVIL COMMITMENT CENTER in Littlefield, Texas which is managed by MANAGEMENT & TRAINING CORPORATION."

- "This Court ORDERS The Civil Commitment Office's decision to move Santos Gomez III to more restrictive setting nullified."

- "Further, to ensure no future negative consequence to

24

Santos Gomez III as a result of this matter, the court ORDERS the TEXAS CIVIL COMMITMENT OFFICE, TEXAS CIVIL COMMITMENT CENTER, and MANAGEMENT & TRAINING CORPORATION to redact this matter in their records." [EXHIBIT - 08] Copy of Court's ORDER

On June 06, 2022, no change had been made in PLAINTIFF'S Tier level or restrictive situation, so PLAINTIFF produced this Court ORDER to DEFENDANT KARON GONZALES and DEFENDANT WAYNE SCHMOKER and asked them if/when they were going to comply with it.

The next day, on June 07, 2022, PLAINTIFF was suddenly involuntarily, and under duress of the threat of major disciplinary action against him if he refused to comply, moved from a bottom bunk to a top bunk. DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS told PLAINTIFF he no longer had a bottom bunk pass and PLAINTIFF had to immediately move all his property to the top bunk being assigned to him or else he would be removed and locked up in "SMU" and have disciplinary actions against him. PLAINTIFF was forced, under duress, to choose between encountering risk of greater injury to his left knee by moving to a top bunk or refuse a direct order from a staff member and suffer disciplinary actions from these DEFENDANT'S intentional, malicious, arbitrary, capricious, sadistic and plainly incompetent non-medical rationality acts and enforcements of harassment and retaliation in their official and individual capacities under color of state law, as plainly demonstrated by their acts.

On June 09, 2022, while still experiencing significant constant chronic pain and

major resistance to flexion in his left knee producing mobility issues for PLAINTIFF, he was attempting to climb up on to the top bunk by stepping on an MTC provided unmounted/unsecured small plastic chair and a small table.   In the process, because there was no appropriate ladder/apparatus available, PLAINTIFF fell from the top bunk, at least five feet, as a direct result of his constant chronic pain and major resistance to flexion and the damage in his left knee.  PLAINTIFF contends the reason his knee gave out as it did was due to the excessive stress placed upon it from trying to climb up to the top bunk.  PLAINTIFF contends DEFENDANTS failed to reasonably accommodate mobility-impaired and dexterity-impaired PLAINTIFF, in violation of the Americans with Disabilities Act.  PIERCE V. COUNTY OF ORANGE, 526 F.3d 1190 (9th Cir. 2008); HALL V. THOMAS, 190 F.3d 693 (5th Cir. 1999)

PLAINTIFF had to land on the floor on his elbows and both knees, causing a huge amount of increased pain and increased damage to his left knee, to deflect the fall and protect his head from a chair and various objects on the floor where he had fallen to.

As a result of this treacherous event, staff immediately called an "ICS", a call for emergency medical help from the MTC/TCCC Medical Clinic.  Upon the arrival of the medical staff, they noted PLAINTIFF had visual redness to his left elbow without any swelling.   PLAINTIFF was slowly escorted to the MTC/TCCC Medical Clinic for a complete evaluation by medical staff.   PLAINTIFF was given Ibuprofen for his significant pain and released from the MTC/TCCC Medical Clinic.  PLAINTIFF contends it is his belief that more damage was caused to his already deteriorated left knee as a result of the fall from the top bunk and all his weight landing on his left knee as it did. PLAINTIFF was not moved from the top bunk.

26

On June 13, 2022, in a conversation with DEFENDANT JAMES WINCKLER concerning PLAINTIFF'S bottom bunk restriction and his medical issues, DEFENDANT JAMES WINCKLER stated to PLAINTIFF that he did not care what Dr. Guy says because he feels it is not fair that PLAINTIFF has a bottom bunk pass while other patients at TCCC who need one don't have one.  DEFENDANT JAMES WINCKLER also stated that PLAINTIFF could sue him and he would tell the Court how and why he is able to override Dr. Guy's Medical Orders.  On June 15, 2022, PLAINTIFF was transported from TCCC to the Lamb County Healthcare Center's Radiology Department/Clinic.  The Lamb County Healthcare Center's Radiology staff examined PLAINTIFF'S left knee and performed an MRI on his left knee. The succeeding MRI Radiology Report states:

> "FINDINGS:
> The quadriceps and patellar tendon are intact.  The anterior and posterior cruciate ligaments are intact.  No joint effusion. Small Baker cyst is present.  Myoxid degenerative signal is present in the medial meniscus.  There is reduced volume of the body of the lateral meniscus and a clumped appearance the anterior medial aspect of the lateral meniscus concerning for a degree of bucket-handle tear.  No bone marrow edema.  Collateral ligaments, iliotibial band, and popliteus tendon are intact.
>
> IMPRESSION:
> Findings concerning for bucket-handle tear of the lateral meniscus.
> Small Baker cyst." [EXHIBIT - 09] Copy of MRI Radiology Report.

On June 18, 2022, PLAINTIFF began "Physical Therapy" for the significant damage and constant chronic pain and major resistance to flexion in his left knee producing mobility issues for PLAINTIFF.

On June 20, 2022, PLAINTIFF sent a request to DEFENDANT JAMES WINCKLER for pictures to be taken of the visually physical harm/bruises on PLAINTIFF'S right leg, caused from the fall off his top bunk on June 09, 2022.   DEFENDANT JAMES WINCKLER denied the request.  [EXHIBIT - 10] Copy of Communication

On June 24, 2022, Health Services Administrator/Director of Nurses, Ms. Graves, [Non-Defendant] told PLAINTIFF that his bottom bunk pass was never altered, that it was still in effect and he never should have been moved to a top bunk under any circumstances.   MTC/TCCC Health Services Administrator/Director of Nurses, Ms. Graves, called DEFENDANT JAMES WINCKLER and expressed her concerns about PLAINTIFF'S health, specifically his left knee damage and the danger of him trying to climb on a top bunk.  DEFENDANT JAMES WINCKLER told Ms. Graves PLAINTIFF would be moved to a bottom bunk as soon as the facility came off its then current "COVID Limited Movement Protocols" status.  On June 30, 2022, Ms. Graves advised PLAINTIFF she had spoken to DEFENDANT JAMES WINCKLER several times about PLAINTIFF'S bottom bunk pass issues since being released from all "COVID Limited Movement Protocols" status and DEFENDANT JAMES WINCKLER continued to refuse to move PLAINTIFF.

About September or October of 2022, PLAINTIFF reached out to GERALD B. WILSON [hereafter "WILSON"], one of his peers at the TCCC facility who PLAINTIFF is acquainted with and aware that WILSON is a lay Pro se litigator of his own personal litigations. [EXHIBIT - 11] Affidavit by WILSON

PLAINTIFF asked WILSON if he could help him to file a law suit in Court.  After many discussions and some legal research, WILSON agreed to freely assist PLAINTIFF

28

with the initial filings of a 42 U.S.C. § 1983 Civil Rights Complaint and Claim, until PLAINTIFF was able to get an attorney to help PLAINTIFF.  No compensation, of any sort, was ever set or spoken of by either party.

On November 10, 2022, MTC/TCCC OFFICER JAVIER VEGA confiscated WILSON'S word processor, with PLAINTIFF'S legal work in it, as part of an investigation of allegations from other unknown anonymous Patients at TCCC.   These Patients, apparently, according to DEFENDANT KARA GOUGLER, alleged, through a letter to TCCO Administrative staff in Austin, Texas, that WILSON was doing other Patient's homework and legal work for them and charging commissary for his services.  Such acts are a violation of TCCC Rules and if investigated and found to be substantial, disciplinary actions would follow.

On November 17, 2022, PLAINTIFF was approached by MTC Security Officer Mr. Cardenas who handed PLAINTIFF a document and a witness statement form and told him that DEFENDANT CAPTAIN STETSON FISHER wanted PLAINTIFF to fill it out. The document given to PLAINTIFF by MTC Security Officer Mr. Cardenas states:

> "Gerald Wilson was doing this for Gomez – Did a lawsuit for him about his Tier level, etc. Again, not sure of the payment but Wilson ended up with commissary and he is indigent so how did he get that?
> Write a witness statement about this and what happened and then ill talk to them after they bring the statement to me at central" [EXHIBIT - 12] Copy of document

Later, WILSON filled out a witness statement document and gave it to DEFENDANT CAPTAIN STETSON FISHER.  DEFENDANT CAPTAIN STETSON FISHER in effect stated to WILSON that he believed the allegations against WILSON were in fact

fallacious and baseless and he would contact TCCO and let them know, after a little more investigation.

After further investigation and speaking to many staff and other Patients at TCCC, DEFENDANT CAPTAIN STETSON FISHER dropped the allegations and investigation against WILSON within a few days.

On November 18, 2022, OFFICER JAVIER VEGA still had WILSON'S word processor, with PLAINTIFF'S legal work in it.  When OFFICER JAVIER VEGA gave WILSON his word processor back to him, he told WILSON:

> "I found several documents of homework and legal documents with other client's names on them.  From now on, do not do any homework or any legal-work for any clients! You have until Monday to totally delete every document in your word processor that has another client's name on it!  I will come check to make sure you deleted all of them."

PLAINTIFF'S 42 U.S.C. § 1983 Civil Rights Complaint and Claim, in part, which WILSON had been in the process of assisting PLAINTIFF with was part of the documents OFFICER JAVIER VEGA told WILSON to delete.  WILSON complied and deleted every document that had any other Patient's name attached to it, homework and legal-work.  This caused WILSON to totally re-prepare all the legal papers he had for PLAINTIFF'S Complaint and litigation.

Because, up to this point, DEFENDANTS had totally disregarded and utterly defied the State Court Order from State District Court for the 103rd Judicial District of Texas of Cameron County, Texas, PLAINTIFF'S, Committing Court, on May 25, 2022, on September 26, 2022 [FILED: October 03, 2022], the State District Court for the 103rd

Judicial District of Texas of Cameron County, Texas, PLAINTIFF'S, Committing Court, for the second time, did again formally "ORDER" TEXAS CIVIL COMMITMENT OFFICE and Management & Training:

> "Following a hearing on September 13, 2022 in the above-numbered and styled cause, the court finds that Santos Gomez III shall be returned to tier four housing and supervision under Texas Health and Safety Code Section 841.0834(d). His status will be as before October 23, 2021.

> "The Texas Civil Commitment Office, to avoid any negative consequence to Santos Gomez III, shall make an entry in the file to ensure evaluators, treatment providers, and TCCO staff are aware that the November 4, 2021 tier movement shall not be considered." [EXHIBIT - 13] Copy of ORDER

Since that time, and up to the filing of this Complaint, DEFENDANTS have and still continue to disregard and utterly defy the Court's Order, PLAINTIFF contends, to harass and retaliate against PLAINTIFF for exercising his First Amendment right to petition the Court and prevailing over his Tier transfer from a Tier Four w/ A.G.E. panel review pending down to Tier Two w/Tier One privileges. SMITH V. CAMPBELL, 250 F.3d 1032 (6th Cir. 2001) PLAINTIFF contends DEFENDANT'S conduct was and is intentional, malicious, arbitrary, capricious, sadistic and plainly incompetent non-medical rationality, as plainly demonstrated by their following bad faith acts:

A.  Denial of access to Courts

B.  Denial of Due Process

C.  Denial of access to Counsel

D.  Denial of progress in PLAINTIFF'S treatment

E.  Continued retaliation until January 14, 2023 through her denial of a cell phone to PLAINTIFF, in opposition to obey

State District Court's "ORDERS"

F. Continued retaliation since January 14, 2023 by only allowing PLAINTIFF TIER THREE privileges on his phone use in opposition to obey State District Court's "ORDERS"

G. Still has not sent "Memo To Advance To A.G.E. Panel List". Prior to October 23, 2021, PLAITIFF was number five on the list.

H. Continued retaliation and refusal to obey State District Court's "ORDERS"

# ARGUMENTS

**TREATMENT TIERS:**

TCCO operates a four-tier system: Tier One being the lowest, with the highest supervision level and highest number of restrictions for housing, and Tier Five being the highest, with the lowest supervision level and lowest number of restrictions for housing. Each Tier Level has it's own individual treatment curriculum.

Within each Tier Level, at least in "theory", Patients are allowed certain degrees of TCCO supervision freedoms and responsibilities and certain degrees of "MTC Clinical Treatment Modalities". For example, Tier Four Patients are allowed to purchase and limitedly use a cell phone and to be employed, full time, at the TCCC facility by MTC under the "Vocational Work Program", as they are purportedly working as part of their "treatment" and are required to save funds towards their eventual release and freedom. Compared to Tier Two Level Patients who may not be employed and are prohibited from possessing a cell phone and also have greater restrictions on their movements within the TCCC facility.

TCCO is charged specifically with the "Supervision" aspects of the Civil Commitment Program. This is because TCCO staff are not trained nor licensed as Sex Offender Treatment Professionals and therefore unqualified to make effective "treatment" decisions. On the other hand, in theory, MTC is charged specifically with the "treatment" aspects of the Civil Commitment Program.

In theory, all movement between Tier Levels are based upon trained and licensed MTC Sex Offender Treatment Professional's clinical determinations when and if an individual Patient's treatment goals and indicators are met, denoting the Patient's progress in treatment. PLAINTIFF contends the effective interpretation of State Legislatures mandate TCCO's contracted Treatment Providers to be the effective authority in determining the transfers of Patients to more or less restrictive "housing", when:

> "the transfer is in the best interest of the person and conditions can be imposed that adequately protect the community." Texas Health & Safety Code § 841.0834.(a)

However, in actual practice, a Patient's supervision/housing transfer, up or reduction, between treatment levels are never based upon any true therapeutic markers, rational professional judgements, the standards set forth by State Legislatures nor any process to contest transfers of tier reductions at the treatment or facility level. Instead, a Patient's transfer, up or reduction, hangs in the balances of the arbitrary, capricious, malicious and generally irrational incompetent decisions of the unqualified and unlicensed TCCO and/or MTC Administrative and Security, non-clinical staff determinations, specifically, DEFENDANT KARA GOUGLER, DEFENDANT JESSICA

MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, none of which have any effective treatment experience, license nor training to make therapeutic treatment decisions "in the best interest of the person [PLAINTIFF] and conditions can be imposed that adequately protect the community." Texas Health & Safety Code § 841.0834.(a) PLAINTIFF challenges the unconstitutionality of this process and argues that he effectively has a significant protected civil liberty interest implicating the Due Process Clause of the Fourteenth Amendment in not having any process afforded to him to contest any transfer reduction at the treatment/facility level. Furthermore, PLAINTIFF contends he also has a protected civil liberty interest as a result of the stigmatizing consequences of DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, in bad faith, intentionally, knowingly, arbitrary, and capriciously exaggerating and misinterpreting facts and utter failures in their obligations to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment by forcing PLAINTIFF to remain stagnate and regress in his treatment, through no fault of his own, for arbitrary, capricious, malicious and sadistic non-medical rationality, coupled with the statutory subjection of PLAINTIFF to mandatory Court ORDERED behavior modification as

34

"treatment".

The actions and failures of the DEFENDANTS are a substantial departure from accepted professional judgement, practice, and decisions, and demonstrate that DEFENDANTS do not use their decisions on such professional judgement, and are not exercising judgement within the bounds of accepted professional standards, in violation of PLAINTIFF'S Federal Constitutional Protections.

PLAINTIFF contends he is owed the following minimal process for any involuntary reduction of his Tier Level:

- Written "Notice" of any transfer reduction of his Tier Level

- A "Hearing", by an impartial clinical decision maker with an opportunity to be heard in person and to present evidence;

- An appropriate opportunity, minus a show of good cause not to, to present witnesses and confront/cross examine accusers/witnesses;

- An independent Clinical Treatment decision maker;

- A written statement by the fact finder as to the evidence relied on and reasons for the action;

- The availability of qualified and trained independent assistance which may be an attorney, but need not be; and

- Effective and timely "Notice" of all foregoing rights.

PLAINTIFF contends DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, were

knowingly, or should have known, responsible to uphold the Statutes, Civil and Constitutional protections at all times and they intentionally failed.

PLAINTIFF'S Committing Court was never contacted or notified.  Texas Health & Safety Code § 841.0834

For the most part, rather than basing treatment decisions related to transfers between the Tier Levels with reasonable, effective professional judgements, "in the best interest of [PLAINTIFF]", transfers are generally based upon DEFENDANT KARON GONZALES' "belief" about PLAINTIFF'S progress.  Such "belief" is flawed, bias and not supported by with effective professional treatment judgement.

PLAINTIFF contends that the duty to progress or reduce PLAINTIFF'S Tier Level, in his best interest, rest upon the trained and licensed professional MTC Clinical Therapist, contracted by TCCO, in part, for that purpose.  TCCO staff are not trained and licensed professionals as being Sex Offender Treatment Providers.

DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, have/do make unqualified decisions about PLAINTIFF'S progress in treatment, many times against the decisions of the qualified, experienced and licensed MTC Clinical Therapist.

In the proceeding issues, PLAINTIFF contends he will further demonstrate for the Court several times when DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT

MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, knowingly, arbitrarily and capriciously cross their "supervision" limited boundaries and ingress "treatment " boundaries, of which they have no authority in.

DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, none of which have any effective treatment experience, license nor training to make therapeutic treatment decisions "in the best interest of the person [PLAINTIFF] and conditions can be imposed that adequately protect the community."   Texas Health & Safety Code § 841.0834.(a) PLAINTIFF challenges the unconstitutionality of this process and argues that he effectively has a significant protected civil liberty interest implicating the Due Process Clause of the Fourteenth Amendment in not having any process afforded to him to contest any transfer reduction at the treatment/facility level.  Furthermore, PLAINTIFF contends he also has a protected civil liberty interest as a result of the stigmatizing consequences of DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, in bad

faith, intentionally, knowingly, arbitrary, and capriciously exaggerating and misinterpreting facts and utter failures in their obligations to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment by forcing PLAINTIFF to remain stagnate and regress in his treatment, through no fault of his own, for arbitrary, capricious, malicious and sadistic non-medical rationality, as plainly demonstrated by their acts, coupled with the statutory subjection of PLAINTIFF to mandatory Court ORDERED behavior modification as "treatment".

**TREATMENT TIERS – SIGNIFICANT HARM:**

PLRA provision barring "prisoners" from bringing suit for mental or emotional injury without prior showing of physical injury fails in PLAINTIFF'S Complaint because the PLRA "physical injury" provision only applies to confined prisoners, which PLAINTIFF is not. KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998)

PLAINTIFF argues that, based upon all the arbitrary, capricious, malicious, and sadistic treatment decisions from unqualified and unlicensed TCCO and MTC TCCC staff, specifically, the bad faith acts of DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, in their official and individual capacities, under the color of State law, PLAINTIFF has grossly suffered mentally, emotionally and physically as plainly demonstrated by their acts, specifically:

- The arbitrary, capricious, malicious and sadistic loss of

significant treatment which directly and adversely affects PLAINTIFF pending progression and release at the hands of unqualified and unlicensed TCCO and MTC TCCC staff, specifically, implicated DEFENDANTS. [EXHIBIT - 14] Tier Reduction Form & BMR Hearing Form

- These same implicated DEFENDANT'S knowingly arbitrary, capricious, malicious and sadistic acts have also caused PLAINTIFF the unnecessary significant loss of wages from his employment from within the "MTC Vocational Work Program" at TCCC. PLAINTIFF estimates his loss to be about $1,100.00 each month from the knowingly arbitrary, capricious, malicious and sadistic loss of his employment on November 04, 2021 as a result of the knowingly arbitrary, capricious, malicious and sadistic non-treatment decisions of unqualified/unlicensed TCCO and/or MTC staff.

PLAINTIFF contends these "losses", in fact, have and do significantly, directly and adversely affect PLAINTIFF'S pending progression and release from care and treatment. PLAINTIFF alleges DEFENDANTS have knowingly arbitrarily, capriciously, maliciously and sadistically, as plainly demonstrated by their acts, denied PLAINTIFF of his Due Process protections under the Fourteenth Amendment and the impingement of protected civil liberty interest of effective treatment and his significant loss of wages from his employment within the "MTC Vocational Work Program" at TCCC.

PLAINTIFF contends that the following pattern clearly reveals his mental health states and the significant mental health harm he suffered, as plainly demonstrated by the DEFENDANT'S acts:

- PLAINTIFF has a history of certain debilitating mental health issues, specifically: Major Depressive Order and PTSD, diagnosed on May 18, 2020 and placed on significant psychotropic medications. [EXHIBIT - 15] Psy. Prog. Note 10/30/2020

- On December 03, 2020, seemingly to feel physically,

cognitively and mentally better, PLAINTIFF requested to "discontinue" his then current psychotropic medications. [EXHIBIT - 16] Sick Call Request – 12/03/20 & 01/11/21

- On about January 28, 2021, with psychotropic medications being weaned, PLAINTIFF, physically, cognitively and mentally, seemed to be doing quite well.  [EXHIBIT - 17] Psy. Prog. Note 01/28/21 – 3 pgs.

- On about February 03, 2021, PLAINTIFF, physically, cognitively and mentally, seems to continue to be doing well. [EXHIBIT - 18] Psy. Prog. Note 02/03/21 – 1 pg.

- On about April 22, 2021, PLAINTIFF, physically, cognitively and mentally, seems to still be doing constantly well.

On August 23, 2021, PLAINTIFF, physically, cognitively and mentally, became significantly and negatively affected by the knowingly arbitrary, capricious, malicious and sadistic non-medical rationality, as plainly demonstrated specifically by DEFENDANT KARON GONZALES acts:

- DEFENDANT KARON GONZALES knowingly arbitrary, capriciously, maliciously and sadistically, with non-medical rationality, confiscates PLAINTIFF'S cell phone;

- DEFENDANT KARON GONZALES knowingly arbitrary, capriciously, maliciously and sadistically, with non-medical rationality, repeatedly denies PLAINTIFF to access Courts;

- DEFENDANT KARON GONZALES knowingly arbitrary, capriciously, maliciously and sadistically, with non-medical rationality, on October 19, 2021, began to distance herself from PLAINTIFF;

- On October 23, 2021, PLAINTIFF'S daughter's (victim of offense) birthday.  PLAINTIFF sends "proxy" text to his mother and sister;

- DEFENDANT KARON GONZALES knowingly arbitrary, capriciously, maliciously and sadistically, with non-medical

rationality, on November 04, 2021 has PLAINTIFF placed in "solitary confinement" and also makes a request to Lamb County Sheriff's Department for an Arrest Warrant;

- On November 10, 2021, PLAINTIFF was suddenly [with no notice, opportunity to call witnesses or opportunity to request Counsel] brought before an MTC/TCCC BMR Hearing and was found "GUILTY";

- On November 15, 2021, DEFENDANT KARON GONZALES, in part, knowingly arbitrary, capriciously, maliciously and sadistically, with non-medical rationality, demoted PLAINTIFF from a Tier Four to a Tier Two – with Tier One privileges.

On November 04, 2021, PLAINTIFF "appeared to be anxious" to a Mental Health Professional. [EXHIBIT - 19] Psy. Prog. Note 11/04/2021

On November 05, 2021, PLAINTIFF continued to express his chronic fears. [EXHIBIT - 20] Psy. Prog. Note 11/05/2021

On November 05, 2021, PLAINTIFF'S physical, cognitive and mental health and anxiety deteriorated to the point that the MTC Medical/Mental Health Department of TCCC, out of abundant concern, came to believe they needed to issue PLAINTIFF a "NO-SUICIDE CONTRACT". [EXHIBIT - 21] Copy of the NO-SUICIDE CONTRACT

PLAINTIFF contends that as a direct result of all these arbitrary, capricious, malicious, and sadistic misinterpretations of the facts and the acts associated with them, PLAINTIFF'S physical, cognitive and mental health, during this time drastically and demonstrably took a one-hundred and eighty degree turn and was deteriorated into triggered negative emotions of "zero state of being", "rejection", "anxiety" and "insufficiency". PLAINTIFF contends that DEFENDANTS have a constitutional obligation to intervene when they know PLAINTIFF suffers from self-destructive tendencies. RICE

41

ex rel RICE V. CORRECTIONAL MED. SER., 675 F.3d 650, 665 (7th Cir. 2012); LEE V. DOWNS, 641 F.2d 1117 (4th Cir. 1981)

Comparatively, on January 26, 2022, PLAINTIFF minimally began to show physical, cognitive and mental health signs of rebounding and able to cope with his fear and anxiety.  As depicted by medical records, PLAINTIFF'S suicide risk and homicide risk were reduced back to a tempered safe "Low" level.  [EXHIBIT - 22] Psy. Prog. Note 01/26/2022 – 6 pgs.

On February 25, 2022, PLAINTIFF did seem to experience a diminutive relapse of negative emotions, in need to reach out and "wanted someone to 'vent' to..." during a follow up session with MTC TCCC Medical Clinic Psychiatrists – Dr. Sarah Iannucci Do. [EXHIBIT - 23] Psy. Prog. Note 02/25/2022 – 3 pgs.

Upon the arbitrary, capricious, malicious, and sadistic non-treatment decisions of the unqualified and unlicensed TCCO and/or MTC staff, specifically: DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER, and DEFENDANT SERGEANT MICHAEL ARNIVAS, PLAINTIFF did in fact go from minimally physical, cognitive and mental health status concerns to significantly suffering a gross regression of his physical, cognitive and mental health status, even rising to the significant elevated level of grave concern from the MTC TCCC Medical Clinic – Mental Health Department of a probable act of homicide/suicide from PLAINTIFF.  This has been a constant significant and painful physical, cognitive and mental health issue for

PLAINTIFF and is a significant violation of PLAINTIFF'S civil and constitutional protections from such gross harms.  [EXHIBIT - 24] Copy of Coping Log

**DENIAL OF ACCESS TO COURTS:**

On August 23, 2021, DEFENDANT KARON GONZALES, without any effective basis of so much as any investigation, unsubstantially, arbitrarily, capriciously, maliciously, and intentionally alleged PLAINTIFF was having an inappropriate relationship with his personal attorney on his cell phone.  DEFENDANT KARON GONZALES arbitrarily, capriciously, maliciously, and intentionally confiscated PLAINTIFF'S cell phone. PLAINTIFF contends this act, under color of state law, by DEFENDANT KARON GONZALES, in her official and in her individual capacity, impeded PLAINTIFF'S Sixth Amendment right to access to his personal attorney who represents him.  MURPHY V. WALKER, 51 F.3d 714 (7th Cir. 1995) per curiam; TARPLEY V. ALLEN COUNTY, INDIANA, 312 F.3d 895 (7th Cir. 2002) PLAINTIFF contends he has a constitutional right to Petition the Government for redress of grievances, including a reasonable right of access to the courts.  JOHNSON V. AVERY, 89 S. Ct. 747, 393 U.S. 483, 21 L.Ed.2d 718 (1967) This right "is part of the right of petition protected by the First Amendment."  CALIFORNIA MOTOR TRANSPORT CO. V. TRUCKING UNLIMITED, 404 U.S. 508, 513 (1972)

DEFENDANT KARON GONZALES plainly and intentionally did impede and still impedes PLAINTIFF in contacting his personal Attorney, on his cell phone or any other phone or means of contact.  This Attorney was/is on PLAINTIFF'S accepted and approved collateral contact list from TCCO.  [EXHIBIT - 25] Client Contract Info.  Such acts, under color of state law, by DEFENDANT KARON GONZALES, in her official and in her individual capacity, represses PLAINTIFF from engaging in exercising the right of

access to courts, petitioning the government for redress of grievances under the United States Constitution – First Amendment, constitutionally protected activity of free speech about his grievances under the First Amendment.   JONES V. DIAMOND, 594 F.2d 997 (5th Cir. 1979); LYNOTT V. HENDERSON, 610 F2d 340 (5th Cir. 1980)

DEFENDANT KARON GONZALES' confiscation of PLAINTIFF'S cell phone and impeding access on any other phone or means of contact with PLAINTIFF'S Attorney, amounts to a significant violation of PLAINTIFF'S constitutionally protected activity of maintaining his right to Counsel under the Sixth Amendment. and refusing to be compelled to speak about his grievances under the First Amendment and the Fourteenth Amendment – Due Process Clause, to embrace court petitions and other actions, and to protect those who pursue institutional grievances.   CHRICEOL V. PHILLIPS, 169 F.3d 313 (5th Cir. 1999)

DEFENDANT KARON GONZALES, in her official and individual capacities, under color of state law, in bad faith, has/is intentionally, knowingly, arbitrarily, capriciously and maliciously exaggerated and misinterpreted the facts and utterly failed in her obligation to provide PLAINTIFF with effective "treatment" and forcing PLAINTIFF, under duress, to stagnate and regress in treatment for known, arbitrary, capricious, malicious, sadistic non-medical reasons, in significant violations of PLAINTIFF'S Constitutional provisions.

DEFENDANT KARON GONZALES may not erect barriers that impede PLAINTIFF'S personal and privet right of access to his Attorney.   JOHN L. V. ADAMS, 969 F.2d 228, 235 (6th. Cir. 1992)

**DENIAL OF ACCESS TO COURTS – SIGNIFICANT HARM:**

PLRA provision barring "prisoners" from bringing suit for mental or emotional injury without prior showing of physical injury fails in PLAINTIFF'S Complaint because the PLRA "physical injury" provision only applies to confined prisoners, which PLAINTIFF is not.  KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998)

DEFENDANT KARON GONZALES' behavior and acts of vagrant abuse of authority towards PLAINTIFF in the confiscating of his cell phone because he was contacting his personal Attorney was exceedingly grievous on him, physically, cognitively and emotionally triggering sufferance's of being betrayed, fears, anger, hurts, loneliness, victimization and the lack of trusting others.  As a result of DEFENDANT KARON GONZALES' previous, current and future bad faith power, authority and supervision over PLAINTIFF'S access to Courts, MTC Security initiated a request to MTC TCCC Medical Clinic – Mental Health Department to make consistent check on PLAINTIFF while he was in SMU and ongoing to this date.  [EXHIBIT - 26] Nursing Narrative Note 11/04/21; "SOAPE" 11/09/21 & "No Suicide Contract" – See: EXHIBIT – 21

PLAINTIFF is personally significantly challenged to engage and produce any kind of litigation, on his own.  PLAINTIFF has absolutely zero personal experience in litigation or in a law library.  As such, PLAINTIFF contends that even though MTC "provides some reasonable alternative to assist… [Patients] …in the preparation of petitions."  JOHNSON V. AVERY, 393 U.S. 483, 490 (1969) the assistance is moot to PLAINTIFF in that the "some" does not include an inexperienced novelist "timely" learning and retaining how to access research information and then how to prepare the litigation information, to prepare the litigation.  PLAINTIFF contends this "timely" learning of how to litigate along

45

with the time it would take to effectively research and prepare the legal papers would have taken him more than the time limitations of two years set to file his Complaint.

PLAINTIFF contends that DEFENDANT CAPTAIN STETSON FISHER'S bad faith acts of looking at, intentionally reading and printing out PLAINTIFF'S legal-work, specifically this Complaint, in part and telling WILSON to delete said legal-work of PLAINTIFF is the result of a harassment and retaliation motive and a direct violation of PLAINTIFF'S U.S. Constitution First Amendment protection of being denied meaningful legal assistance from fellow peers, specifically, WILSON.

PLAINTIFF contends that DEFENDANT CAPTAIN STETSON FISHER'S bad faith acts of looking at, intentionally reading and printing out PLAINTIFF'S legal-work, specifically this Complaint, in part and telling WILSON to delete said legal-work of PLAINTIFF is a direct violation of PLAINTIFF'S U.S. Constitution Fifth Amendment protection of being denied meaningful access to Courts.

Upon the arbitrary, capricious, malicious and sadistic knowing bad faith non-treatment decisions of the unqualified and unlicensed TCCO and/or MTC staff, specifically in this issue, DEFENDANT KARA GOUGLER, DEFENDANT JESSICA MARSH, DEFENDANT KARON GONZALES, DEFENDANT JOSHUA CASTRO, DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER AND DEFENDANT SERGEANT MICHAEL ARNIVAS, in their official capacity and in their individual capacity, under color of state law, jointly and severally, none of which have any effective treatment experience, license nor training to make therapeutic treatment decisions in the best interest of PLAINTIFF and conditions

can be imposed that adequately protect the community.  Texas Health & Safety Code § 841.0834.(a).  PLAINTIFF did significantly suffer regression of his mental health status, going from not being on the mental health case load [EXHIBIT - 27] Psychiatric Progress Note 10/30/20 & TCCO Supervision Progress Report – June 2021 instantaneously rising to the significant level of attention and concern from the MTC Medical Clinic – Mental Health Department to place PLAINTIFF back on a stringent mental health case load and alert of a possible act of suicide by PLAINTIFF.  [EXHIBIT - 28] See EXHIBIT - 21  "NO SUICIDE CONTRACT" Implicated DEFENDANT'S acts have chronically and significantly physically, mentally and emotionally painful to PLAINTIFF resulting in a significant violation of PLAINTIFF'S civil and constitutional protections from such gross harms.

## PREMATURE TCCO INCIDENT REPORT:

PLAINTIFF judiciously contends that he was and is wholly aware of his statutory total bar from contacting his victims, directly or indirectly.  PLAINTIFF'S mother and sister were and are equally wholly aware of PLAINTIFF'S statutory total bar from contacting his victims, specifically through them.  PLAINTIFF contends this will be clearly demonstrated at Trial.  PLAINTIFF, his mother and his sister fully and clearly knew and understood (even though it is not specifically stated within the "text") this text to specifically be a "proxy" text exclusively to PLAINTIFF'S mother and to his sister, only as a means of PLAINTIFF'S attempt to appropriately self-sooth and cope with his then current significantly negative and unhealthy physical, cognitive and emotional state of being.  Again, PLAINTIFF contends this will be shown further in testimony at Trial.

In the "Details" of the undated Incident Report, DEFENDANT KARON GONZALES intentionally stated and falsely accused PLAINTIFF, with no basis, that he:

"sent a text message indirectly to a victim of his offense.
Specifically, his daughter Xstasie date of birth 10/23/2004."

PLAINTIFF does not deny the text.  PLAINTIFF does not deny sending the text.

PLAINTIFF strongly contends that the actual non-misinterpreted facts are, the text was

sent directly and exclusively to his mother and sister who are very discerning approved

collateral contacts and very familiar with the rules and statutes concerning these issues.

The text PLAINTIFF sent exclusively to his mother and daughter stated:

"Happy 17th Birthday, Love, Your Father."

PLAINTIFF'S daughter's name, "Xstasie", was not in the text, nor was she even

mentioned.   The TCCO disciplinary Incident Report indicates, in the "Intervention"

section that a warrant request had been submitted for to the Lamb County, Texas

Sheriff's Department, clearly indicating knowledge that PLAINTIFF was already under a

criminal investigation for the same charge/violation.  PLAINTIFF was never Notified,

informed nor read of his right to have an attorney present or to remain silent.  Not even

prior to his MTC/TCCC BMR Hearing.  After being placed in SMU and prior to his

MTC/TCCC BMR Hearing, PLAINTIFF did make several verbal request to staff and

DEFENDANTS for an Attorney.  He was told he did not need one and that they did not

have to furnish PLAINTIFF with an Attorney.

PLAINTIFF contends DEFENDANTS knew or should have known appointed

Counsel must be provided to TCCC Patients who are locked up in solitary confinement

(SMU) administrative detention pending a State investigation and/or a State trial on

felonies committed in the TCCC Facility.   Solitary confinement effectively curtails a Patient's ability to investigate evidence and interview witnesses.   This is particularly meaningful, considering the transient nature of civil commitment society.   In order for the right to counsel to attach, an attorney must be requested.   CARSON V. JOHNSON, 112 F.3d 818 (5th Cir. 1997)

PLAINTIFF contends, DEFENDANT KARON GONZALES; DEFENDANT JAMES WINCKLER, in their official capacities and individual capacities, under color of state law, knew or should have known PLAINTIFF'S constitutional protective rights to Counsel prior to and during his arbitrary, capricious, malicious and sadistically exaggerated and misinterpreted MTC/TCCC BMR Hearing.   DEFENDANTS utterly intentionally failed in their obligations to provide PLAINTIFF with effective "treatment", forcing him, through no fault of his own, to stagnate and even regress in his treatment for non-medical reasons, in violation of PLAINTIFF'S constitutional protections.

**PREMATURE TCCO INCIDENT REPORT-SIGNIFICANT HARM:**

PLRA provision barring "prisoners" from bringing suit for mental or emotional injury without prior showing of physical injury fails in PLAINTIFF'S Complaint because the PLRA "physical injury" provision only applies to confined prisoners, which PLAINTIFF is not.   KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998)

PLAINTIFF is in the care of all the DEFENDANTS in order for PLAINTIFF to undergo treatment for the purported mental abnormality that caused his confinement. Due to the non-medical un-credentialed and ultimately punitive arbitrariness of DEFENDANTS, PLAINTIFF becomes hindered, even blocked and prohibited to from any progressing in his treatment.   The whole undertaking of TCCC and treatment is for

PLAINTIFF'S preparation and appropriate release back into the community. Anything else becomes less than the statutory and constitutional obligation to accord reasonable professional treatment, allow PLAINTIFF to respectively pass through the Tier Levels and finally find a release from care.

DEFENDANTS significantly harm PLAINTIFF by failing to provide him with a sufficient means to progress in his treatment. This causes PLAINTIFF to suffer in an institution with little to no hope of ever seeing the State Legislature's intent of progress to release from care. Emotional harm is compounded by arbitrary demotions in Tier Levels with non-medical malicious and sadistic basis and nonprofessional judgements. DEFENDANTS steal PLAINTIFF'S ability to effectively engage in effective treatment PLAINTIFF has learned and internalized, restrict his ability to develop any relationships in the community, create any substantialness for aftercare and inhibit his release. PLAINTIFF contends that, without changes from this Court, DEFENDANTS have and continue to harm him. Surely PLAINTIFF deserves better.

**UNCONSTITUTIONAL MTC/BMR HEARING:**

PLAINTIFF contends the following acts and inactions of DEFENDANT KARON GONZALES, acting under color of state law in her official capacity and in her personal capacity, jointly and severely, acting as person intentionally initiating the false incident report and statements; DEFENDANT JAMES WINCKLER, acting under color of state law in his official capacity and in his personal capacity, jointly and severely, acting as "Committee Chair"; resulting in the deprivation of the following state law entitlements to which PLAINTIFF has a Fourteenth Amendment Procedural Due Process Constitutionally protected interest:

- TEXAS HEALTH & SAFETY CODE § 841.0831:
  - o The right to treatment in a tiered program that provides for the seamless transition of PLAINTIFF from total confinement facility (prison) to less restrictive supervision and housing (TCCC) and eventual progress to release from care, based upon PLAINTIFF'S behavior and progress in treatment.

- TEXAS HEALTH & SAFETY CODE § 841.0834:
  - o The right to effectively transfer to less restrictive supervision and housing if the interest is in the best interest of PLAINTIFF and conditions can be imposed that adequately protect the community.
  - o The right for effective treatment, supervision and housing determinations to be made in accordance with reasonable professional judgement and based upon the standards of the State Legislature.

- TEXAS HEALTH & SAFETY CODE § 841.121:
  - o The right for TCCO and MTC to effectively and properly consider, based upon reasonable professional judgement of qualified and licensed Sex Offender Treatment Providers in the field, whether PLAINTIFF'S behavior abnormality has changed to the extent PLAINTIFF is no longer likely to engage in an act of predatory violence.

Furthermore, PLAINTIFF contends the United States Supreme Court has long established in disciplinary hearings that adequate "Notice" and opportunities to be heard requires that:

- PLAINTIFF effectively receive timely and adequate written notice of proposed charges, at least twenty-four hours to any hearing.

- PLAINTIFF effectively receive a written document with a statement from the investigator of the cause of action as to what evidence and reason is being relied upon.
- PLAINTIFF effectively be given fair opportunity to call witnesses and present documentary evidence in his defense, providing there is no undue hazard to safety at the

facility or to PLAINTIFF'S treatment goals.

- PLAINTIFF'S MTC/TCCC BMR Hearing(s) have effective impartial "Members".

**WOLFF V. McDONNELL, 418 U.S. 539 (1974)**

- PLAINTIFF effectively be allowed to freely enjoy his Sixth Amendment – Right To Counsel in a MTC/TCCC BMR Hearing, specifically where adversarial criminal judicial proceedings, including an investigation into possible felony charges, have also commenced for the same charges against PLAINTIFF.

**BAXTER V. PALMIGIANO, 425 U.S. 539 (1974); U.S. V. GOUVCIA, 467 U.S. 180 (1984)**

PLAINTIFF contends DEFENDANT KARON GONZALES, acting under color of state law in her official capacity and in her personal capacity, jointly and severely, acting as person intentionally initiating the false incident report and statements; DEFENDANT JAMES WINCKLER, acting under color of state law in his official capacity and in his personal capacity, did intentionally and knowingly arbitrarily, capriciously, maliciously and sadistically violate PLAINTIFF'S Fourteenth Amendment of Due Process entitlements through sanctions from the jointly and severely decisions of DEFENDANT JAMES WINCKLER in PLAINTIFF'S MTC/TCCC BMR Hearing actions which effectively and specifically impinged upon the protected civil liberty interest, which also led to the reduction and loss of PLAINTIFF'S Tier Four Level, directly adversely affecting PLAINTIFF'S pending progression and release from care. The intentional and knowing arbitrary, capricious, malicious and sadistic reduction and loss of PLAINTIFF'S Tier Four Level, also directly adversely affecting PLAINTIFF'S the loss of wages from his employment. Comparative to: HUDSON V. JOHNSON, 242 F.3d 534, 535-536 (5th Cir. 2001) PLAINTIFF contends that the reduction and loss of his rightfully earned progress to Tier Four Level with the loss of the wages from his employment are sanctions which

has directly and adversely affected his earned progress in treatment, imposing upon PLAINTIFF'S protected liberty interest.  Comparative to:  MALCHI V. THALER, 211 F.3d 953, 957-958 (5th Cir. 2000); MADISON V. PARKER, 104 F.3d 765, 768 (5th Cir. 1997); ORELLANA V. KYLE, 65 F.3d 29, 31-33 (5th Cir. 1995) [EXHIBIT - 29] Tier Reduction Form, & MTC/TCCC Hearing Document

These same arbitrary, capricious, malicious and sadistic bad faith acts of DEFENDANT JAMES WINCKLER have caused PLAINTIFF the unnecessary significant loss of wages from his
employment within the "MTC Vocational Work Program" at TCCC.  PLAINTIFF estimates that he has suffered a loss of about $1,100.00 a month, while DEFENDANT JAMES WINCKLER'S arbitrary, capricious, malicious and sadistic bad faith acts had him unemployed from November 04, 2021 to December 11, 2022.  These wages were a necessary part of PLAINTIFF'S financial stability for Tier Five release to the community from TCCC.

Prior to the MTC/TCCC BMR Hearing, and prior to any results of Deputy Weston and/or the Lamb County District Attorney's Office concerning the ongoing investigation, PLAINTIFF was never served/received any "NOTICE" of an Incident Report or allegations of any TCCO/MTC rule violation(s).  PLAINTIFF was never served/received any statement(s) or forms/documents pertaining to any evidence relied upon and/or reason(s) for any disciplinary actions.  PLAINTIFF was never afforded any effective opportunity to call witnesses or to present documentary evidence for his defense. PLAINTIFF was never informed of his rights to remain silent or his right to Counsel during the BMR Hearing process or the Hearing itself, while a pending criminal

investigation and possible charges were existing.  WOLFF V. McDONNELL, 418 U.S. 539 (1974)

PLAINTIFF contends, his facing an MTC/TCCC BMR Hearing for a State Criminal charge, regardless of the State's investigation being open or closed, might still develop new evidence which could be used against PLAINTIFF in State criminal charges and prosecution.

PLAINTIFF contends that about 10 to 15 minutes after his arbitrary, capricious, malicious, sadistic and intentionally bad faith MTC/TCCC BMR Hearing, PLAINTIFF was then notified by Deputy Weston that the investigation into the allegations against PLAINTIFF was concluded and that it had been determined that there was absolutely no evidence to proceed with any charges against PLAINTIFF.  It is PLAINTIFF'S belief that not only he but also DEFENDANT JAMES WINCKLER did not have any knowledge, during the MTC/TCCC BMR Hearing for a State Criminal charge, that PLAINTIFF had been cleared in Deputy Weston's investigation and that there would not be any state criminal charges filed on PLAINTIFF.

DEFENDANT JAMES WINCKLER, while in the MTC/TCCC BMR Hearing for a State Criminal charge, intentionally and knowingly fallaciously collaborated with non-defendants who were also charged with the decision making in the MTC/TCCC BMR Hearing for a State Criminal charge and unsubstantially found PLAINTIFF "GUILTY" with perfunctory evidence.  As alleged in the "BMR REPORT", the only evidence considered was:

> "The incident report read at the beginning of the hearing..."
> [EXHIBIT - 30] BMR REPORT

PLAINTIFF contends that if in fact that DEFENDANT JAMES WINCKLER did have knowledge of the results of the criminal investigation against PLAINTIFF, then he knowingly and intentionally suppressed the information and such information, being evidence, could/would have outweighed any inferior evidence used to find PLAINTIFF "GUILTY".

On November 05, 2021, DEFENDANT KARON GONZALES, as part of PLAINTIFF'S "Treatment Team", in bad faith, intentionally, knowingly, arbitrary, and capriciously exaggerated and misinterpreted facts and utterly failed in her obligation to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment, reduced PLAINTIFF'S Tier Level from a Tier Four to a Tier Two, unsubstantially alleging PLAINTIFF:

- had an unauthorized relationship with his personal respectable and credible Attorney;
- had an inappropriate relationship with a staff member;
- had an illegal/contraband cell phone;
- had attempted to engage in "staff splitting" as a baseless means to try to get DEFENDANT KARON GONZALES in trouble; and
- attempting to contact a victim of his offenses.

PLAINTIFF points out that none of these allegations, at any time, had any basis or disciplinary charges/investigations attached to them. DEFENDANT KARON GONZALES was clearly in bad faith, intentionally, knowingly, arbitrary, and capriciously exaggerating and misinterpreting facts and utterly failed in her obligation to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment, attempting to persuade

others on the "Treatment Team" to win approval or support to reduce PLAINTIFF'S Tier

Level.  In part, the "TCCO/TCCC Review/Change in Tier Report" states:

> "The Treatment Team agreed for Mr. Gomez to be demoted
> from a Tier 4 to a Tier 2 with tier 1 privileges due to
> attempting to reach out to his daughter the (victim) through
> two of his collateral contacts by text message. "  [EXHIBIT -
> 31] TCCO/TCCC Review/Change in Tier Report

PLAINTIFF was never given:

- Advance verbal or written "Notice" of any TCCO/MTC disciplinary charge[s]
- Written Statement/Investigation Report [s] of any evidence relied upon;
- Opportunity to request/call witnesses;
- Present documentary evidence in PLAINTIFF'S behalf; or
- Opportunity to request/call for legal Counsel/Attorney.

DEFENDANT KARON GONZALES has stated that PLAINTIFF'S "No Opinion" on

his Maintenance Polygraph is, in part, her rational to block PLAINTIFF from progressing

in his transfer to less supervision and less restrictive housing and progress in his

treatment.

PLAINTIFF contends that one of the Texas Legislator's changes that was

enacted into law on June 17, 2015, in part, was the total withdrawal of any polygraph

and plethysmograph use in PLAINTIFF'S treatment plan.   DEFENDANT KARON

GONZALES has stated to PLAINTIFF that he was [involuntarily] required to partake in

polygraphs and plethysmographs as a part of his treatment, despite the Texas

Legislator's changes that was enacted into law. RUIZ V. MORTAN, 462 F.2d 818 (9th Cir.

1972) DEFENDANT KARON GONZALES and DEFENDANT JAMES WINCKLER, acting

under color of state law, in their official capacity and individual capacity, jointly and severally, intentionally, knowingly, maliciously, arbitrarily, capriciously and sadisticly have and do deprive PLAINTIFF of his Federally protected guaranteed rights. [EXHIBIT - 32] TEXAS CIVIL COMMITMENT CENTER Disciplinary Hearing Record

**UNCONSTITUTIONAL MTC/TCCC BMR HEARING – SIGNIFICANT HARM:**

PLRA provision barring "prisoners" from bringing suit for mental or emotional injury without prior showing of physical injury fails in PLAINTIFF'S Complaint because the PLRA "physical injury" provision only applies to confined prisoners, which PLAINTIFF is not. KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998)

DEFENDANT KARON GONZALES, PLAINTIFF'S TCCO Case Manager and DEFENDANT JAMES WINCKLER, MTC/TCCC BMR Hearing Committee Chair, acting under color of state law, in their official capacity and individual capacity, jointly and severally, intentionally, knowingly, maliciously, arbitrarily, capriciously and sadisticly have exaggerated and misinterpreted facts, utterly failing in their obligations to provide PLAINTIFF effective treatment and cause PLAINTIFF significant harm by:

- great significant abatement and loss of progress in treatment, which directly and adversely affects PLAINTIFF'S progression and release;

- considerable grievous physical, mental, and emotional ailments being triggered to the point of reinstating unhealthy levels of illness, feelings and plans of suicide, compounding significant stress on PLAINTIFF'S relationships with his TCCO Case Manager [DEFENDANT KARON GONZALES], MTC Clinical Therapists, family and with his peers; and See EXHIBIT - 21 SUICIDE CONTRACT

- reinitiating his need for mental health counseling to help him deal with his condition, emotions and behaviors.

57

PLAINTIFF contends that records reflect that DEFENDANT KARON GONZALES and DEFENDANT JAMES WINCKLER acts have been, and continue to be, extremely physically, mentally and emotionally ailing to PLAINTIFF, in significant violation of PLAINTIFF'S civil and constitutional protections from such grievous harms.

**MEDICAL DELIBERATE INDIFERENCE AND HARRASSMENT:**

On November 29, 2021, PLAINTIFF received a "Bottom Bunk Pass" "approved for 60 days" with multiple subsequent follow-ups and reviews, from trained and licensed professional medical staff in the MTC TCCC Medical Clinic, which has led to allowing PLAINTIFF to consistently maintain a medical bottom bunk restriction status until his infirm/lame knee issue is resolved.  [EXHIBIT - 33]  Provider Progress/Narrative Note 11/29/2021 & Provider Progress/Narrative Note 05/20/2022

Under the care and provision of a medical "Bottom Bunk Pass" by the trained and licensed professional medical staff, PLAINTIFF is able to safely move in and out of his bunk/bed with minimal pain and or risk of further damage to his limb.  There is a greater risk to PLAINTIFF'S safety and further damage to his knee by his attempting to limitedly access a top bunk, because of his disability, without falling and potentially creating more harm/damage to his knee and possibly broken bones, torn ligaments/muscles, etc..

The top bunks at TCCC do not have any appropriate, or otherwise, durable apparatus/equipment which safely allows PLAINTIFF to effectively practice safe mobility up and/or down the top bunk, therefore placing PLAINTIFF at great significant risk to be further harmed again and/or worse.   DEFENDANT MANAGEMENT & TRAINING CORPORATION, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE

SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER AND DEFENDANT SERGEANT MICHAEL ARNIVAS, collaborated in bad faith have intentionally, knowingly, arbitrary, and capriciously exaggerated and misinterpreted facts and utterly failed in their obligations to provide PLAINTIFF State Statutorily and Federally Constitutionally effective treatment by forcing PLAINTIFF to significantly painfully traverse up and down a top bunk, for malicious and sadistic non-medical rationality, as plainly demonstrated by the DEFENDANT'S bad faith acts. [EXHIBIT - 34] Medical Records Note 06/17/2022; Communications and Grievances. PLAINTIFF contends the DEFENDANTS have constitutional obligations to protect PLAINTIFF from suicide and self-injury. LEE V. DOWNS, 641 F.2d 1117 (4th Cir. 1981)

On May 25, 2022, the State District Court for the 103rd Judicial District of Texas of Cameron County, Texas, PLAINTIFF'S Committing Court, for the first time, did formally ORDER TEXAS CIVIL COMMITMENT OFFICE and MANAGEMENT & TRAINING CORPORATION to:

- "to have his [PLAINTIFF'S] clinical or treatment status restored to his status prior to October 23, 2021 (Tier 4 with AGE pending), in the Tier 5-Tier Program under the direction of the TEXAS CIVIL COMMITMENT OFFICE at the TEXAS CIVIL COMMITMENT CENTER in Littlefield, Texas which is managed by MANAGEMENT & TRAINING CORPORATION."

- "This Court ORDERS The Civil Commitment Office's decision to move Santos Gomez III to more restrictive setting nullified."

- "Further, to ensure no future negative consequence to Santos Gomez III as a result of this matter, the court ORDERS the TEXAS CIVIL COMMITMENT OFFICE, TEXAS CIVIL COMMITMENT CENTER, and MANAGEMENT & TRAINING CORPORATION to redact this matter in their records."

[EXHIBIT - 35] Copy of Court's ORDER

On June 06, 2022, PLAINTIFF received a copy of the above Court Order and no change had been made in PLAINTIFF'S Tier level or restrictive situation, so PLAINTIFF produced this Court ORDER to DEFENDANT KARON GONZALES and DEFENDANT WAYNE SCHMOKER and asked them if/when they were going to comply with it.  As a result of PLAINTIFF showing DEFENDANT KARON GONZALES and DEFENDANT WAYNE SCHMOKER this document, if they were not aware before, they became aware and no longer had any excuse to continue any violations of the Court's Orders and violations of PLAINTIFF'S Constitutional protections.

The next day, on June 07, 2022, DEFENDANT KARON GONZALES, DEFENDANT WAYNE SCHMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON FISHER and DEFENDANT SERGEANT MICHAEL ARNIVAS began to emotionally, mentally and physically retaliate and harass PLAINTIFF, jointly and severally, in their official and individual capacities under color of state law, as plainly demonstrated by their acts, as follows:

- On June 07, 2022, PLAINTIFF contends that DEFENDANT WAYNE SCHMOKER and DEFENDANT SERGEANT MICHAEL ARNIVAS, (out of retaliation with a motive to harass PLAINTIFF over his displaying of the State District Court for the 103rd Judicial District of Texas of Cameron County, Texas, PLAINTIFF'S Committing Court, first Court ORDER) did knowingly and intentionally make unhealthy medical decisions and overrode healthy appropriate professional decisions, by licensed medical professionals, by forcing PLAINTIFF to move from a medically approved and assigned safe bottom bunk, under duress of threat to be placed in "SMU"/Segregation, specifically by DEFENDANT SERGEANT MICHAEL ARNIVAS.  DEFENDANT'S bad faith acts placed PLAITIFF in significant danger, constant exceeding

significant constant chronic pain and limited PLAINTIFF'S access to his bunk to rest and sleep safely, appropriately and healthy.  DEFENDANT'S bad faith acts also placed PLAITIFF in grave harm and danger to PLAINTIFF while attempting to traverse up and down from the top bunk.

- Also on June 07, 2022, DEFENDANT CAPTAIN STETSON FISHER specifically alleged to PLAINTIFF that MTC/TCCC Medical Clinic Ms. Jennifer Marie Urbina, NP prematurely rescinded PLAINTIFF'S "Bottom Bunk Pass".  PLAINTIFF contends that his MTC/TCCC Medical Records clearly state (In contradiction to DEFENDANT CAPTAIN STETSON FISHER'S false allegations) that:

  > "The only person who can override this protocol is the Health Services Administrator/Director of Nurses", Ms. Graves. [EXHIBIT - 36] Bottom Bunk Assessment 11/29/2021 & 03/16/2022

- DEFENDANT CAPTAIN STETSON FISHER nor MTC/TCCC Medical Clinic Ms. Jennifer Marie Urbina, NP have any authority to override MTC/TCCC Health Services Administrator/Director of Nurses, Ms. Graves.  PLAINTIFF contends that DEFENDANT CAPTAIN STETSON FISHER'S fallacious assertions and malicious bad faith acts of abuse of power and authority was totally baseless and he knew, or should have known, he had no justifiable cause, reason or authority to make such an allegation.  PLAINTIFF contends that in no place in his medical records was his "Bottom Bunk Pass" rescinded or altered, even to the filing of this Complaint. [EXHIBIT - 37] Medical Records Note 06/16/2022; Provider Progress/Narrative Note 06/17/2022 and Medical Records Note 06/17/2022

On June 09, 2022, PLAINTIFF fell, about five feet, from the top bunk while attempting to climb up and into the top bunk.  PLAINTIFF'S left knee suddenly malfunctioned and instantaneously gave out on him.  PLAINTIFF came down in full force, deflecting his head and face away from the MTC provided unmounted/unsecured small plastic chair and a small table, ungainly landing on both elbows and both knees on

the floor.  PLAINTIFF contends his left knee's malfunction was the result of extreme stress from the excessive climbing strain on his knee caused by the knowing and intentional bad faith acts of DEFENDANT KARON GONZALES, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCHMOKER, DEFENDANT CAPTAIN STETSON FISHER and DEFENDANT SERGEANT MICHAEL ARNIVAS, all who intentionally and knowingly collaborated together and forced PLAINTIFF under duress and threats to move to a top bunk when doing so was hazardous to PLAINTIFF'S safety and wellbeing.  FROST V. AGNOS, 152 F.3d 1124, 1129 (9th Cir. 1998)

This abrupt travesty resulted in MTC staff instantly initiating an "ICS", an emergency call for any and all available MTC security and medical staff to report to the medical emergency incident being called.  When the medical staff arrived, they noted that PLAINTIFF had redness to his left elbow without any swelling, at that time.  Plaintiff was helped up to his feet by the medical staff and assisted by medical staff to the MTC/TCCC Medical clinic where he was evaluated, given some Ibuprofen for significant pain in his left elbow and left knee, which he had landed on when he fell off the bunk. [EXHIBIT - 38] Nursing Narrative Note 06/09/2022 & "Injury Report" 06/09/2022 PLAINTIFF "need not suffer physical torture or a lingering death" to state a valid Eighth Amendment Claim.  MONMOUTH COUNTY CORRECTIONAL INSTITUTIONAL INMATES V. LANZARO, 834 F.2d 326, 348 (3d Cir. 1987); HELLING V. MCKINNEY, 509 U.S. 25 (1993); WILSON V. SEITER, 501 U.S. 294, 298 (1991); WILKINS V. GADDY, 130 S.Ct. 1175, 1178, 559 U.S. 34 (2010)

MTC has and does fail to appropriately equip the top bunks at TCCC with reasonable, durable and safe apparatus/equipment which allow patients to effectively

and safely practice safe up and down mobility access to the top bunk.

PLAINTIFF contends DEFENDANT MANAGEMENT & TRAINING CORPORATION can reasonably afford the cost to add reasonable, durable and safe apparatus/equipment to every bunk in TCCC. PLAINTIFF contends it would not be a reasonable declaration to say that MTC fails to have the resources to accommodate TCCC with reasonable, durable and safe apparatus/equipment to every bunk. MTC is a huge corporation with resources sufficient to provide the necessary and required safety and protection of the patients at TCCC.

PLAINTIFF contends the DEFENDANTS can be held in violation of their constitutional duty to provide PLAINTIFF with effective adequate medical care, in that DEFENDANTS were fully aware there was a medical issue/problem. PLAINTIFF has crested the "deliberate-indifference standard" by successfully showing:

- A serious medical condition exists/existed;
- DEFENDANTS were/are fully aware of the condition
- DEFENDANTS failed to adequately treat the condition, causing harm.

In a conversation on June 13, 2022, DEFENDANT JAMES WINCKLER stated to PLAINTIFF that he did not care what MTC/TCCC Medical Clinic Dr. Guy says because DEFENDANT JAMES WINCKLER felt it was not fair for PLAINTIFF to have a bottom bunk while older patients at TCCC don't have one, regardless of PLAINTIFF'S legitimate medical needs and condition. DEFENDANT JAMES WINCKLER further stated that PLAINTIFF could sue him and he will tell the Court how and why he is able to override MTC/TCCC Medical Clinic professional and licensed Ph. D. Dr. Guy.

PLAINTIFF contends that DEFENDANTS should be accorded wide-ranging appropriate deference in the adoption of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security.  However, there is nothing in the records to justify the inordinate delays in accommodating PLAITIFF'S in light of the practicality and availability of distinguishable solutions. DEFENDANT'S should not ignore handicapped PLAINTIFF'S basic needs or postpone addressing those needs out of mere convenience or apathy.  PLAINTIFF contends that DEFENDANT'S neglect was done with deliberate indifference and was a violation of the Eighth Amendment of the U.S. Constitution.

DEFENDANT JAMES WINCKLER cannot be the ultimate judge of what medical treatment is necessary or proper.  The Court must place confidence in the reports and/or testimony of reputable physicians.  COLE V. WILLIAMS, 526 F.2d 588 (2nd Cir. 1975); EDWARDS V. BROUGHTON, 519 F.2d 1399 (4th Cir. 1975); FORE V. GODWIN, 407 F. SUPP. 1145 (   Vir.  1976)  DEFENDANTS are legally obligated to provide medical treatment of a type recognized by medical authority.  It must be the most suitable medical treatment reasonably available.  RICKETTS V. CICCONE, 372 F. Supp. 1249, 1256 (1974) LEXIS 12393

On June 15, 2022, PLAINTIFF was transported from TCCC to the Lamb Healthcare Center, Radiology and did receive an MRI on his left knee.  The succeeding MRI Radiology report states, under it's "FINDINGS/IMPRESSIONS":

> "FINDINGS:
> The quadriceps and patellar tendon are intact.  The anterior and posterior cruciate ligaments are intact.  No joint effusion. Small Baker cyst is present.  Myoxid degenerative signal is present in the medial meniscus.  There is reduced volume of body of the lateral meniscus and a clumped appearance the

anterior medial aspect of the lateral meniscus concerning for a degree of bucket-handle tear. No bone marrow edema. Collateral ligaments, iliotibial band, and popliteus tendon are intact.
**IMPRESSION:**
Findings concerning for a bucket handle tear of the lateral meniscus. Small Baker cyst." [EXHIBIT - 39]  Copy of MRI Radiology Report

Even despite the fact and the evidence of PLAINTIFF'S MRI on his left knee and the findings and impressions on June 15, 2022 and multiple MTC/TCCC Professional Licensed Medical Staff Orders, DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON and DEFENDANT SERGENT MICHAEL ARNIVAS, who are not trained nor licensed medical professionals, in their own position, continued to refused to oblige PLAINTIFF with the medical care they could allow and he was in need of.

On June 20, 2022, DEFENDANT JAMES WINCKLER denied PLAINTIFF'S request to have photos taken, as a record, of nickel sized bruises and significant intense swelling of PLAINTIFF'S right leg injury caused from the fall off the top bunk. [EXHIBIT - 40] Copy of Communication

On June 24, 2022, MTC/TCCC Health Services Administrator/Director of Nurses, Ms. Graves, verbally advised PLAINTIFF that he did in fact still have an MTC/TCCC Medical approved and authorized "Bottom Bunk Pass" and under no circumstances should he be assigned to a top bunk because of his ongoing medical condition with his left knee. Ms. Graves then stated that she had called DEFENDANT JAMES WINCKLER and expressed her concerns to him about PLAINTIFF being assigned to a top bunk in his condition. Ms. Graves also stated that DEFENDANT JAMES WINCKLER had stated

65

that PLAINTIFF would be moved from a top bunk as soon as the facility had come off it's then current "COVID Limited Movement Protocols Status".

On June 30, 2022, after the "COVID Limited Movement Protocols Status" was lifted, MTC/TCCC Health Services Administrator/Director of Nurses, Ms. Graves again verbally advised PLAINTIFF she had called DEFENDANT JAMES WINCKLER, multiple times, to advocate her professional medical opinion of PLAINTIFF'S need to be on a bottom bunk.   However, DEFENDANT JAMES WINCKLER continued to disregard MTC/TCCC Health Services Administrator/Director of Nurses, Ms. Graves and other MTC/TCCC Medical Professional and Licensed opinions and Orders for PLAINTIFF to be assigned and housed on a bottom bunk because of his medical condition with his left knee and the threat of further harm and danger of more damage to his current injury. [EXHIBIT - 41]  Copy of Medical Records Note 06/17/2022

PLAINTIFF was not moved from a top bunk until October 03, 2022, placing PLAINTIFF at risk of further injuries and choosing to "refuse housing" to protect his health, which would lead PLAINTIFF to further digress from progress in his treatment and to a disciplinary infraction write up and further negative consequences, retaliations and harassments at the hands of the DEFENDANTS.

**MEDICAL DELIBERATE INDIFFERENCE AND HARASSMENT – SIGNIFICANT HARM:**

"Deliberate Indifference" to a serious medical need here I clearly manifested by DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON and DEFENDANT SERGENT MICHAEL ARNIVAS while knowingly and intentionally denying/delaying access to appropriate and reasonable medical care as well as the knowingly and intentional

interference with MTC/TCCC Medical Staff's prescriptions and treatments, reflecting the actions of a sufficiently culpable state of mind.  SMITH V. CARPENTER, 316 F.3d 178, 184 (2d Cir. 2003) All medical staff who have had an opportunity to examine and confer with PLAINTIFF concur that PLAINTIFF needed and would be benefited by the transfer to a bottom bunk.  This form of treatment, which all MTC/TCCC Medical Staff acknowledged as being a factor of an appropriate treatment for PLAINTIFF'S malady, has not shown to be inappropriate or unreasonable. (RICKETTS @ 1256)

PLAINTIFF, as a non-prisoner Patient at the TCCC, has been and still is emotionally, cognitively and physically distraught by DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON and DEFENDANT SERGENT MICHAEL ARNIVAS violent bad faith, intentional, knowing, arbitrary, capricious, malicious and sadistic non-medical and unprofessional acts against him.  KERR V. PUCKETT, 138 F.3d 321 (7th Cir. 1998) PLAINTIFF has been and is still grossly significantly exposed and subjected to limited physical mobility, constant/chronic pain to his left leg and knee, cause from the negligent violent bad faith, intentional, knowing, arbitrary, capricious, malicious and sadistic non-medical and unprofessional acts against him from DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON and DEFENDANT SERGENT MICHAEL ARNIVAS, in all their official capacity and in their individual capacity, under the color of state law. PLAINTIFF was significantly injured, from falling from a top bunk he was forced under duress to climb and access into.  PLAINTIFF contends he need not "suffer gross physical torments or prolonged death" to state a valid claim.  MONMOUTH COUNTY

CORRECTIONAL INSTITUTIONAL INMATES V. LANZARO, 834 F.2d 326, 348 (3d Cir. 1987)

PLAINTIFF contends that he sufficiently states this claim in true and good faith and that the past violent bad faith, intentional, knowing, arbitrary, capricious, malicious and sadistic non-medical and unprofessional acts against him have absolutely no reasonable facility/security justifications, was/are still a significant harmful harassment to PLAINTIFF and were/are "sufficiently serious" and each DEFENDANT knew or should have known their acts were in bad faith, harmful and were violating PLAINTIFF'S constitutional protections.

PLAINTIFF suffers from limited mobility and serious injury to his left knee, aggravated by the fall from a top bunk. Being assigned to a top bunk, in his condition, PLAINTIFF is at risk of falling again and irreparably injuring himself, even worse than he inexcusably has already had done to him. PLAINTIFF, clearly, alerted DEFENDANT HENERY ANTENCIO, DEFENDANT WAYNE SCMOKER, DEFENDANT JAMES WINCKLER, DEFENDANT CAPTAIN STETSON and DEFENDANT SERGENT MICHAEL ARNIVAS of his condition, of the fact that he was appropriately issued a "Bottom Bunk Pass" from MTC/TCCC Medical Clinic Staff and the fact that he had been involuntarily assigned to a top bunk. PLAINTIFF contends these allegations are sufficient, at this time, to state a claim for "Deliberate Indifference". FARMER V. BRENNAN, 114 S.Ct. 1970, 511 U.S. 825, 128 L.Ed.2d 811 (1994)

As such, stated DEFENDANTS are not entitled to any immunity, qualified or otherwise from PLAINTIFF'S appropriate and legitimate good faith Eighth Amendment claim against them. DEFENDANTS are not entitled to "Summary Judgement" as a

matter of law.  PLAINTIFF contends he has sufficiently set forth a number of specific facts showing there are a number of genuine issues for a Trial in this Court.

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF respectfully prays for Judgement in his favor as follows:

**REQUEST FOR DECLATORY RELIEF:**

Issuing declaratory relief declaring that the acts and the omissions of the DEFENDANTS, in their official governmental capacities, have violated the PLAINTIFF'S rights and stating the DEFENDANT'S duties with respect to those rights.

Declaring the issues of:

- TREATMENT TIERS

- DENIAL OF ACCESS TO COURTS

- PREMATURE TCCO INCIDENT REPORT

- UNCONSTITUTIONAL MTC/TCCC BMR HEARING

- MEDICAL DELIBERATE INDIFFERENCE/NEGLECT & HARASSMENT

As wrongful acts and unconstitutional violations of PLAINTIFF'S civil rights by the DEFENDANTS.

**REQUEST FOR INJUNCTIVE RELIEF:**

Issuing Injunctive Relief, commanding the DEFENDANTS, in their official governmental capacities, to provide PLAINTIFF with adequate TREATMENT TIERS; ACCESS TO COURTS; TCCO INCIDENT REPORTS; CONSTITUTIONAL MTC/TCCC BMR HEARINGS and MEDICAL CARE and provide PLAINTIFF with lifelong medical/rehabilitation care and treatment for PLAINTIFF'S medical condition(s) with his

left knee.

**REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF:**

Issuing Preliminary Injunctive Relief, commanding DEFENDANT KARON GONZALES – Texas Civil Commitment Office Case Manager, in her Official Governmental Capacity, to recuse herself as PLAINTIFF'S TCCO Case Manager and allow PLAINTIFF to be reassigned to a neutral/detached TCCO Case Manager. DEFENDANT KARON GONZALES, as PLAINTIFF'S TCCO Case Manager, creates a conflict of interest in her ethical and appropriate duties in that DEFENDANT KARON GONZALES is the person who filed the fallacious charges against PLAINTIFF and created all kinds of harassment's for PLAINTIFF.

PLAINTIFF further ask the Court to also ORDER that DEFENDANT KARON GONZALES – Texas Civil Commitment Office Case Manager to refrain from any connection of PLAINTIFF'S treatment and/or supervision on all levels, including any staff meetings and/or panels for PLAINTIFF'S treatment progress. PLAINTIFF contends that DEFENDANT KARON GONZALES' wrongful acts still continue, to the filing of this Complaint, namely:

A. Denial of access to Courts

B. Denial of Due Process

C. Denial of access to Counsel

D. Denial of progress in PLAINTIFF'S treatment

E. Continued retaliation through her denial of a cell phone to PLAINTIFF until January 19, 2023

F. Continued retaliation and refusal to obey State District Court's "ORDERS"

These wrongful acts, on the part of DEFENDANT KARON GONZALES, will cause further irrefutable harms that will occur and cannot be fixed should this request be postponed.

PLAINTIFF prays the Court will issue this Preliminary Injunctive Relief without waiting for the final adjudication of this Case in order to prevent further irrefutable harms that will occur and cannot be fixed should this request be postponed until after the Case has developed by the slower rate of ordinary Court progress.

**REQUEST FOR MONEY DAMAGES:**

**NOMINAL DAMAGES:**

In favor for the PLAINTIFF and against all DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for the wrongful violation of PLAINTIFF'S constitutional civil rights, in the amount of $001.00.

**COMPENSATORY DAMAGES:**

Awarding PLAINTIFF "Compensatory Damages" against appropriate implicated DEFENDANTS, each jointly and severally, in their "Individual Capacities", as appropriate, for the loss of progress in PLAINTIFF'S treatment and the added loss of appropriate effective physical mobility in his left knee, as a result of implicated DEFENDANT'S wrongful acts and deliberate indifference to PLAINTIFF'S need for appropriate and effective medical care, in an amount as yet to be deduced by the evidence, but in no event an amount no less than $100,000.00 per act per appropriately implicated DEFENDANT.

Awarding PLAINTIFF compensatory damages against appropriate implicated

DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for the violation of and loss of his personal property interest and the fraudulent and unconstitutional deprivation of his personal employment income/money and DEFENDANT'S cost of phone calls on the TCCC facility wall phones, as a result of the unconstitutional confiscation of PLAINTIFF'S cell phone, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $1,100.00  a month while PLAINTIFF was unemployed as a result of appropriate implicated DEFENDANTS wrongful acts and $60.00 a month to date for the cost of phone calls on the TCCC facility wall phones, as a result of the unconstitutional confiscation of PLAINTIFF'S cell phone, all equally divided between each appropriate implicated DEFENDANT.

**PUNITIVE DAMAGES:**

Awarding PLAINTIFF Punitive Damages against implicated DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for punitive retaliatory and harassing acts against him for exercising his Constitutional rights to seek redress of his grievances against TCCO and/or MTC staff, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $100,000.00 per appropriate implicated DEFENDANT.

Awarding PLAINTIFF Punitive Damages against implicated DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for punitive loss of PLAINTIFF'S reasonable expectation to privacy in the illegal search and seizure of his personal legal work, denial of access to Courts and Attorney, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $100,000.00 per appropriate implicated DEFENDANT.

Awarding PLAINTIFF Punitive Damages against implicated DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for punitive loss of PLAINTIFF'S reasonable expectation to progress in treatment without harassment and/or retaliation, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $100,000.00 per appropriate implicated DEFENDANT.

Awarding PLAINTIFF Punitive Damages against implicated DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for punitive significant chronic injury, emotional & mental suffering, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $400,000.00 per appropriate implicated DEFENDANT.

Awarding PLAINTIFF Punitive Damages against implicated DEFENDANTS, each of them jointly and severally, in their "Individual Capacities", as appropriate, for punitive intentional and knowing violation of civil rights while actin under the color of state law with malice, retaliation in connection with DEFENDANT'S medical and bottom bunk issues, in an amount as yet to be deduced by the evidence, but in no event, an amount no less than $200,000.00 per appropriate implicated DEFENDANT.

**REQUEST FOR A SPECIAL MASTER:**

PLAINTIFF prays for the appointment, if warranted by the Court, of a Special Master to assist in achieving any compliance ORDERED and to submit reports to the Court.

**REQUEST FOR COST AND ATTORNEY'S FEES:**

PLAINTIFF prays for the cost and Attorney fees to be paid for by DEFENDANTS.

Grant such further relief as this court deems just, proper and equitable.

**REQUEST FOR A BENCH TRIAL:**

PLAINTIFF prays the Court would GRANT him with a Bench Trial, on all issues triable by this Court and the Parties are hereby given Notice, pursuant to Federal Rules of Civil Procedures.

Respectfully submitted this _7th_ day of _July_ , 2023.

X _[signature]_

Santos Gomez III
Texas Civil Commitment Center
2600 S. Sunset Ave.
Littlefield, TX   79339

# VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Santos Gomez III, declare and verify, under penalty of perjury under the laws of the United States of America, that I have read the foregoing and that it is true and correct to the best of my belief and knowledge.

Dated this _7th_ day of _July_ , 2023.

X _[signature]_

Santos Gomez III

# EXHIBTS

# EXHIBT 1

# CERTIFIED COPY

NO. 2016-DCL-00365

| | | |
|---|---|---|
| IN RE: THE COMMITMENT OF | § | IN THE JUDICIAL DISTRICT OF |
| | § | |
| | § | CAMERON COUNTY, TEXAS |
| | § | |
| SANTOS GOMEZ, III | § | 103RD JUDICIAL DISTRICT |

## FINAL JUDGMENT

BE IT REMEMBERED that on __Aug. 15 2016__, this cause was called to trial, and the parties a p p e a r e d a n d announced ready for trial. A jury was then duly selected, and then seated, empaneled and sworn according to law. After considering the evidence, arguments and t h e Court's charge, on ___August 17, 2016___, the jury unanimously found beyond a reasonable doubt that SANTOS GOMEZ, III, Respondent, is a **sexually violent predator** as defined in S e c t i o n 841.003 of the Texas Health and Safety Code.

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that SANTOS GOMEZ, III is a **sexually violent predator** as defined in S e c t i o n 841.003 o f t h e Texas Health and Safety Code, and SANTOS GOMEZ, III is h e r e b y civilly committed as such in accordance with Section 841.081 of the Texas Health and Safety Code for treatment and supervision to be coordinated by the office whose directives SANTOS GOMEZ, III shall follow. Such treatment shall begin upon SANTOS GOMEZ, III's release from a secure correctional facility and be conducted in accordance with this Final Judgment and the Order of Commitment signed this date. SANTOS GOMEZ, III shall continue in such commitment until the behavioral abnormality of SANTOS GOMEZ, III has changed to the extent that SANTOS GOMEZ, III is no longer likely to engage in a predatory act of sexual violence and is released from commitment in accordance with Section 841.103, 841.121 or 841.124 of the Texas Health and Safety Code.

All costs are charged to the State of Texas pursuant to S e c t i o n 841.146(c) o f t h e Texas Health and Safety Code. This is a final, appealable judgment that disposes of all parties and claims. All relief requested and not expressly granted herein is DENIED.

SIGNED on __08 / 17 / 2016__.

Honorable Janet L. Leal
JUDGE PRESIDING

_____
SANTOS GOMEZ, III, Respondent

FILED __:3__ o'clock __P__ M
ERIC GARZA - DISTRICT CLERK

AUG 17 2016

DISTRICT COURT OF CAMERON COUNTY, TEXAS
By_____ Deputy #1

A TRUE COPY I CERTIFY
ERIC GARZA - DISTRICT CLERK

AUG 17 2016

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ Deputy #1

**CERTIFIED COPY**

NO. 2016-DCL-00365

| | | |
|---|---|---|
| IN RE: THE COMMITMENT OF | § | IN THE JUDICIAL DISTRICT OF |
| | § | |
| | § | CAMERON COUNTY, TEXAS |
| | § | |
| SANTOS GOMEZ, III | § | 103RD JUDICIAL DISTRICT |

**ORDER OF COMMITMENT**

SANTOS GOMEZ, III has this day been adjudged a **sexually violent predator** as defined in Section 841.003 of the Texas Health and Safety Code and has been **civilly committed** as such in accordance with Section 841.081 of the Texas Health and Safety Code. Therefore, the following commitment requirements in accordance with Section 841.082 of the Texas Health and Safety Code are necessary to ensure that SANTOS GOMEZ, III complies with treatment and supervision, and to protect the community. It is therefore ORDERED that:

1. Upon release from any TDCJ-CID facility, SANTOS GOMEZ, III shall immediately be transported by a representative of the Texas Civil Commitment Office ("Office") to the contracted Texas residential facility.
2. SANTOS GOMEZ, III shall reside where instructed by the Office;
3. SANTOS GOMEZ, III is prohibited from having contact with his victims;
4. SANTOS GOMEZ, III shall participate in and comply with the sex offender treatment program provided by the Office and shall comply with all written requirements imposed by the Office;
5. SANTOS GOMEZ, III shall submit to the treatment and supervision administered by the Office;
6. SANTOS GOMEZ, III is required to submit to tracking under a particular type of tracking service and to submit to any other appropriate supervision, and SANTOS GOMEZ, III shall refrain from tampering with, altering, modifying, obstructing, or manipulating the tracking equipment; and
7. SANTOS GOMEZ, III is prohibited from leaving the State without prior authorization from the Office.

IT IS FURTHER ORDERED that the Office shall determine conditions of supervision and treatment for SANTOS GOMEZ, III. The Office shall provide treatment and supervision to SANTOS GOMEZ, III. The provisions of supervision must include a tracking service and, if determined necessary by the Office, supervised housing. The Office shall provide a timely report of the biennial examination to this Court and to SANTOS GOMEZ, III as required by Section 841.101 of the Texas Health and Safety Code.

SANTOS GOMEZ, III is hereby notified that:

1. Violation of a civil commitment requirement imposed under Section 841.082(a)(1),

A TRUE COPY I CERTIFY
ERIC GARZA, DISTRICT CLERK
AUG 17 2016
DISTRICT COURT OF CAMERON COUNTY, TEXAS

**CERTIFIED COPY**

(2), (4) or (5) is a criminal offense that is a felony of the third degree, and which may be enhanced to a more severe punishment.

2.  SANTOS GOMEZ, III is required to comply with the sexual offender registration requirements under Chapter 62 of the Texas Code of Criminal Procedure. Failure to comply with the registration requirements of Chapter 62 is a criminal offense that is a felony of the second degree, and which may be enhanced to a more severe punishment.

3.  SANTOS GOMEZ, III has the right to file an unauthorized petition for release pursuant to Section 841.122 of the Texas Health and Safety Code.

IT IS FURTHER ORDERED that a biennial review shall be conducted, in accordance with Section 841.102 of the Texas Health and Safety Code, on or about _Aug. 14, 2018_____, 2018. If the Court determines at the biennial review that a requirement imposed should be modified, or that there is probable cause to believe that SANTOS GOMEZ, III is no longer likely to engage in a predatory act of sexual violence, notice will be given and a hearing set upon written motion.

SIGNED on ___09/17/2016___.

Honorable Janet L. Leal
JUDGE PRESIDING

Thumbprint of SANTOS GOMEZ, III
taken by _M. Job_
_Manu Jacinb_

SANTOS GOMEZ, III


Right Thumbprint

FILED 5:51 o'clock P M
ERIC GARZA - DISTRICT CLERK

AUG 17 2016

DISTRICT COURT OF CAMERON COUNTY, TEXAS
By_____ Deputy

A TRUE COPY I CERTIFY
ERIC GARZA - DISTRICT CLERK

AUG 17 2016

DISTRICT COURT OF CAMERON COUNTY, TEXAS
d_____ Deputy

# EXHIBT 2

# TEXAS CIVIL COMMITMENT CENTER
## MONTHLY TREATMENT PROGRESS REPORT

**Client Name:** Gomez, Santos

**TCCC #:** 07175363

**Date of Birth:** 6/15/1983

**Tier Level:** 4

### July 2021 Progress Note

**Group Attendance:**

All scheduled group sessions were attended during this report period.

**Summary of Progress/Strengths and Areas for Improvement:**

Mr. Gomez continues to be an active and attentive group member who appears treatment focused. Mr. Gomez provides quality feedback, and makes an effort to apply what he has learned. Mr. Gomez also appears receptive to feedback.

Mr. Gomez had the following presentations as of his last monthly report:

7/7 – Safety Plan (needs to continue)

**Summary of Individual Session(s):**

An individual session was held on 5/14/21. An ACUTE was completed during the session. The session focused on providing feedback and confidence.

**Summary of Behavioral Incidents:**

There were no disciplinary actions since the last staffing.

**Summary of Monthly Staffing:**

Staffing was held on 7/16/21. Present were SOTP Gill, CM Gonzales, CM Kingston.

The case manager reported no supervision concerns at this time. During this staffing, an AGE placement was discussed. Mr. Gomez is estimated to be 97% complete with the Tier 4 curriculum at the time of the last staffing.

- **Date of Next Polygraph:** 3/10/2022
- **Date of Next PPG:** 10/29/2021
- **Date of Next Biennial:** 8/30/2022
- **Date of Next STABLE:** 4/2/2022

**Client Comments:**

July 19th. I am completed with Tier 4 and would like to know what's next? Since A.G.E. is not required, turned in Safety Plans, resume is ready to be turn in, what else am I required to do?

Thank You

Santos Gomez

Charles Gill

7-28-21'
Date

7/28/21
Date

# Texas Civil Commitment Office
## Supervision Progress Report
Prepared by Karon Gonzales
For **July 2021**

---

**Client:** Santos Gomez III
**Date of Birth:** 06/15/1983
**Home Address:** 2600 S Sunset Ave, Littlefield, Tx 79339
**Treatment Provider(s):** Charles Gill

---

**Tier Level:** 4

---

Contact with Treatment Provider:

**Additional Assessments:** An acute was completed on 05/14/21 and stable on 4/02/21.

**Individual Session:** Mr. Gomez had an individual session with CT Gill on 05/14/21. CT Gill saw Mr. Gomez for his individual session. An ACUTE was completed during this session – Mr. Gomez scored a 0, placing him in the low priority category. During this session, I encouraged Mr. Gomez to increase his feedback in group. We discussed how feedback demonstrates self-monitoring and self-awareness, as well as confidence. We also discussed how by using appropriate boundaries one can remain pro-social and assertive.

**Assignments/Participation:** Mr. Gomez continues to be an active and attentive group member who appears treatment focused. Mr. Gomez is currently working on his Safety Plan and after completing he will need to present in group. Mr. Gomez continues to do very well in group. Mr. Gomez frequently provides feedback in group and appears receptive to feedback as well. CM and CT discussed AGE placement. CM stated is working on the memo  to be placed on panel.

**Assignment Tracking:** Mr. Gomez is approximately 97% completed with required assignments from his tracking sheet.

**Recommendations for Improvement:** Recommendations for Mr. Gomez continue to keep up the good work you are making progress.

**Registration:** Mr. Gomez last registration was verified 8/26/19 with Littlefield PD.
**TXID:** Mr. Gomez does have a valid TXID. Expires on 05/05/2027
**Current Tier Level:** Mr. Gomez has been in Tier 4 since 7/13/20.
**Incident Reports:** Mr. Gomez has not receive any incident reports.
**Drug Testing:** Mr. Gomez submitted for a urinalysis on 04/27/21. The results were negative for all substances.
**Polygraph:** Mr. Gomez Last maintenance polygraph was completed on 03/10/21 No Deception Indicated. Next polygraph is due 03/10/22.
**PPG:** Mr. Gomez Last PPG was completed on 10/29/19 with significant arousal to 4 of the 21 segments in the adult basic series, all consisting of female stimuli.  He demonstrated arousal to 3 non-deviant segments and one deviant segment (all adult female). Next PPG is not due until 10/29/21.
**Biennial:** Mr. Gomez biennial extension letter e-filed on 08/28/20. Still waiting on courts.
**Annual Review:** Mr. Gomez annual review is due July 2021.
**Mental Health:** Mr. Gomez is not on the mental health caseload.
**Cost Recovery:** Mr. Gomez is compliant with Cost Recovery.
**Collaterals:** Mr. Gomez does not have any pending collaterals.

Dist: Case Manager File
      Client
      Scan to CSS

Page 1 of 2

TCCO-24-16
Rev. 07/01/2020

# Texas Civil Commitment Office

## Supervision Progress Report

**Client Comments:** On 8-7-2021, I will complete "Substance Abuse" on Saturdays. I will continue to self-monitor to maintain healthy behaviors. Let me know if there is anything that I am required to do going forward?

Thank You.

## Case Manager Summary:

**Parole:** Mr. Gomez is not currently on dual supervision

**Employment:** Mr. Gomez is currently employed.

**GPS:** Mr. Gomez has no GPS due to being on Tier 4.

**Education:** Mr. Gomez has a HS diploma.

**Cell Phone:** Mr. Gomez is currently with Great Call and has complied with all his collateral calls. He is staying within the parameters of his cell phone agreement and remained within the approved time constraints.

**Home Visits:** CM conducted home visit on client Gomez this date. Mr. Gomez reports he is doing well emotionally and mentally. Mr. Gomez reports treatment is going well and stated that he is 100% complete of his Tier 4 curriculum. He stated that he presented on 7/19/21 his Safety Plan if he loses his job or income. Mr. Gomez has turned his resume to CM and his folder of High-Risk Plans. States he participates in group discussions and provides feedback to his peers. Mr. Gomez does not have any issues with medical or refills at this time. He is not on the mental caseload. Mr. Gomez reports no housing unit or resident issues at this time. Mr. Gomez keeps in contact with his family and reports no issues with their concerns or conversations. Mr. Gomez did not have any other concerns for CM. Mr. Gomez had a positive attitude and his dorm living area was clean.

**Office Visits:** CM met with client on 07/08/21 for an office visit. Mr. Gomez is doing well mentally and emotionally. He is working in the laundry department and has no issues. Mr. Gomez keeps in contact with his family and friends. Mr. Gomez reports no housing or resident issues and did not have any other concerns for CM. Mr. Gomez stated that he has 6,445.05 saved in his account. He also stated that he is opened to live anywhere that is able to move into. It has been recommended to promote to AGE.

_____

Client Signature-I have received a copy of this report

_8·6·2021_____

Date

Dist:  Case Manager File
       Client
       Scan to CSS

Page 2 of 2

TCCO-24-16
Rev. 07/01/2020

# EXHIBT 3



Management
& Training
Corporation
A Leader in Social Impact

# Texas Civil Commitment Center
## Client Communication Form

**Type of Communication**

☐ REQUEST FOR COPIES/RECORDS
☐ REQUEST FOR PROPERTY
☑ OTHER Specify: _Mrs. Gonzales/TCCO_

NAME: _Santos Franco_   DATE: _10-7-21_   TCCO#: _17536_ UNIT: _F1-4-23_

**Client write request in this box:**

Is it possible that I call the Brownsville courthouse
using the phone in the room where other residents
use to make calls? I know you told me not to call
the courthouse in the pass, but I would like to
know if my bi-annual is going to be reviewed by
the judge soon. It's been over a year that I
haven't heard anything from the courts.  Thanks

Client Signature: _____  Date: _10-7-21_

Date Communication received: _10/18/21_

**Staff Response to request:**

NO you can not call
-any courthouse.

Staff Signature: _____  Staff Name Printed: _Karen Gonzales_

Staff Title: _CM_   Date: _10/18/21_



**Texas Civil Commitment Center**
**Client Communication Form**

**Type of Communication**

☐ REQUEST FOR COPIES/RECORDS
☐ REQUEST FOR PROPERTY
☑ OTHER Specify: _Mrs. Gonzales / TCCO_

NAME: _Santos Gomez III_     DATE: _12·13·21_     TCCO# _7175363_     UNIT: _D·2_

**Client write request in this box:**

I know in the past you have told/said to me that I can not call the courthouse. Is it possible for me to write the following courthouse? The someone I was trying to call.

      Honorable
      Judge Janet Leal
      103 District Court
      974 E. Harrison st
      Brownsville, TX 78520

                             Thank You
                             For Your Time.

Client Signature: _____     Date: _12·13·21_

Date Communication received: _12/13/21_

**Staff Response to request:**

No you can not for the 3rd time you need to go through state Council for Offenders.

Staff Signature: _____     Staff Name Printed: _Ilann Gonzalez_
Staff Title: _CM_     Date: _12/13/21_

# EXHIBT 4

57

# MTC - Texas Civil Commitment Center

## Step 1     GRIEVANCE FORM

| DATE RECIEVED | DATE DUE | GRIEVANCE NUMBER |
|---|---|---|
| 11/18/2021 | 12/18/2021 | GV 21-11-10 |

SVP Client Name: Santos Gomez III          SID #: 07175363

Housing Assignment: D-2

Where incident occurred: MTC

You must try to informally resolve your problem with a staff member before you submit a formal complaint. The only exception is when appealing the results of a disciplinary hearing.

Who did you talk to (name, title)? Mr. Winckle / Chief of Security

When? 11/10/21          What was their response? none; refused

What action was taken? none; refused

State your grievance in the space provided. Please state who, what, when, where and whether or not this is an appeal to a disciplinary infraction, if appropriate.

Lamb county has found not enough probable cause or evidence to criminally charge me.

Therefore, I represent the sanctions were excessive for the allegation and a due process and constitutional violation.

**YOUR SIGNATURE ID REQUIRED ON THE BACK OF THIS FORM (OVER)**

MTC-Step 1                          Revised 5/1/2019

Rev. 57

Action Requested to resolve your Complaint.

Remove all forms of restrictions and sanctions.

SVP Client Signature: _____ Date: 11/16/21

Grievance Response:

Mr. Gomez,

The outcome of our investigation conducted by
outside law enforcement agency do not
weigh themselves into this administration ~~~
The Committee found that your actions were
enough to substantiate that you were responsible
for violating the rules.

Grievance Investigator Printed Name/Signature: _____ /A. Corrales

Signature Authority: _____ / V Schmacher /AFA   Date: 1-29-21

If you are dissatisfied with the Step 1 response, you may submit a Step 2 to the within 15 days from the data of the Step 1 response. State the
reason for appeal on the Step 2 form.

MTC-Step 1

Revised 5/01/2019

# EXHIBT 5

MTC - Texas Civil Commitment Center
Rev. 58

## Step 2                    GRIEVANCE FORM

| DATE RECIEVED | DATE DUE | GRIEVANCE NUMBER |
|---|---|---|
| 12/13/2021 | 1/12/2022 | GV 21-11-10 |

SVP Client Name: ___SANTOS GOMEZ III___  SID #: ___07175363___

Housing Assignment: ___D-2___

Where incident occurred: ___M.T.C 's LITTLEFIELD - BCDC FACILITY___

You must attach the completed Step 1 grievance that has been signed by the Assistant Facility Administrator for your Step 2 appeal to be accepted. You may not appeal to Step 2 with a Step 1 that has not been processed.

___GV 21-11-10___

Give reason for appeal (Be specific). I am dissatisfied with the response at Step 1 beacuse....

I would disagree that a Law Enforcement Investigation's Conclusion(s) "Do Not Weigh Themselves into a [MTC] administrative Investigation." As ALL Decisions made by an Internal Investigation are Subject to State District Court Review, I would represent that the Legal Doctrine of *"res judicata"-A Thing Decided-* Is Binding upon the Parties = {ME > MTC/TCCO} in Any and All Subsequent Litigation concerning the same incident. --Also See:: *"Collateral Estoppel"-* Estoppel created by an Official Entity,-Even though the Proceedings did not involve All of the Same Parties.

In this Scenario we have a Biased Tribunal run by a Paid Contractor of the State of Texas / TCCO,-{That have a Conflict of Interest by Contract that Requires it to Do what Is in the Interests of TCCO/ State of Texas-Not Me.} What MTC allowed to Occur in its BMR Proceeding(s), Violated My Procedural Due Process and Substantive Due Process Rights. ADDITIONALLY: As I have Suffered Liberty Interest and Tier Placement Demotion Adverse and Deleterious Consequences,-A HEARING Before My Committing Court is REQUIRED BY LAW-i.e. TX HSC-Chapter 841. I have Received No NOTICE OF SETTING of this Hearing.

Not to be Disrespectful, but the MTC's BMR Court is Defined by the Legal Precedents and Dictionary as a *"Kangaroo Court"-*as It has No Legal Authority and is Self-Appointed at which Few or None of the Regular Judicial Procedures are Followed. As even if Granted *"Inferior Court Status"* by the 154th Judicial District Court in Lamb County,-The Denial of Family Contact,-Especially During the Holiday Season,-Seems Excessively Cruel and Unusual and Probably Represents an Actionable Tort by MTC.

As much as I may have been Haphazardly Responsible by an Error of Judgement,-This was NOT the Conclusion of the Authorities. Nor did they Warrant such Repressive & Emotionally Destructive Excessive Consequences.

ATT: COPY OF COMPLETED STEP 1

YOUR SIGNATURE IS REQUIRED ON THE BACK OF THIS FORM (OVER)

MTC-Step 2                                    Revised 5/1/2019

Rev. 58

Action Requested to resolve your Complaint.

I simply request that MTC Not Engage in Abuse of Discretion -i.e.: Over Punishment / Excessive
Consequences. The issue was not intended to be an Affront on Either the Authority of MTC or its
Customer TCCO. To resolve this without involving the 154th Judicial State District Court and/or the
BHEC- & My Committing Court, Re-Establish My Status Quo Tier Level and Collateral Contacts and
Privileges.

SVP Client Signature: _____          Date: 12-10-2021

Grievance Response:

I have reviewed your Step 2 Grievance and
Supporting documents.
I concur AFA Schmoker. The Lamb
County Investigation and the Facility BMR
Are exclusion of one another. The BMR
comittee found that your actions were in
Violation of the rules.

Grievance Investigator Printed Name/Signature: _____ / Henry Atencio

Signature Authority: _____          Date: 12/30/21

MTC-Step 2                                                    Revised 5/1/2019

# EXHIBT 6

Rev. 55

# Texas Civil Commitment Office

## Step 1 Grievance Form

Client Printed Name: Santos Gomez III

Signature: _____     Date: 11-16-21

Date of Issue: 11-10-21

TCCO issued me an incident report. Based on this I was adjudicated "liable" at the MTC BMR Hearing.

However, Lamb County has found not enough probable cause or evidence to criminally charge me.

Therefore I represent the sanctions were excessives for the allegation and a due process & constitutional violation.

n/a incident appeal

Reinstate me to tier 4 w/a special assignment on this issue

TCCO-11-16D
(Rev. 03/17)

# Texas Civil Commitment Office

*Rev. 3/17*

## Grievance Response Form

| | |
|---|---|
| **Client Name:** Santos Gomez | ☑ **Step 1**   ☐ **Step 2** |
| **Facility:** Texas Civil Commitment Center - Littlefield | |
| **Grievance Number:** G-0186-11-21 | **Date Received:** 11/23/2021 |
| **Grievable Issue:** 13-Policy Complaints. | **Date Response Due:** 12/23/2021 |
| | **Date Response Sent:** 12/10/2021 |

**Response:**

Your grievance concerning the sanctions issued during a BMR hearing has been received and reviewed. You indicated the sanctions were excessive because there was not sufficient probable cause to criminally charge you.

Pursuant to TCCO Policy 3.7: Client Grievance Procedures, all clients are required to resolve issues utilizing an informal resolution process and file a grievance with MTC if the informal resolution was unsuccessful.

A review of the available documentation indicates you have not exhausted all grievance processes available to you prior to the submission of this grievance.

| | |
|---|---|
| **Grievance Respondent Signature:** | **Title:** Operations Monitor |
| **Grievance Respondent Printed Name:** B. Baptiste | **Date:** 12/10/2021 |

**Grievance Screening Criteria:**

☐ The issue presented is not a grievable issue.
☐ The grievance was submitted in excess of five (5) during the current calendar month.
☑ The grievance has been submitted without exhausting all grievance procedures available through contracted service providers.
☐ Grievable time period has expired.
☐ There is no documented attempt at informal resolution.
☐ The grievance fails to state requested relief.
☐ The grievance presents multiple issues.
☐ The grievance is redundant and has already been presented in a separate grievance.
☐ The grievance presents the malicious use of vulgar, indecent, or physically threatening language.
☐ The text is illegible or incomprehensible.
☐ The grievance is inappropriate such that it requests monetary damages or any form of disciplinary action against staff.
☐ The grievance was submitted with inappropriate/excessive attachments.

**Due to the above checked screening criteria your grievance has been unprocessed. You may correct and resubmit the grievance within fifteen (15) days.**

my
copy

# Texas Civil Commitment Office

Rev. 59

## Step 1 Grievance Form

**Client Printed Name:** Santes Gomez III

**Signature:** _____ III    **Date:** 12-30-21

**Date of Issue:** 12-30-21

TCCO c/m Mrs. Gonzales issued me an incident report for violating rule
number 4. Based on this I was adjudicated liable at the
MTC BMR hearing only However Lamb County, Sheriff Deputy
Christopher Weston, LCSO found no probable cause or evidence
to pursue anything further.

Therefore, I represent the sanctions given by Chief James Winkler
were excessive for the allegation and a due process and
constitutional violation.

MTC Step 1 - Nov 16th 2021   (GV-21-11-16)
MTC Step 2 - Dec 16th 2021   (GV-21-11-16)

Reinstate me to Tier 4 with Tier 4 privileges, Including
job assignment and housing area prior to incident report.

cc: Step 1 & 2 MTC Grievance
cc: Office of the County & District Attorney

TCCO-11-16D
(Rev. 03/17)

# Texas Civil Commitment Office

*Rev. 60*

## Grievance Response Form

| | |
|---|---|
| **Client Name:** Gomez, Santos | ☑ **Step 1**   ☐ **Step 2** |
| **Facility:** Texas Civil Commitment Center - Littlefield | **Date Received:** 01/10/2021 |
| **Grievance Number :** G-0191-01-22 | **Date Response Due:** 02/09/2022 |
| **Grievable Issue:** 13 - Policy Complaints | **Date Response Sent:** 01/31/2022 |

**Response:**

Your Step 1 Grievance regarding reinstatement of Tier 4 with Tier 4 privileges has been received and reviewed. During the inquiry into the complaint, it was determined the behavior management committee applied sanctions within MTC policy 906 DIS-12-18-1. Additionally, your treatment team's actions in reducing your tier level was in accordance with policy 4.1. Your grievance is considered closed.

| | |
|---|---|
| **Grievance Respondent Signature:** | **Title:** Operations Specialist |
| **Grievance Respondent Printed Name:** Joshua Castro | **Date:** 01/31/2021 |

**Grievance Screening Criteria:**

☐ The issue presented is not a grievable issue.
☐ The grievance has been submitted without exhausting all grievance procedures available through contracted service providers.
☐ Grievable time period has expired.
☐ There is no documented attempt at informal resolution.
☐ The grievance fails to state requested relief.
☐ The grievance presents multiple issues.
☐ The grievance is redundant and has already been presented in a separate grievance.
☐ The grievance presents the malicious use of vulgar, indecent, or physically threatening language.
☐ The text is illegible or incomprehensible.
☐ The grievance is inappropriate such that it requests monetary damages or any form of disciplinary action against staff.

**Due to the above checked screening criteria your grievance has been unprocessed. You may correct and resubmit the grievance within fifteen (15) days.**

TCCO-11-16B
(Rev. 03/17)

# EXHIBT 7

**Texas Civil Commitment Office** Rev. 61

My copy

# Step 2 Grievance Form

| | Official Use Only |
|---|---|
| Client Printed Name: Gomez, III Santos | **Grievance Number** |
| Signature: _____ Date: | |
| Step 1 Grievance Number: G-0191-01-22 | Date Received | Date Due |
| Date Step 1 Grievance Response Received: 2-4-2022 | | |

**DESCRIPTION:** Summary of the incident or occurrence giving rise to the grievance or reason for the grievance. Include the date, time, names of staff involved, potential witness names, the location where the issue occurred, and any other relevant information (attach additional pages if necessary along with documents relevant to the issue).

Per policy 406 DIS-12-18-f, 2-B there was no informal resolution done by TCCO/MTC, 3-B, no preliminary investigation was done by another staff member uninvolved in the incident, or by TCCO/MTC, No. 4-A, no preliminary investigation report was done. 4B, 11-4-21 case manager Mrs. Karen Gonzales wrote incident report, 11-8-21 presented to client. Whereas, policy indicates uninvolved staff member needed to provide notice verbally to client. 4-D.E. Uninvolved staff failed to inform client "24 hrs notice of rights". Uninvolved staff didn't retain any evidence or completed incident report to supervisor, because no investigation was done. No A.E.A. or shift supervisor was present in BMR. Policy 4.1.E-I participated in a BMR, therefore a tier reduction should not have occurred.

**STEPS YOU HAVE TAKEN TO INFORMALLY RESOLVE THE ISSUE PRIOR TO FILING THE GRIEVANCE:**

Spoke with cm-Mrs. Gonzales (11-8-21), MTC step 1 & 2, TCCO Grievance step 1
(GV-21-11-10)     (G-0191-01-22)

**YOUR RECOMMENDATION TO RESOLVE THE ISSUE:**

Reinstate me to Tier 4 with Tier 4 privileges. Including job assignment and housing area prior to incident report. Also retaliation done by Mrs. Gonzales or TCCO personal, and MTC staff.

CC: Written Comments, provided pursuant to Sec. 552.301 (e)(i)(A)
CC: Office of the County & District Attorney (letters to The Honorable Ken Paxton)

**TCCO-11-17E**

# Texas Civil Commitment Office

Rev. 62

## Grievance Response Form

| | |
|---|---|
| **Client Name:** Santos Gomez III - 07175363 | ☐ **Step 1**    ☑ **Step 2** |
| **Facility:** Texas Civil Commitment Center - Littlefield | |
| **Grievance Number :** G-0191-01-22 (2) | **Date Received:** 02/15/2022 |
| **Grievable Issue:** 13 - Policy Complaints | **Date Response Due:** 03/17/2022 |
| | **Date Response Sent:** 03/16/2022 |

**Response:**

Your Step 2 Grievance regarding your tier placement and privileges has been received and reviewed. The response to your Step 1 Grievance (G-0191-01-22) was appropriate and correct. Your Step 2 Grievance is considered closed.

| | |
|---|---|
| **Grievance Respondent Signature:** *Kara B Gougler* | **Title:** Director of CM Services |
| **Grievance Respondent Printed Name:** Kara Gougler | **Date:** 03/16/2022 |

**Grievance Screening Criteria:**

☐ The issue presented is not a grievable issue.
☐ The grievance has been submitted without exhausting all grievance procedures available through contracted service providers.
☐ Grievable time period has expired.
☐ There is no documented attempt at informal resolution.
☐ The grievance fails to state requested relief.
☐ The grievance presents multiple issues.
☐ The grievance is redundant and has already been presented in a separate grievance.
☐ The grievance presents the malicious use of vulgar, indecent, or physically threatening language.
☐ The text is illegible or incomprehensible.
☐ The grievance is inappropriate such that it requests monetary damages or any form of disciplinary action against staff.

**Due to the above checked screening criteria your grievance has been unprocessed. You may correct and resubmit the grievance within fifteen (15) days.**

TCCO-11-16B
(Rev. 03/17)

# EXHIBT 8

RECEIVED 5/24/2022 12:56 PM
2016-DCL-00365 / 64801714
LAURA PEREZ-REYES
Cameron County District Clerk
By Vilma Garcia Deputy Clerk

NO. 2016-DCL-00365

| | | |
|---|---|---|
| IN RE THE CIVIL COMMITMENT | § | IN THE DISTRICT COURT |
| | § | |
| OF | § | 103RD JUDICIAL DISTRICT |
| | § | |
| SANTOS GOMEZ, III | § | CAMERON COUNTY, TEXAS |
| | § | |

## ORDER TO NULLIFY MOVEMENT TO MORE RESTRICTIVE HOUSING

It being called to the attention of the Court that SANTOS GOMEZ III, in the above-numbered and styled cause is entitled to have his clinical or treatment status restored to his status prior to October 23, 2021 (Tier 4 with AGE pending), in the 5-Tier Program under the direction of the Texas Civil Commitment Office at the Texas Civil Commitment Center in Littlefield, Texas which is managed by Management Training Corporation. This includes restoration of Tier 4 housing, removal of ankle monitoring, and ending all remedial measures. The Court finds that the incident and follow-up actions were NOT in compliance with Texas Health and Safety Code, Chapter 841.0834 (d) as a hearing was not held within 90 days, and the actions were not warranted.

The Court ORDERS The Civil Commitment Office's decision to move Santos Gomez III to a more restrictive setting nullified. Further, to ensure no future negative consequence to Santos Gomez III as a result of this matter, the court ORDERS the Texas Civil Commitment Office, Texas Civil Commitment Center, and Management Training Corporation to redact this matter in their records.

The clerk is hereby ORDERED to send a certified copy of this Order to the parties.

Signed this _____ day of _____ 5/25/2022 8:28:26 AM _____ 2022.

JANET LEAL, JUDGE PRESIDING

FILED
2016-DCL-00365                              NO. 2016-DCL-00365
June 1, 2022                    8:49 a.m.
LAURA PEREZ-REYES
CAMERON COUNTY DISTRICT CLERK
BY:Munoz, Adriana

cc: 6/1/2022(emailed)
Hon Samantha Torres
Hon Douglas E Moyer Sr.

# EXHIBT 9

# LHC

**LAMB
HEALTHCARE
CENTER**

1500 South Sunset • Littlefield, Texas 79339
(806) 385-6411
FAX (806) 385-2006

**365961**

## FAX

To: MTC Medical AT                From: Julie

Fax: 485-8186                     Pages: 5+ Cover

Email: _____           Email: _____

Phone: _____           Date: 6-17-22

RE: _____              CC: _____

☐Urgent   ☐For Review   ☐Please Comment   ☐Please Reply   ☐Please Recycle

Comments: Pt. Gomez III Santos DOB- 6-15-83
OP- DOS- 6-15-22
            MRI
                    Thank you
                    Med. Recs

**CONFIDENTIAL NOTICE:** The information contained in this facsimile or email message is confidential information intended only for the individual or entity named above. If the reader of this message is not the intended recipient, you are respectfully notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately at phone (806) 385-6411.

LAMB HEALTHCARE CENTER          1500 S SUNSET          LITTLEFIELD   TX 79339

**RECORD OF ADMISSION**

| EXPIRE DATE 6/15/22 | | | | | | |
|---|---|---|---|---|---|---|

PATIENT NAME: GOMEZ III SANTOS    ROOM NO.    HOSP. NO. 365961    ADDRESS LINE – 1  2600 SOUTH SUNSET    ADDRESS LINE – 2

| AGE 39 | BIRTHDATE 06/15/1983 | SEX M | | BIRTHPLACE | | CITY LITTLEFIELD | STATE TX | ZIP CODE 79339 | COUNTY CODE 107 |
|---|---|---|---|---|---|---|---|---|---|

RELIGION: H    NATIONALITY    CIVIL ST.    MILITARY N    RELIGION    CHURCH    PATIENT TELEPHONE 806-485-8100

NAME OF HUSBAND OR NAME OF WIFE    SPOUSE BIRTHPLACE    SPOUSE EMPLOYER NAME

SPOUSE ADDRESS    SPOUSE EMPLOYER ADDRESS

NAME OF FATHER    BIRTHPLACE    NAME OF MOTHER    BIRTHPLACE

NEAREST RELATIVE: TEXAS CIVIL COMMITMENT    UNKNOWN    2600 S SUNSET A LYTTLMF TX    TELEPHONE 806-485-8100

UNEMPLOYED    EMPLOYER NAME    TEXAS CIVIL COMMITMENT    806-485-8100    EMPLOYER ADDRESS    NEXT-OF-KIN    GUARANTOR TELEPHONE    GUARANTOR OCCUPATION

GUARANTOR ADDRESS – 1  2600 S SUNSET AVE    LITTLEFIELD    TX 79339    GUARANTOR EMPLOYER    TEXAS CIVIL COMMITME 000000000000000

GUARANTOR ADDRESS – 2    STATE ZIP CODE    NAME    FIRM    PLACE    NIGHT

ATTENDING PHYSICIAN: PENA M    CONSULTING PHYSICIAN    ADMITTING SERVICE X-RAY    ROOMS 4    MRI    ADMITTING DIAGNOSIS

ALLERGIES

| FINANCIAL CLASS TB | MEDICAL RECORDS NUMBER 30035445 | ADMISSION CODE 31/ML PR | | DATE LAST ADM. 10/02/18 | PREV. ADM. NO. 312532 | ADMISSION DATE 6/15/22 | TIME OF ADMISSION 1:38 PM | METHOD CC | DISCHRG DATE 615: |
|---|---|---|---|---|---|---|---|---|---|

PRINCIPAL DIAGNOSIS:

ADVANCE DIRECTIVE = N    CODE

SECONDARY DIAGNOSIS:

_____

_____

_____

_____

PRINCIPAL OPERATION/DATE:

_____

_____

SECONDARY OPERATIONS:

_____

_____

_____

Consultation With _____

Results:  ☐ Recovered   ☐ Improved   ☐ Not Improved   ☐ Not Treated   ☐ Diagnosis Only   ☐ Died   ☐ Released Against Advice

Cause of Death _____    Autopsy:  ☐ Yes   ☐ No

I have examined and approved this complete medical record on _____ 20 ___

Signed _____    Attending Physician

ADMISSION — SUMMARY SHEET

LAMB HEALTHCARE CENTER
LITTLEFIELD, TX 79339

```
--------NAME--------   NUMBER  SEX AGE   ADMIT      DISC.   XRAY#  F/C   TYPE
  GOMEZ III SANTOS        365961    M   39   6/15/22   6/15/22 3003544TB        O/P
    DATE OF BIRTH: 06/15/1983    M/R# 30035445       PH#: 806-485-8100   RM
```

LOCATION:
MRI KNEE LT W/O 73721              73721        TRANSCRIBED: 06/15/22 20:27 MT
{REASON FOR PROCESS:  CHRONIC LT KNEE PAIN      COMPLETED:06/15/22 15:42 LM   5893(

PHYSICIAN: LHC

---

### RADIOLOGY REPORT

---

PERFORMING LOCATION:  LAMB HEALTHCARE CENTER

EXAM: MRI KNEE LT W/O 73721 – 06/15/2022


HISTORY:
Patient hurt knee standing from a chair sitting position.  Knee pain.

TECHNIQUE:  Multi-echo, multiplanar unenhanced images of the left
knee.

COMPARISON:  None.

FINDINGS:
The quadriceps and patellar tendon are intact.  The anterior and
posterior cruciate ligaments are intact.  No joint effusion.  Small
Baker cyst is present.  Myxoid degenerative signal is present in the
medial meniscus.  There is reduced volume of the body of the lateral
meniscus and a clumped appearance of the anterior medial aspect of
the lateral meniscus concerning for a degree of bucket-handle tear.
No bone marrow edema.  Collateral ligaments, iliotibial band, and
popliteus tendon are intact.

IMPRESSION:
* Findings concerning for bucket-handle tear of the lateral meniscus.
* Small Baker cyst.

CAC/ac
DATE DICTATED: 06/15/2022
DATE TYPED:        06/15/2022

1

Radiologist:  Cox, Cody M.D.
Electronically Signed:   06/15/2022 08:27 PM


Electronically Signed By:
DCTNAME, RADCRED
Date/Time: SIGNDATE

2

# EXHIBT 10



MTC Management & Training Corporation
A Leader in Social Impact

Texas Civil Commitment Center
Client Communication Form

Rev. 53

CM 22-06-641

**Type of Communication**

☐ REQUEST FOR COPIES/RECORDS
☐ REQUEST FOR PROPERTY
☑ OTHER Specify: Pictures — Chief

NAME: Santos Gomez III   DATE: 6-21-22   TCCC# 1175363   UNIT: D2

**Client write request in this box:**

I submitted a withdraw for two pictures. Is it possible to have two pictures of the bruises on my right leg?

Thank You!

Client Signature: _____   Date: 6-21-22

Date Communication received: JUN 22 2022

**Staff Response to request:**

At this time we are not allowing pictures for purchases. we will push a memo when we start taking pictures for sale.

Received
6-28-22
by Mrs. Jennings

Staff Signature: _____   Staff Name Printed: JAIL

Staff Title: Captain   Date: 6-22-22

# EXHIBT 11

# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| SANTOS GOMEZ III, | § | |
| PLAINTIFF. | § | CIVIL ACTION NO.: _____ |
| VS. | § | |
| JESSICA MARSH, | § | |
| DEFENDANT, et al., | § | |
| DEFENDANTS. | § | AFFIDAVIT OF GERALD B. WILSON |

STATE OF TEXAS)
               )
COUNTY OF LAMB)

      I, GERALD B. WILSON, declares under penalty of perjury, state the following to the best of my knowledge:

      I am over the age of eighteen, and I have personal knowledge of the matters stated herein;

      Sometime in about September or October, SANTOS GOMEZ III approached me and asked me if I would help him draft and file a law suit. SANTOS GOMEZ III expressed to me he had never done any legal work and needed help to get it done. After he and I discussed it a few times, I told him I would draft his legal documents for a law suit up to the point he could get an Attorney "Appointed" to the Case. SANTOS GOMEZ III and I never discussed any compensation of any form for my help.

      In or about the week of November 07, 2022, I was called out to go see Ms. KARA GOUGLER – the Director of Case Managers for the TEXAS CIVIL COMMITMENT OFFICE. Ms. KARA GOUGLER informed me that (a) Client(s) had sent letters to the administrative

1

offices of Texas Civil Commitment Office in Austin, Texas stating that I had been "doing" other's homework and legal-work for them and that I was getting paid commissary to do it. I told Ms. KARA GOUGLER that I was in fact "helping" a few others, including putting some of their homework or legal-work on my word processor to print it out attractive, correct and neat for their Clinical Therapist or Court, as it applied. I explained to Ms. KARA GOUGLER that I was not "doing" other's homework "for them" but I was "helping" them with their spelling, grammar, and sentence structures in their homework lesions. The actual work was all their own work. Regardless, I did not ever charge anybody anything for doing this.

I told Ms. KARA GOUGLER that she could inquire of all my past Clinical Therapist and my current group members and they would all tell her the same thing I had told her.

Ms. KARA GOUGLER stated to me that MTC Security would soon confiscate my word processor to look for evidence that I was charging others for "doing" their homework or legal-work for them and charging them for it.

On November 10, 2022, MTC/TCCC OFFICER JAVIER VEGA, the MTC/TCCC IT Tech for the TCCC Facility confiscated my word processor from me, as Ms. KARA GOUGLER had told me was going to happen. I was not concerned because I believed I was in compliance with the rules of TCCO and MTC.

On November 17, 2022, I was in the TCCC gym about 09:00 A.M. when I saw SANTOS GOMEZ III approached by MTC Security Officer Mr. Cardenas who handed SANTOS GOMEZ III a document and told him that CAPTAIN STETSON FISHER wanted to see SANTOS GOMEZ III at the TCCC Central Control area. SANTOS GOMEZ III showed me the document given to him by MTC Security Officer Mr. Cardenas. The document states:

2

"Gerald Wilson was doing this for Gomez – Did a lawsuit for him about his Tier level, etc. Again, not sure of the payment but Wilson ended up with commissary and he is indigent so how did he get that?
Write a witness statement about this and what happened and then ill talk to them after they bring the statement to me at central"

About twenty to thirty minutes later, CAPTAIN STETSON FISHER wanted to see me. I went to TCCC Central Control and met with CAPTAIN STETSON FISHER. He asked me several questions about the homework and legal-work I was doing for other Residents at TCCC. I explained that I would help them with their spelling and grammar and sometimes print it for them but I would not do the work for them. I told CAPTAIN STETSON FISHER I don't have time to do all that work, that I barely can edit their work for them. Asked me to fill out an MTC/TCCC Witness Statement form and I complied.

After I completed the witness form and gave it to CAPTAIN STETSON FISHER, he told me that based upon what he had seen so far in his investigation, he felt it was all a bunch of false allegations. He said he was going to speak to a few more people though and let me know something in a few days.

On November 18, 2022, my word processor was returned to me by OFFICER JAVIER VEGA. He told me:

"I found several documents of homework and legal documents with other client's names on them. From now on, do not do any homework or any legal-work for any clients! You have until Monday to totally delete every document in your word processor that has another client's name on it! I will come check to make sure you deleted all of them."

3

A personal cursory review of my files/documents on my word processor revealed that a lot of the documents, some legal documents, specifically SANTOS GOMEZ'S III 1983 Complaint documents [reformatted], had been deleted or reformatted so that I could no longer access them. It was also apparent that OFFICER JAVIER VEGA had read and printed, at a minimal, SANTOS GOMEZ'S III 1983 Complaint, my personal legal work   I did comply with his instructions and deleted all documents with other TCCC Resident's name in them, including SANTOS GOMEZ'S III.

After self-researching case laws on assisting other residents here at TCCC, I felt confident that the order given to me by OFFICER JAVIER VEGA was State and Federal Constitutionally fallacious. I began to start all over on all the work for SANTOS GOMEZ'S III 1983 Complaint, which was very grievous for me to have to do.

_25th_ day of __January__ , 2023.

GERALD B. WILSON
Texas Civil Commitment Center
2600 S. Sunset Ave.
Littlefield, TX   70339

4

# EXHIBT 12

Gerald Wilson was doing this for **Gomez - Did a lawsuit for him about his Tier level, etc. Again, not sure of the payment but Wilson ended up with commissary and he is indigent so how did he get that?** Write a witness statement about this and what happened and then ill talk to them after they bring the statement to me at central

# EXHIBT 13

RECEIVED 9/21/2022 2:54 PM
2016-DCL-00365 / 68484875
LAURA PEREZ-REYES
Cameron County District Clerk
By Adriana Munoz Deputy Clerk

NO. 2016-DCL-00365

| | | |
|---|---|---|
| IN RE: THE COMMITMENT OF | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | CAMERON COUNTY, TEXAS |
| | § | |
| SANTOS GOMEZ, III | § | 103rd JUDICIAL DISTRICT |

## <u>ORDER FOR TRANSFER TO TIER FOUR</u>

Following a hearing on September 13, 2022 in the above-numbered and styled cause, the Court finds that Santos Gomez III shall be returned to tier four housing and supervision under Texas Health and Safety Code Section 841.0834(d). His status will be as before October 23, 2021.

The Texas Civil Commitment Office, to avoid any negative consequence to Santos Gomez III, shall make an entry in the file to ensure evaluators, treatment providers, and TCCO staff are aware that the November 4, 2021 tier movement shall not be considered.

SIGNED ON _____9/20/2022 11:27:14 AM_____, 2022.

FILED
2016-DCL-00365
October 3, 2022          1:56 pm
LAURA PEREZ-REYES
CAMERON COUNTY DISTRICT CLERK
BY:Garcia, Vilma

Honorable Janet L. Leal
JUDGE PRESIDING

---

The above proposed Order has been reviewed
and is acceptable to State Counsel for Offenders.

/s/ _____
Douglas E. Moyer, Sr.
for State Counsel for Offenders

09/21/2022
DKI

cc: 10/03/2022
Hon. Erin K Faseler
Hon. Edward A Sandoval
Hon. Douglas E Moyer Sr
Hon. Kenneth Nash
Hon. Nicole Washington
Hon. Robin Whitney

# EXHIBT 14

**Texas Civil Commitment Office**
**Texas Civil Commitment Center**

## Review/Change in Tier

**Client Name:** Santos Gomez                                   **SID#:** 07175363
                                    *Print Name*

**Case Manager:** Karon Gonzales
                                    *Print Name*

**Treatment Provider:** Charles Gill
                                    *Print Name*

**Staffing Date:** 11/4/2021                  **Effective Date:** 11/15/2021

**Reason:**   ☑ Tier Advancement/Reduction          ☐ Annual Review

**From:**
| | |
|---|---|
| ☐ | Tier 1 |
| ☐ | Tier 2 |
| ☐ | Tier 3 |
| ☑ | Tier 4 |

**To:**
| | |
|---|---|
| ☐ | Tier 1 |
| ☑ | Tier 2 |
| ☐ | Tier 3 |
| ☐ | Tier 4 |

**Acute Completion Date:** 10/20/2021          **Stable Completion Date:** 04/02/2021

**Team recommends GPS removal for Tier 3:**   ☐ Yes   ☑ No

**Date approved by TCCO to move to Tier 4:** _____

**Tier privilege restriction – If yes, see comment section**   ☑ Yes   ☐ No

**Tier housing restriction – If yes, see comment section**   ☑ Yes   ☐ No

**Comments:** The treatment team agreed for Mr. Gomez to be demoted from a Tier 4 to a Tier 2 with Tier 1 privileges due to attempting to reach out to his daughter the (victim) through two of his approved collateral contacts by text message. On October 29, 2021, Mr. Gomez received a no opinion on his maintenance polygraph which address Unapproved/Undisclosed Relationship, Trafficking and Trading, and Cell Phone Compliance. Mr. Gomez is currently being placed in SMU.

**Refused PPG**            ☐ Yes   ☑ No
**Refused Assessment**     ☐ Yes   ☑ No
**Refused Polygraph**      ☐ Yes   ☑ No
**Delinquent with Cost Recovery**   ☐ Yes   ☑ No

**If yes, amount delinquent:** $ N/A

*Charles Gill*
**TCCC Treatment Provider Signature**        11/5/21        ☑ Agree   ☐ Disagree
                                             **Date**

*Karon GONZALES*
**TCCO Case Manager Signature**              11/5/2021      ☑ Agree   ☐ Disagree
                                             **Date**

*[signature]*
**Client Signature**                         11/5/21        ☐ Agree   ☑ Disagree
                                             **Date**

Dist: Case Manager
      Client
      Client File
      CSS

TCCO-05-19
11/19/2019

## MTC — Texas Civil Commitment Center

| Case # |
| --- |

### Disciplinary Hearing Script & Hearing Record

SVP Client Name: **Gomez, Santos** SID#: **07175363** Hearing Date/Time: **11/10/2021 / 1330**

**A. OPENING STAGE**
This is a Behavioral Management Committee hearing. The purpose of this hearing is to treat the matter before us with fundamental fairness and arrive at a just decision. All parties must conduct themselves properly. Failure to do so will result in removal.

**B. HEARING IDENTIFICATION STAGE**
SVP Client, state your name. [Behavior Management Committee introduces themselves.]

**C. ADMONITION STAGE**
SVP Client, this incident report alleges that [Committee Chair reads the report].
1. Do you understand the charges? (Yes) or No.   COMPLETE ☑ (check when complete)
(If no, the Committee Chair will explain the charges and be sure he/she understands them.)
2. It has been 24 hours since you were served these charges (if not, he/she may elect to waive the 24 hours). Therefore, your hearing may now begin. COMPLETE ☑ (check when complete)

**D. RESPONSE STAGE**
SVP Client, how do you plead? *(circle one)*          Admit          **(Deny)**          No Contest

**E. DEFENSE STAGE**
1. SVP Client, do you wish to make a statement on your behalf? *(circle one)*     **(Yes)**     No     *(If yes, document below.)*

SVP Client Statement: He did send the message. This year
he's tried alot. He hasn't seen his daughters in
years. That was his way to deal with stress. He sent
the text to his mom and sister. It was an innocent statement
2. Do you wish to submit a written statement? *(circle one)*     Yes     **(No)**   *(If yes, attach statement.)* made.

**F. ALLEGATION STAGE**
The incident report read at the beginning of the hearing will be considered as evidence against you.

**G. CLOSING STAGE**
We have heard the allegations and provided an opportunity for you to make a statement. We will now recess this hearing to arrive at a decision. [The Behavior Management Committee will discuss and determine the decision and intervention (if any).]

SVP Client, we find you *(circle one)*     **(Guilty)**     Not Guilty          180 days package
                                                                              ineligibility
Your intervention will be: 7 day wing restriction w/time served      *(If found guilty).*
                            30 day dorm restriction

You will be provided a copy of this hearing record. You have a right to appeal our decision with respect to the determination of guilt and the intervention imposed, within 15 days of this hearing. You may appeal this decision by filing step 1 grievance. If you are dissatisfied with that response you may file a step 2 grievance. This hearing is concluded and you are dismissed.

Committee Chair: Winckler          Chief
                 _Printed Name_          _Title_          _Signature_

Member #2: Greenwalt          TCCO
           _Printed Name_          _Title_          _Signature_

Member #3: Winslow          Clinical
           _Printed Name_          _Title_          _Signature_     MA, LPC-A, ASOTP

Interpreter (if applicable): _____  _____  or  _____
                              _Printed Name_          _Signature_          _Language Line ID#_

Other Employees Present at Hearing: Admin Ornelas _____

| 306DIS – Attachment 3 |
| --- |

SVP Client Signature: _____

# EXHIBT 15

## Psychiatric Progress Note

### Subjective

**Subjective Notes:**

The TLH process and confidentiality expectations have been communicated to patient. The patient verbally agrees to have visit conducted via TLH. Last seen 05/18/20 diagnosed with Major Depressive disorder and PTSD and continued on Remeron 30mg po hs and Prazosin 1mg po hs. Patient seen via TLH for 5 week f/u, chart reviewed. Patient reports he is compliant with medications and denies side effects. Resident is Tier 4 and has been at the facility since 3/2017. He is requesting to be taken off medications to try to not need medication to deal with his issues.

Patient rated depression 3/10 and anxiety 6/10 with medications. Patient reports having no further issues with depressed mood, but reports he is a light sleeper which then increases his anxiety. Patient reports having a good appetite and sleeping 6-8hrs/night. Patient reports having no SI/HI/P/I "No," or having no auditory/visual hallucinations, "No." Patient reports improvement in energy, motivation, and concentration. He reports 1-2 x /month of nightmares/flashbacks.

### Objective

#### Mental Status Exam

**Appearance:**
☑ Well-groomed/dressed   ☑ Well-nourished/developed

**Behavior:**
☑ Calm   ☑ Cooperative   ☑ Good Eye contact

**Speech:**
☑ Normal

**Mood:**
"anxious"

**Affect:**
☑ Anxious

**Thought Process:**
☑ Logical   ☑ Coherent   ☑ Goal-directed

**Thought Content:**
☑ Appropriate   ☑ CAN contract for safety

**Perceptual Disturbance:**
☑ None

**Insight:**
☑ Good

**Judgement:**
☑ Good

#### Mini-Mental Status Examination (if necessary)

**Level of consciousness:**

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By RAMIREZ, ALFREDO on 10/30/2020 12:51:31

*NO ANSWER PROVIDED*

**Have the patient do the following (check each task as completed):**
*NO ANSWER PROVIDED*

**Abstraction:**
*NO ANSWER PROVIDED*

## Assessment

### DSM 5: Diagnostic Impressions

**Change previous diagnostic impression:**
☑ No

**Additional Assessment Notes:**
*NO ANSWER PROVIDED*

## Plan

**Recommendations/Treatment Plan:**

Treatment goals:

Depression/Anxiety will not interfere with activities of daily living

Insomnia, nightmares/flashbacks will not interfere with activities of daily living

Improvement in self-care/wellness activities (i.e. exercise, reading, unit classes, art, writing, etc.). Limit caffeine intake.

Treatment plan:

discontinue: Prazosin per pt request wanting wean off meds,

Adjust medications: decrease Remeron 15mg po hs per pt request to wean off meds

Verbal consent discussed the risks, benefits, and alternatives to the treatment plan as specified above. Patient agrees to the recommended treatment(s). Discussed that some medications can affect the way the body relates to excessive heat. Discussed appropriate work restrictions. Patient will contact nursing/security if he feels dizzy, confused, or over-heated. Patient understand that excessive heat can cause life-threatening conditions. Patient acknowledges understanding regarding hydration when heat is extreme. I have discussed this plan with the patient, including risks, benefits and alternatives. Patient verbalizes understanding. Discussed the importance of medication compliance and the potential for symptom relapse due to medication noncompliance. Case to be discussed with Multidisciplinary treatment team.

**Psycho education/support:**
☑ Given

**Patient:**
☑ Low Risk

**Medications changed from previous regimen:**

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By RAMIREZ, ALFREDO on 10/30/2020 12:51:31

☑ Yes

**Changed Medication(s):**

MIRTAZAPINE 15MG TABLET (REMERON) – [TAKE 1 TABLET(S) ORALLY AT BEDTIME] - (10/30/2020 - 1/27/2021)

**Risk/Benefits of Medication:**
☑ Discussed

**Patient:**
☑ Accepts New Medication

**Mental Health Group Referral:**
☑ No

**Mental Health Classification Change from Previous Classification:**
☑ No

**Follow-up Appointment:**
☑ Yes

**Specify timeframe for follow-up appointment:**
1 month f/u

**Additional Comments:**
*NO ANSWER PROVIDED*

**Lab Orders:**
☑ No

**Interpreter:**
☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| RAMIREZ, ALFREDO, CRNP | 10/30/2020 12:51:31 |

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By RAMIREZ, ALFREDO on 10/30/2020 12:51:31

# EXHIBT 16

**Management & Training Corporation**
**Texas Civil Commitment Center**

DEC 28 '20 PM2:23

## SICK CALL REQUEST

| | RECEIVED |
|---|---|
| | Date/Time: 12 16 |
| | Initials: M1    YYD |

| | | | | |
|---|---|---|---|---|
| Client Name: Gomez, Santos III | | | Date Submitted: 12-3-2020 | |
| Client ID: 07175363 | Housing: F-205 | Work Location: N/A quarantine | | |
| Treatment Schedule: N/A | | Work Schedule: N/A | | |

**SERVICES REQUESTED**

| ☑ Medical | | Dental | | Prescription Refill | ☑ Other (specify): MH |
|---|---|---|---|---|---|

→ Urgent

**Reason for Request:**

Can I be tested for "H-Pilori". I use to have in 2018 and I'm experiencing the same issues- stomach cramp or tightness causing pain. Only when I eat certain foods. // I would like to discontinue m/H meds as was said in the last meeting. Thanks

**DO NOT WRITE BELOW THIS LINE**

**TO BE COMPLETED BY MEDICAL STAFF**

| Screening Date: 12 16 | Screening Time: 1440 | Nurse Initial M1 | (Routine)   Urgent |
|---|---|---|---|

**ACTION TAKEN BY MEDICAL (Initial in box)**

| ✓ | Written response (see below) | Referred to provider | Client refused tx-form completed | Prescription refill ordered: Date: |
|---|---|---|---|---|
| | Seen by nurse | Seen by provider | Offsite provider appointment scheduled this date: Type of provider: | |

| Response to client or Nursing comments: |
|---|
| You are being scheduled with the provider where you can discuss your symptoms and testing. Spicy foods, caffeine, pickled foods and a/c/solution can all increase symptoms. |
| Nurse Print/Sign: Rolare                    Date: 12 16 |

| Provider comments: |
|---|
| |
| |
| |
| Provider Print/Sign:                         Date: |

**Management & Training Corporation**
**Texas Civil Commitment Center**

## SICK CALL REQUEST

| | RECEIVED |
|---|---|
| Date/Time: | JAN 13 '21 at 8:24 |
| Initials: | |

Client Name: Santos Gomez III                Date Submitted: 1-11-21

Client ID: 0717 5563    Housing: F205    Work Location: FS/Laundry

Treatment Schedule: N/A                Work Schedule: 12:30pm ~ 8pm

### SERVICES REQUESTED

[✓] Medical   [ ] Dental   [ ] Prescription Refill   [✓] Other (specify): MH

Reason for Request: Medical - Prescription done; stomach issue, requested yogurt by Mrs. Schmidt // Mental Health - wanting to get off meds since November. Please call me in to see telepsych... Thank You

### DO NOT WRITE BELOW THIS LINE

#### TO BE COMPLETED BY MEDICAL STAFF

| Screening Date: | Screening Time: | Nurse Initial: | Routine   Urgent |
|---|---|---|---|

#### ACTION TAKEN BY MEDICAL (initial in box)

| [X] | Written response (see below) | | Referred to provider | | Client refused tx-form completed | | Prescription refill ordered: Date: |
|---|---|---|---|---|---|---|---|
| | Seen by nurse | | Seen by provider | | Offsite provider appointment scheduled this date: Type of provider: | | |

Response to client or Nursing comments:

Nurse Print/Sign:                Date:

Provider comments:
√You are on the psych list to be seen.

Provider Print/Sign: (signature)                Date: 1.13.21

# EXHIBT 17

GOMEZ III, SANTOS  #07175363                                    DOB: 6/15/1983 (39y)   Location: D2-7-9

## Psychiatric Progress Note

### Subjective

**Subjective Notes:**

Seen via telepsych

37 year old male with history of MDD and PTSD presenting for medication management follow up. He was last seen by a mental health provider on 10/30/2020 and medications were weaned. He is currently prescribed Remeron 15mg po qhs. Today for follow up he states that his mood is "good." He is sleeping 7-8 hours at night and feels well rested when he wakes up in the morning. Nightmares are decreased. Denies anger and irritability. Denies any significant depressive and anxiety symptoms. No recent changes in appetite but he has noticed about 10 pound weight loss. Denies SI/HI/AVH. He reports that he has a strong support system and talks to them daily. He reports medication compliance and no reported side effects. He wants to stop the Remeron as planned from last visit.

### Objective

#### Mental Status Exam

**Appearance:**
- ☑ Well-groomed/dressed

**Behavior:**
- ☑ Calm  ☑ Cooperative

**Speech:**
- ☑ Normal

**Mood:**
euthymic

**Affect:**
- ☑ Appropriate

**Thought Process:**
- ☑ Logical  ☑ Coherent

**Thought Content:**
- ☑ Appropriate

**Perceptual Disturbance:**
- ☑ None

**Insight:**
- ☑ Good

**Judgement:**
- ☑ Good

#### Mini-Mental Status Examination (if necessary)

**Level of consciousness:**

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By WOODS, TIFFANY on 01/28/2021 08:46:21

1 of 3

*NO ANSWER PROVIDED*

**Have the patient do the following (check each task as completed):**
*NO ANSWER PROVIDED*

**Abstraction:**
*NO ANSWER PROVIDED*

## Assessment

### DSM 5: Diagnostic Impressions

**Change previous diagnostic impression:**
☑ No

**Additional Assessment Notes:**
*NO ANSWER PROVIDED*

## Plan

**Recommendations/Treatment Plan:**
1. Discontinue Remeron
2. Improve coping skills

**Psycho education/support:**
☑ Given

**Patient:**
☑ Low Risk

**Medications changed from previous regimen:**
☑ Yes

**Changed Medication(s):**
see above

**Risk/Benefits of Medication:**
☑ Discussed

**Patient:**
☑ Accepts New Medication

**Mental Health Group Referral:**
☑ No

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By WOODS, TIFFANY on 01/28/2021 06:46:21

GOMEZ III, SANTOS #07175363                          DOB: 6/15/1983 (39y) Location: D2-7-9'

**Mental Health Classification Change from Previous Classification:**
☑No

**Follow-up Appointment:**
☑Yes

> **Specify timeframe for follow-up appointment:**
> 3 months

**Additional Comments:**
*NO ANSWER PROVIDED*

**Lab Orders:**
☑No

**Interpreter:**
☑No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| WOODS, TIFFANY, PCRNP | 01/28/2021 08:46:21 |

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By WOODS, TIFFANY on 01/28/2021 08:46:21

# EXHIBT 18

GOMEZ III, SANTOS  #07175363
DOB: 6/15/1983 (39y)  Location: D2-7-8

## Mental Health - Individual Treatment Plan

| Date Initiated: | Provider: |
|---|---|
| 02/03/2021 | Stephanie Grubbs MS |

**Presenting Problem:**

The client has a previous diagnosis of PTSD. The client reported that he does not feel like he needs mental health counseling at the moment. The therapist told the client that he can submit a mental health request form if he ever needs to.

**Patient's Strength and Preferences:**

NA

### #1 Symptom/Problem Area

**#1 Symptom/Problem Area:**

NA

**#1 Recommended Treatment Modality:**

NA

**#1 Symptoms resolved:**

☑No

**Add #2 Symptom/Problem Area:**

*NO ANSWER PROVIDED*

** ITP will be reviewed at each subsequent visit **

**Interpreter:**

☑No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| MOORE, STEPHANIE, LPC | 02/03/2021 21:29:00 |

**Mental Health - Individual Treatment Plan**
ITP for patients - to be reviewed at subsequent visits

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-8T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 02/03/2021 21:29:00

1 of 1

# EXHIBT 19

## Nursing Narrative Note

**Type of Progress Note:**

☑ Narrative

### Narrative

**Narrative Notes:**

Spoke with Mr. Gomez in Medical from 1515 to 1555. I was asked by security to assess Mr. Gomez' mental state after his learning of a pending investigation/case against him.

Client reported: he sent a group text to mom and sister "Happy 17th Birthday. Love, your Dad."

Client reported believing his family members do not have any contact with his daughters (his victims) and that he was just venting his emotional state that day while he missed them.

Client asked for another polygraph since the result was "no opinion" on 10/29.

Client reports repeated depressed moods on the dates of his daughters' birthdays.

Client denies any attempt to contact daughters(victims).

Mr. Gomez appeared anxious, depressed, but able to relate information verbally and clearly. Currently feels: "miserable"

Denies SI/HI at this time. Admits thoughts of death in the past, but never a plan. Love for self and family are protective factors.

MH Grubbs talked with us for about 15 minutes. She agreed to email SOTP Gill to relay client's request to speak with him. TCCO Case Manager is Gonzales(sp?).

**Referrals Needed:**

☑ No Referrals needed at this time

**Interpreter:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| KAUFMAN, JESSICA, RN | 11/04/2021 16:15:03 |

---

**Nursing Narrative Note**
Progress Note for general staff usage - both SOAPE and Narrative

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** KAUFMAN, JESSICA on 11/04/2021 16:15:03

1 of 1

# EXHIBT 20

GOMEZ III, SANTOS  #07175363
DOB: 6/15/1983 (39y)   Location: D2-7-9T

## Mental Health Professional Progress Note

**Type of Progress Note:**

☑ Narrative

### Narrative

**Narrative Notes:**

On 11/5/2021 from approximately 7:50-7:55 the therapist met with the client for a Mental Health check in. The client reported he is not experiencing any SI or HI. The client talked about being investigated and a fear of being tiered down. The client reported he is staying busy by working on his assignments for group. The client reported he is working on taking things one day at a time.

**Referrals Needed:**

☑ No Referrals needed at this time

**Interpreter:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| MOORE, STEPHANIE, LPC | 11/18/2021 07:59:09 |

---

**Mental Health Progress Note**
Progress Note for mental health usage - both SOAPE and Narrative

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 11/18/2021 07:59:09

1 of 1

# EXHIBT 21

## No-Suicide Contract

I, _Santos Gamez III_, hereby agree that I will not harm myself in any way, attempt suicide, or die by suicide.

Furthermore, I agree that I will take the following actions if I experience suicidal thoughts:

1) I will remind myself that I can never, under any circumstances, harm myself in any way, attempt suicide, or die by suicide.

2) I will alert security, medical, or mental health personnel if I believe that I am in immediate danger of harming myself.

3) I, _Santos Gamez III_, hereby commit to meeting with a Texas Civil Commitment Center mental health counselor daily for mental health assessments until otherwise advised.

4) I will continue processing my thoughts and emotions surrounding my recent tier demotion until I can confidently and accurately deny experiencing suicidal or other thoughts of self-harm as determined by a Texas Civil Commitment Center mental health counselor.

Signature _07175363_   Date _11-8-21_

Witness _Barbara MA, LPC-A_   Date _11/8/21_

# EXHIBT 22

GOMEZ III, SANTOS  #07175363                                    DOB: 6/15/1983 (39y)   Location: D2-7-9

## Mental Health Evaluation

**I have reviewed the Mental Health screening tools:**

☑ Yes

### Subjective:

**Subjective Notes:**

On 1/26/2022 from approximately 6:03-6:20 the therapist met with the client for a Mental Health check in. The client reported things are going well for him in the dorm. The client reported he is happy there are no charges being placed against him. The client reported things are going well in group. The client reported he is excited to now have tier 2 privileges. The client reported things are going well and he has hopes not feel it will take him too long to be able to move back to a tier 4.

**Reason for Referral:**

Help with depression

### Objective

**Objective Notes:**

The client's appearance was neat and his speech normal. The client maintained normal eye contact throughout the session. The client was cooperative.

**Social History:**

The client reported as a child he liked to be around adults and do things such as hunting. The client reported he has always enjoyed being around people.

**Marital Status:**

☑ Single

**Number of Children:**

3

**Does patient have an Employment history:**

☑ No (Unemployed)

**Place of residence (Country):**

USA

**Education:**

High School Degree

**Religion:**

Buddhist

**Living arrangement:**

TCCC Delta dorm

**Presenting Illness:**

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

1 of 6

**GOMEZ III, SANTOS**  #07175363
DOB: 6/15/1983 (39y)   Location: D2-7-9

The client is working on challenging thinking errors.

**Environmental Factors:**

The client reported he was raised by his grandparents. The client reported he was raised in the country in a middle class house.

**Psychiatric History:**

The client reported he was 24 when he was diagnosed with anxiety and depression. The client reported he has been on and off of medication since then. The client reported while in prison he was diagnosed with PTSD.

**Diagnoses:**

F43.1 - POST-TRAUMATIC STRESS DISORDER (PTSD) - [REDDICK, JACOB] - 2020-10-16

F33.9 - MAJOR DEPRESSIVE DISORDER, RECURRENT, UNSPECIFIED - [REDDICK, JACOB] - 2020-10-16

**Hospitalizations:**

The client reported none.

**Family History:**

The client reported his Mother has PTSD and depression.

**Direct Observation:**

The client's appearance was neat and his speech normal. The client maintained normal eye contact throughout the session. The client was cooperative.

**Violent Behaviors:**

The client reported in the past sexual offenses.

**Learning Issues History:**

The client reported none.

**Abuse History:**

The client reported when he was 12 when he was sexually assaulted by a cousin. The client reported when he was 15 he was sexually assaulted by a family friend.

**Head Trauma History:**

The client reported none.

**Present Meds/Doses:**

NA

**Past Meds/Doses:**

Refer to chart.

**Family Psychiatric History:**

The client reported his Mother has PTSD and depression.

**Does patient have a history of alcohol/drug use/abuse:**

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

GOMEZ III, SANTOS  #07175363                                    DOB: 6/15/1983 (39y)  Location: D2-7-9

☑ Yes

## Drug History

**Type(s) of substance(s) used:**

☑ Cocaine   ☑ Alcohol   ☑ Cannabis   ☑ Other

### Cocaine

| Type of Cocaine use: | Amount of Cocaine used: | Last Cocaine use: |
|---|---|---|
| ☑ Abuse | 1 gram twice a month | 2006 |

**Additional Comments on Cocaine use:**
*NO ANSWER PROVIDED*

### Alcohol

| Type of Alcohol use: | Amount of Alcohol used: | Last Alcohol use: |
|---|---|---|
| ☑ Abuse | 3-4 times a week | 2006 |

**Additional Comments on Alcohol use:**
*NO ANSWER PROVIDED*

### Cannabis

| Type of Cannabis use: | Amount of Cannabis used: | Last Cannabis use: |
|---|---|---|
| ☑ Abuse | daily | 2010 |

**Additional Comments on Cannabis use:**
*NO ANSWER PROVIDED*

### Other

**Specify Other Substance used:**
pharmaceutical and Ecstasy

| Type of Other Substance use: | Amount of Other Substance used: |
|---|---|
| ☑ Abuse | monthly |
| | **Last Other Substance use:** |
| | 2006 |

**Additional Comments on Other Substance use:**
*NO ANSWER PROVIDED*

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

**Medical/Surgical History:**
The client reported he had a screw placed in his thumb when he was 36.

**Military History:**
NA

**Legal History:**
HX of sexual offense.

## Mental Status Exam

**Appearance/Presentation:**
☑ Well Groomed   ☑ Cooperative

**Notes on Appearance/Presentation:**
*NO ANSWER PROVIDED*

**Is patient oriented to time, person, place, and circumstance:**
☑ Yes

**Notes on Orientation:**
*NO ANSWER PROVIDED*

**Sensorium (Memory + Attention):**
☑ Intact

**Psychomotor:**
☑ Normal

**Notes on Psychomotor:**
*NO ANSWER PROVIDED*

**Speech:**
☑ Normal Cadence   ☑ Normal Prosody

**Notes on Speech:**
*NO ANSWER PROVIDED*

**Mood:**
☑ Appropriate

**Notes on Mood:**
*NO ANSWER PROVIDED*

**Affect:**
☑ Normal Range

**Notes on Affect:**
*NO ANSWER PROVIDED*

**Thought Process:**
☑ Coherent

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

**Thought Content:**
☑ Abstract

**Notes on Thought Content:**
*NO ANSWER PROVIDED*

**Perception:**
☑ Normal

**Notes on Perception:**
*NO ANSWER PROVIDED*

**Insight:**
☑ Good

**Notes on Insight:**
*NO ANSWER PROVIDED*

**Judgement:**
☑ Good

**Notes on Judgement:**
*NO ANSWER PROVIDED*

**Suicide Risk:**
☑ Low

**Notes on Suicide Risk:**
*NO ANSWER PROVIDED*

**Homicide Risk:**
☑ Low

**Notes on Homicide Risk:**
*NO ANSWER PROVIDED*

## Assessment

**Assessment Notes:**
This Mental Health evaluation is the assessment.

**Is the person living with a serious mental illness:**
☑ No

## Plan

**Individual Treatment Plan:**
The client's treatment plan was completed on 2/3/2021.

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

**Outline Follow-up:**
☑ None

**Education Provided:**
NA

**Additional Comments:**

The client will be seen monthly and the sessions will last for 30 minutes, with the patient having the option to shorten the session or extend if needed.

**Interpreter:**
☑ No

## Save Log

| User Name | | Audit Date And Time |
|---|---|---|
| MOORE, STEPHANIE, LPC | | 01/28/2022 13:46:20 |

---

**Mental Health Evaluation**
Full mental health evaluation for a patient

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By MOORE, STEPHANIE on 01/28/2022 13:46:20

# EXHIBT 23

*NO ANSWER PROVIDED*

**Have the patient do the following (check each task as completed):**
*NO ANSWER PROVIDED*

**Abstraction:**
*NO ANSWER PROVIDED*

## Assessment

### DSM 5: Diagnostic Impressions

**Change previous diagnostic impression:**
☑ No

**Additional Assessment Notes:**
*NO ANSWER PROVIDED*

## Plan

**Recommendations/Treatment Plan:**

No medications at this time - patient will consider before our next appointment

Follow up in 6 weeks

**Psycho education/support:**
☑ Given

**Patient:**
☑ Medium Risk

**Medications changed from previous regimen:**
☑ No

**Mental Health Group Referral:**
☑ No

**Mental Health Classification Change from Previous Classification:**
☑ No

**Follow-up Appointment:**
☑ Yes

**Specify timeframe for follow-up appointment:**
6 weeks

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** IANNUCCI, SARAH **on** 02/25/2022 11:38:52

GOMEZ III, SANTOS #07175363                                    DOB: 6/15/1983 (39y)   Location: D2-7-9T

## Psychiatric Progress Note

### Subjective

**Subjective Notes:**

38 y/o male with a hx MDD, PTSD, and seen for follow up for the first time since April 2021. Patient reports mainly that he wanted someone to "vent" to and to tell his story to, but he does not wish to start medications yet. He feels helpless and traumatized by a situation that is unraveling with his case manager and feels that his trust in her has been breached. He is trying to stop himself from becoming preoccupied with the idea that she is targeting him and treating him unfairly. He identified a precipitating incident that led to his loss of privileges and hopes of graduating the program in the near future. However, believes this incident was unfairly handled and that it is being used against him even though it was a misunderstanding. He reports anxiety, intermittent depressed moods, and anger that can get him stirred up, but has not experienced a decrease in functioning at this point. States medications were helpful for him in the past, but he does not want to go back on at this time. Has been attending groups and saw his counselor today. Sleeps 7-8 hours most nights, exercises daily and eats well, appetite is good. Awakens 1-2 times per week with anxiety/anger at 3 am and cannot get back to sleep for awhile. Talks to Mr. Rubinsam about it and feels his advice is good. No SI/HI and no s/sx mania or psychosis.

### Objective

#### Mental Status Exam

**Appearance:**

☑ Well-groomed/dressed   ☑ Well-nourished/developed

**Behavior:**

☑ Calm   ☑ Cooperative   ☑ Good Eye contact

**Speech:**

☑ Normal

**Mood:**

Depressed

**Affect:**

☑ Appropriate   ☑ Constricted   ☑ Depressed   ☑ Anxious

**Thought Process:**

☑ Logical   ☑ Coherent   ☑ Goal-directed

**Thought Content:**

☑ Appropriate

**Perceptual Disturbance:**

☑ None

**Insight:**

☑ Good

**Judgement:**

☑ Good

#### Mini-Mental Status Examination (if necessary)

**Level of consciousness:**

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By IANNUCCI, SARAH on 02/25/2022 11:38:52

1 of 3

**Additional Comments:**
*NO ANSWER PROVIDED*

**Lab Orders:**
☑No

**Interpreter:**
☑No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| IANNUCCI, SARAH, DO | 02/25/2022 11:38:52 |

---

**Psychiatric Progress Note**
Progress Note for Psychiatry

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By IANNUCCI, SARAH on 02/25/2022 11:38:52

# EXHIBT 24

Emotions 1

Rev. 45

## COPING LOG

| Date/Time | Trigger What event started this off? | Thought Response/reaction to the Trigger | Emotion Response/reaction to the Thought | Incident Intensity (0-10) 0 = None 10 = High | Coping Skill Used (Y/N)? If "Yes", which one, and how well did it work? | Appropriate or Inappropriate Why or why not? | Frecuency How often do you have this thought? |
|---|---|---|---|---|---|---|---|
| 11-6 | Being accused of something I didn't do. | I did not attempt to contact the victim. I have not harder seen my daughters in 5 years. | misunderstood scared | 9 | Reality check | App. | regular |
| 11-6 | Remembering my daughters. | I will always love you both. No matter what. | depress alone committed | 10 | positive self talk | | |
| 11-7 | TCO | Why is tco going to do another report cousin? | Fear | 10 | thought stop thought shift | | |
| 11-7 | waiting for the detective | I hope he does a thorough & detailed report. | confident uneasy anxious | 9 | Tunnel Vision ........... Focus on Positivity | | |
| 11-7 | Anticipating the worst ahead. | Hope reports in by now. So I can call my family. | Anxious eager | 8 | Breathing Exercise 4x4 | | |
| 11-7 | In a cell worrying about tco. | I did not attempt to contact the victim. I am worried that the report will clear me but tco will still punish me. I have done nothing wrong what did I do? | Captured worried hopeful | 9 | Thought stop & shift ........... Positive Self-Talk | | |
| | | | | | | | |
| | | | | | | | |

Rev 44

## COPING LOG

| Date/Time | Trigger What event started this off? | Thought Response/reaction to the Trigger | Emotion Response/reaction to the Thought | Incident Intensity (0-10) 0=None 10=High | Coping Skill Used (Y/N)? If "Yes", which one and how well did it work? | Appropriate or Inappropriate Why or why not? | Frequency How often do you have this thought? |
|---|---|---|---|---|---|---|---|
| 10-29 | No opinion | I don't understand. I let my family and myself down. | Shocked Disappointed | 10 | Y, positive self-talk | App. | very rarely |
| 10-30 | isolated from family | Where did I go wrong? I can't make the same mistake again | Shitty, worthless, disgusted | 8 | Y, ↑ + talk to family | App. | ↑ |
| 11-4 | Being told the sheriffs office is picking me up. | Sheriff cuff the truth? what's going? what did I do? Why? I don't know what really happens. I did. | Fear distant scared? confused worried shocked | 10 | Y positive self-Talk | App. | (circled) Only once. First time. |
| 11-5 | isolated in a cell | Sheriffs office is coming after me. I don't know what to do. | defeated, alone, depress, helpless | 8 | Y thought stop + thought shift | App. | periodically |
| 11-6 | no contact w/family | I want to talk to my family. But I don't want to interfere w/investigation. | Fear Lonely Anger | 8 | Y punishment + scare | | |
| 11-5 | Getting tired down. | I did not attempt to contact kin. I simply express to my family my instinct of hiding it in. | Confuse depress | 8 | Y, positive self-talk | | |
| 11-6 | no one to talk too. | No body cares what happens to me. | depress unworthy | 8 | thought shop thought shift + positive self talk | | |

# EXHIBT 25

Client Name: _____ SID#: _____



**Texas Civil Commitment Office**

**Client Cell Phone Rules and
Usage Agreement**

I, _____ ("client") have been advised of the Client Cell
Phone Rules and Usage Agreement that must be followed in order to use and possess a cell
phone while in the Texas Civil Commitment Treatment Program and agree to abide by all
the rules as witnessed by my signature below.

<u>General</u>

- The possession and use of a cell phone is a privilege and may be restricted, suspended or terminated at any time, for any reason, at the discretion of the Texas Civil Commitment Office (TCCO).
- The use of the cell phone shall be for specific communications with the Case Manager, Treatment Provider, attorney, employer, job search contact, medical personnel, chaperone or other collateral or business contacts as deemed appropriate and approved by the Treatment Team.
- I shall comply with all rules of the Texas Civil Commitment Center (TCCC) or Community Residential Facility (CRF) (if this is my residence) and TCCO regarding cell phone use.
- The TCCC, CRF and TCCO shall not be responsible for a lost or stolen cell phone, nor for damage to the cell phone.
- The TCCC, CRF or TCCO shall not be responsible for payment of any unused minutes or monthly plan in the event my cell phone privilege is restricted, suspended or terminated.
- I shall be responsible for all costs associated with the cell phone.

<u>Eligibility and Approval</u>

I may submit a request to the Case Manager for approval of possession and use of a cell phone.
- I must be in Tier 3, 4 or 5 to be considered for cell phone use.
- If I am in Tier 5, I shall be employed, actively seeking employment, retired/disabled and receiving an income or have sufficient funds to maintain the cell phone.
- I understand that I must be current on my cost recovery payments.
- I shall have no violations of civil commitment, facility rules, program rules or probation/parole rules (if applicable) in the last six (6) months.
- I shall be actively participating in sex offender treatment and any other programs/groups I am required to attend.
- I agree to sign the cell phone Rules and Usage Agreement, prior to receiving a cell phone.

# EXHIBT 26

**GOMEZ III, SANTOS**  #07175363                                    **DOB:** 6/15/1983 (39y)   **Location:** D2-7-9T

## Mental Health Professional Progress Note

**Type of Progress Note:**

☑SOAPE

### SOAPE

**Subjective:**

On 11/4/2021 from approximately 3:40-3:55 the therapist met with the client for a Mental Health check in after being requested. The client talked about what happened when he set a text to his Mom and Sister on his daughter's birthday. The client reported he is now under investigation for trying to reach out to a victim. The client reported he was not trying to reach out to her. The client reported a fear of being tiered down over this. The client reported he understands what is happening and that he has to go to SMU. The client reported he is not experiencing any SI or HI. The client reported is he needs anything or starts to have thoughts of self harm he will reach out for help. At approximately 6:20 the therapist checked on the client while he was in SMU. The client reported he is feeling anxious but understands for now all he can do is wait.

**Objective:**

The client's appearance was neat and his speech normal. The client appeared to be anxious. The client maintained normal eye contact throughout the session. The client was cooperative.

**Assessment:**

NA

**Plan:**

The client will continue to be check on by Mental Health through his stay in SMU.

**Education:**

NA

**Referrals Needed:**

☑No Referrals needed at this time

**Interpreter:**

☑No

## Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| MOORE, STEPHANIE, LPC | 11/09/2021 12:16:44 |

**Mental Health Progress Note**
Progress Note for mental health usage - both SOAPE and Narrative

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** MOORE, STEPHANIE on 11/09/2021 12:16:44

1 of 1

# EXHIBT 27

## Mental Health Professional Progress Note

**Type of Progress Note:**

☑Narrative

### Narrative

**Narrative Notes:**

Resident last seen 10/30/2020, resident not seen today, chart reviewed. HSC MAR/orders reviewed. Resident has a working diagnosis of MDD recurrent unspecified, PTSD. MAR updated, current medications includes Remeron 15mg po hs.

**Referrals Needed:**

☑No Referrals needed at this time

**Interpreter:**

☑No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| RAMIREZ, ALFREDO, CRNP | 11/14/2020 18:12:32 |

---

**Mental Health Progress Note**
Progress Note for mental health usage - both SOAPE and Narrative

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** RAMIREZ, ALFREDO on 11/14/2020 18:12:32

1 of 1

# Texas Civil Commitment Office

## Supervision Progress Report
### Prepared by Karon Gonzales
### For June 2021

Client: Santos Gomez III
Date of Birth: 06/15/1983
Home Address: 2600 S Sunset Ave, Littlefield, Tx 79339
Treatment Provider(s): Charles Gill

Tier Level:  4

Contact with Treatment Provider:

**Additional Assessments:** An acute was completed on 05/14/21 and stable on 4/02/21.

**Individual Session:** Mr. Gomez had an individual session with CT Gill on 05/14/21. CT Gill saw Mr. Gomez for his individual session. An ACUTE was completed during this session – Mr. Gomez scored a 0, placing him in the low priority category. During this session, I encouraged Mr. Gomez to increase his feedback in group. We discussed how feedback demonstrates self-monitoring and self-awareness, as well as confidence. We also discussed how by using appropriate boundaries one can remain pro-social and assertive.

**Assignments/Participation:** Mr. Gomez attends group and is an active participant. Mr. Gomez continues to do very well in group. Mr. Gomez frequently provides feedback in group and appears receptive to feedback as well. Mr. Gomez had the following presentations as of the last staffing was on High Risk Evaluation of Other Group Member, Reivew of Treatment Goals, and Program Evalutaion. He is currently working on Treatment Progress Review and will need to present in group after competion. CM and therapsit discussed AGE placement. CM stated is working on the memo for panel.

**Assignment Tracking:** Mr. Gomez is approximately 94% completed with required assignments from his tracking sheet.

**Recommendations for Improvement:** Recommendations for Mr. Gomez is to keep doing what you are doing and is making progress.

**Registration:** Mr. Gomez last registration was verified 8/26/19 with Littlefield PD.
**TXID:** Mr. Gomez does have a valid TXID. Expires on 05/05/2027
**Current Tier Level:** Mr. Gomez has been in Tier 4 since 7/13/20.
**Incident Reports:** Mr. Gomez has not receive any incident reports.
**Drug Testing:** Mr. Gomez submitted for a urinalysis on 04/27/21. The results were negative for all substances.
**Polygraph:** Mr. Gomez Last maintenance polygraph was completed on 03/10/21 No Deception Indicated. Nex polygraph is due 03/10/22.
**PPG:** Mr. Gomez Last PPG was completed on 10/29/19 with significant arousal to 4 of the 21 segments in the adult basic series, all consisting of female stimuli. He demonstrated arousal to 3 non-deviant segments and one deviant segment (all adult female). Next PPG is not due until 10/29/21.
**Biennial:** Mr. Gomez biennial extension letter e-filed on 08/28/20. Still waiting on courts.
**Annual Review:** Mr. Gomez annual review is due July 2021.
**Mental Health:** Mr. Gomez is not on the mental health caseload.
**Cost Recovery:** Mr. Gomez is compliant with Cost Recovery.

# Texas Civil Commitment Office
## Supervision Progress Report

**Collaterals:** Mr. Gomez does not have any pending collaterals.

**Client Comments:** In app. two weeks, I will be 100% done w/ Tier 4 and the whole treatment. Would like to know what will or what are the next steps? Thank You

## Case Manager Summary:

**Parole:** Mr. Gomez is not currently on dual supervision
**Employment:** Mr. Gomez is currently employed.
**GPS:** Mr. Gomez has no GPS due to being on Tier 4.
**Education:** Mr. Gomez has a HS diploma.
**Cell Phone:** Mr. Gomez is currently with Great Call and has complied with all his collateral calls. He is staying within the parameters of his cell phone agreement and remained within the approved time constraints.
**Home Visits:** Per TCCO Management, no home visits were conducted due to COVID-19 precautions.
**Office Visits:** CM met with client on 06/24/21 for an office visit. CM met with client Gomez for an office visit this date. States he is doing well mentally and emotionally. States he attends treatment and is doing well. Mr. Gomez will be presenting in group on Monday his Treatment Progress Review. He will be working on his 22 Whats Ifs for his Safety Plan after completion he will nee to present in group. CM advised Mr. Gomez of his memo that it is being work on for panel for AGE. Mr. Gomez does not have any collateral contacts to provide to CM. Mr. Gomez does not have any issues with medical or refills at this time. He is not on the mental health caseload. Mr. Gomez reports no housing or resident issues and did not have any questions for CM. Mr. Gomez currently with Great Call. CM inspected his cellphone and there were no unauthorized telephone calls or unauthorized contacts. There were no signs of any tampering or external damage. States he keeps in contact with his family and friends. Mr. Gomez stated he was wondering if anyone has said anything about his placement on where he will be going. CM gave Mr. Gomez a residence plan to fill out and send back into CM. He stated he understood.

Client Signature-I have received a copy of this report

7-9-21

Date

Dist: Case Manager File
Client
Scan to CSS

Page 2 of 2

TCCO-24-1(
Rev. 07/01/202(

# EXHIBT 28

## No-Suicide Contract

I, _Santos Gamer III_ , hereby agree that I will not harm myself in any way, attempt suicide, or die by suicide.

Furthermore, I agree that I will take the following actions if I experience suicidal thoughts:

1) I will remind myself that I can never, under any circumstances, harm myself in any way, attempt suicide, or die by suicide.

2) I will alert security, medical, or mental health personnel if I believe that I am in immediate danger of harming myself.

3) I, _Santos Gamer III_ , hereby commit to meeting with a Texas Civil Commitment Center mental health counselor daily for mental health assessments until otherwise advised.

4) I will continue processing my thoughts and emotions surrounding my recent tier demotion until I can confidently and accurately deny experiencing suicidal or other thoughts of self-harm as determined by a Texas Civil Commitment Center mental health counselor.

Signature _____ 07175363 _____   Date_ 11-8-21 _____

Witness_ Barbara Am, LPC-A _____   Date_ 11/8/21 _____

# EXHIBT 29

**Texas Civil Commitment Office**
**Texas Civil Commitment Center**

## Review/Change in Tier

| | | | |
|---|---|---|---|
| **Client Name:** | Santos Gomez | **SID#:** | 07175363 |
| | Print Name | | |
| **Case Manager:** | Karon Gonzales | | |
| | Print Name | | |
| **Treatment Provider:** | Charles Gill | | |
| | Print Name | | |

**Staffing Date:** 11/4/2021          **Effective Date:** 11/15/2021

**Reason:** ☑ **Tier Advancement/Reduction**          ☐ **Annual Review**

**From:**
☐ Tier 1
☐ Tier 2
☐ Tier 3
☑ Tier 4

**To:**
☐ Tier 1
☑ Tier 2
☐ Tier 3
☐ Tier 4

**Acute Completion Date:** 10/20/2021          **Stable Completion Date:** 04/02/2021

**Team recommends GPS removal for Tier 3:** ☐ Yes   ☑ No

**Date approved by TCCO to move to Tier 4:** _____

**Tier privilege restriction – If yes, see comment section** ☑ Yes   ☐ No

**Tier housing restriction – If yes, see comment section** ☑ Yes   ☐ No

**Comments:** The treatment team agreed for Mr. Gomez to be demoted from a Tier 4 to a Tier 2 with Tier 1 privileges due to attempting to reach out to his daughter the (victim) through two of his approved collateral contacts by text message. On October 29, 2021, Mr. Gomez received a no opinion on his maintenance polygraph which address Unapproved/Undisclosed Relationship, Trafficking and Trading, and Cell Phone Compliance. Mr. Gomez is currently being placed in SMU.

| | | |
|---|---|---|
| **Refused PPG** | ☐ Yes | ☑ No |
| **Refused Assessment** | ☐ Yes | ☑ No |
| **Refused Polygraph** | ☐ Yes | ☑ No |
| **Delinquent with Cost Recovery** | ☐ Yes | ☑ No |

**If yes, amount delinquent:** $  N/A

_Charles Gill_ (signature)   Charles Gill
**TCCC Treatment Provider Signature**
Date: 11/5/21   ☑ Agree   ☐ Disagree

_Karon GONZALES_ (signature)
**TCCO Case Manager Signature**
Date: 11/5/2021   ☑ Agree   ☐ Disagree

_(signature)_
**Client Signature**
Date: 11/5/21   ☐ Agree   ☑ Disagree

Dist: Case Manager
     Client
     Client File
     CSS

TCCO-05-19
11/19/2019

# MTC – Texas Civil Commitment Center

**Case #**

## Disciplinary Hearing Script & Hearing Record

SVP Client Name: **Gomez, Santos**  SID#: **07175363**  Hearing Date/Time: **11/10/2021 / 1330**

**A. OPENING STAGE**
This is a Behavioral Management Committee hearing. The purpose of this hearing is to treat the matter before us with fundamental fairness and arrive at a just decision. All parties must conduct themselves properly. Failure to do so will result in removal.

**B. HEARING IDENTIFICATION STAGE**
SVP Client, state your name. [Behavior Management Committee introduces themselves.]

**C. ADMONITION STAGE**
SVP Client, this incident report alleges that [Committee Chair reads the report].
1. Do you understand the charges? (Yes) or No.  COMPLETE ☑ (check when complete)
(If no, the Committee Chair will explain the charges and be sure he/she understands them.)
2. It has been 24 hours since you were served these charges (if not, he/she may elect to waive the 24 hours). Therefore, your hearing may now begin. COMPLETE ☑ (check when complete)

**D. RESPONSE STAGE**
SVP Client, how do you plead? (circle one)   Admit   (Deny)   No Contest

**E. DEFENSE STAGE**
1. SVP Client, do you wish to make a statement on your behalf? (circle one)  (Yes)  No  (if yes, document below)
SVP Client Statement: He did send the message. This year he's cried a lot. He hasn't seen his daughters in years. That was his way to deal with stress. He sent the text to his mom and sister. It was an innocent statement made.
2. Do you wish to submit a written statement? (circle one)  Yes  (No)  (if yes, attach statement)

**F. ALLEGATION STAGE**
The incident report read at the beginning of the hearing will be considered as evidence against you.

**G. CLOSING STAGE**
We have heard the allegations and provided an opportunity for you to make a statement. We will now recess this hearing to arrive at a decision. [The Behavior Management Committee will discuss and determine the decision and intervention (if any).]

SVP Client, we find you (circle one)   (Guilty)   Not Guilty
7 days wing restriction w/time served   180 days package ineligibility
Your intervention will be: 30 day dorm restriction   (if found guilty.)

You will be provided a copy of this hearing record. You have a right to appeal our decision with respect to the determination of guilt and the intervention imposed, within 15 days of this hearing. You may appeal this decision by filing step 1 grievance. If you are dissatisfied with that response you may file a step 2 grievance. This hearing is concluded and you are dismissed.

Committee Chair: **Winckler   Chief**
Member #2: **Greenwalt   TCCO**
Member #3: **Winstow   Clinical**   MA, LPC-A, ASOTP

Interpreter (if applicable): _____  or  _____

Other Employees Present at Hearing: **Admin Ornelas**

908DIS – Attachment 3   SVP Client Signature: _____

# EXHIBT 30

## MTC – Texas Civil Commitment Center

| Case # |
|---|

### Disciplinary Hearing Script & Hearing Record

SVP Client Name: **Gomez, Santos** SID#: **07175363** Hearing Date/Time: **11/10/2021 / 1330**

**A. OPENING STAGE**
This is a Behavioral Management Committee hearing. The purpose of this hearing is to treat the matter before us with fundamental fairness and arrive at a just decision. All parties must conduct themselves properly. Failure to do so will result in removal.

**B. HEARING IDENTIFICATION STAGE**
SVP Client, state your name. (Behavior Management Committee introduces themselves.)

**C. ADMONITION STAGE**
SVP Client, this incident report alleges that (Committee Chair reads the report).
1. Do you understand the charges? Yes or No.   COMPLETE ☑ (check when complete)
(If no, the Committee Chair will explain the charges and be sure he/she understands them.)
2. It has been 24 hours since you were served these charges (if not, he/she may elect to waive the 24 hours). Therefore, your hearing may now begin. COMPLETE ☑ (check when complete)

**D. RESPONSE STAGE**
SVP Client, how do you plead? (circle one)     Admit     (Deny)     No Contest

**E. DEFENSE STAGE**
1. SVP Client, do you wish to make a statement on your behalf? (circle one)   (Yes)   No   (If yes, document below.)

SVP Client Statement: He did send the message. This year
he's cried a lot. He hasn't seen his daughters in
years. That was his way to deal with stress. He sent
the text to his mom and sister. It was an innocent statement
made.

2. Do you wish to submit a written statement? (circle one)     Yes     (No)   (If yes, attach statement.)

**F. ALLEGATION STAGE**
The incident report read at the beginning of the hearing will be considered as evidence against you.

**G. CLOSING STAGE**
We have heard the allegations and provided an opportunity for you to make a statement. We will now recess this hearing to arrive at a decision. (The Behavior Management Committee will discuss and determine the decision and intervention (if any).)

SVP Client, we find you (circle one)   (Guilty)   Not Guilty

Your Intervention will be: 7 day wing restriction w/ time served     180 days package
30 day dorm restriction     ineligibility     (If found guilty).

You will be provided a copy of this hearing record. You have a right to appeal our decision with respect to the determination of guilt and the intervention imposed, within 15 days of this hearing. You may appeal this decision by filing step 1 grievance. If you are dissatisfied with that response you may file a step 2 grievance. This hearing is concluded and you are dismissed.

| | Printed Name | | Signature |
|---|---|---|---|
| Committee Chair: | Winckler | Chief | |
| Member #2: | Greenwout | TCCO | |
| Member #3: | Winslow | Clinical | MA, LPC-A, ASOTP |

Interpreter (if applicable): _____  _____  or  _____
                         Printed Name      Signature       Language Line #50

Other Employees Present at Hearing: Admin Ornelas

| 906DIS – Attachment 3 |   SVP Client Signature: _____

# EXHIBT 31

# Texas Civil Commitment Office
## Texas Civil Commitment Center

## Review/Change in Tier

**Client Name:** Santos Gomez                                    **SID#:** 07175363

Print Name

**Case Manager:** Karon Gonzales

Print Name

**Treatment Provider:** Charles Gill

Print Name

**Staffing Date:** 11/4/2021                    **Effective Date:** 11/15/2021

**Reason:** ☑ Tier Advancement/Reduction          ☐ Annual Review

**From:**
| | |
|---|---|
| | Tier 1 |
| | Tier 2 |
| | Tier 3 |
| ✓ | Tier 4 |

**To:**
| | |
|---|---|
| | Tier 1 |
| ✓ | Tier 2 |
| | Tier 3 |
| | Tier 4 |

**Acute Completion Date:** 10/20/2021          **Stable Completion Date:** 04/02/2021

**Team recommends GPS removal for Tier 3:**   ☐ Yes   ☑ No

**Date approved by TCCO to move to Tier 4:** _____

**Tier privilege restriction – If yes, see comment section**   ☑ Yes   ☐ No

**Tier housing restriction – If yes, see comment section**   ☑ Yes   ☐ No

**Comments:** The treatment team agreed for Mr. Gomez to be demoted from a Tier 4 to a Tier 2 with Tier 1 privileges due to attempting to reach out to his daughter the (victim) through text message. On October 29, 2021, Mr. Gomez received a no opinion on his maintenance polygraph which address Unapproved/Undisclosed Relationship, Trafficking and Trading, and Cell Phone Compliance. Mr. Gomez is currently being placed in SMU.

**Refused PPG**            ☐ Yes   ☑ No
**Refused Assessment**     ☐ Yes   ☑ No
**Refused Polygraph**      ☐ Yes   ☑ No
**Delinquent with Cost Recovery**   ☐ Yes   ☑ No

**If yes, amount delinquent:**   $  N/A

_Charles Gill_ _(signed)_                    11/5/21        ☑ Agree   ☐ Disagree
**TCCC Treatment Provider Signature**        Date

_Karon GONZALES (signed)_                    11/5/2021      ☑ Agree   ☐ Disagree
**TCCO Case Manager Signature**              Date

_(signed)_                                   11/5/21        ☐ Agree   ☑ Disagree
**Client Signature**                         Date

Dist: Case Manager
    Client
    Client File
    CSS

TCCO-05-19
11/19/2019

# EXHIBT 32

## MTC – Texas Civil Commitment Center
### Disciplinary Hearing Script & Hearing Record

Case #

SVP Client Name: Gomez, Santos  SID # 071175363  Hearing Date/Time: 11/10/2021 / 1330

**A. OPENING STAGE**
This is a Behavioral Management Committee hearing. The purpose of this hearing is to treat the matter before us with fundamental fairness and arrive at a just decision. All parties must conduct themselves properly. Failure to do so will result in removal.

**B. HEARING IDENTIFICATION STAGE**
SVP Client, state your name. [Behavior Management Committee introduces themselves.]

**C. ADMONITION STAGE**
SVP Client, this incident report alleges that [Committee Chair reads the report].
1. Do you understand the charge? Yes or No.  COMPLETE ✓ (check when complete)
(If no, the Committee Chair will explain the charge and be sure he/she understands them.)
2. It has been 24 hours since you were served these charges (if not, he/she may elect to waive the 24 hours). Therefore, your hearing may now begin. COMPLETE ✓ (check when complete)

**D. RESPONSE STAGE**
SVP Client, how do you plead? (circle one)   Admit   (Deny)   No Contest

**E. DEFENSE STAGE**
1. SVP Client, do you wish to make a statement on your behalf? (circle one) (Yes)  No  (If yes, document below.)
SVP Client Statement: He did send the message. This year
he's cried alot. He hasn't seen his daughters in
years. That was his way to deal with stress. He sent
the text to his mom and sister. It was an innocent statement
2. Do you wish to submit a written statement? (circle one)  Yes  (No)  (If yes, attach statement.)  made.

**F. ALLEGATION STAGE**
The incident report read at the beginning of the hearing will be considered as evidence against you.

**G. CLOSING STAGE**
We have heard the allegations and provided an opportunity for you to make a statement. We will now recess this hearing to arrive at a decision. [The Behavior Management Committee will discuss and determine the decision and intervention (if any).]

SVP Client, we find you (circle one)   (Guilty)   Not guilty

Your intervention is: 7 days wing restriction w/time served   180 days package
30 day dorm restriction   ineligibility   (If found guilty.)

You will be provided a copy of this hearing record. You have a right to appeal our decision with respect to the determination of guilt and the intervention imposed, within 15 days of this hearing. You may appeal this decision by filing step 1 grievance. If you are dissatisfied with that response you may file a step 2 grievance. This hearing is concluded and you are dismissed.

Committee Chair: Winckler   Chief
Member #2: Greenwalt  TCCO
Member #3: Winslow  Clinical   MA, LPC-A, ASOTP

Interpreter (if applicable): _____  or _____

Other Employees Present at Hearing: Admin Ornelas

SVP Client Signature: _____

SOBDS – Attachment 3

# EXHIBT 33

## Provider Progress/Narrative Note

**Type of Note:**

☑ Narrative

### Narrative

**Narrative Note:**

Pending Xray client request to start PT. This will be approved.

Client requesting bottom bunk pass. this will be approved for 60 day period. Follow up will be necessary for renewal.

IBP is available on pods for OTC use following label instructions.

### Plan

**Follow-up:**

☑ Follow-up w/ NP/PA-C

**Follow-up w/ NP/PA-C in:**
☑ Other

**Specify Other Timeframe for Follow-up w/ NP/PA-C:**
as previously scheduled

**Medication:**
*NO ANSWER PROVIDED*

**Vital(s)/Treatment(s) being ordered:**
*NO ANSWER PROVIDED*

**Order Labs:**
*NO ANSWER PROVIDED*

**Order Other Diagnostics (i.e. X-Ray, ECG, Sonogram):**
*NO ANSWER PROVIDED*

**Order Immunization(s):**
*NO ANSWER PROVIDED*

**Order Outside Referrals/Consults:**
☑ Yes

**Specify Outside Referrals/Consults needing to be ordered:**
Referral for left knee pain. X-ray pending.

**Type of Outside Referral/Consult:**
☑ Routine

---

**Provider Progress/Narrative Note**
SOAP note Providers

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By NEWKIRK, MIRANDA on 11/29/2021 13:42:52

**Interpreter:**

☑No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| NEWKIRK, MIRANDA, NP | 11/29/2021 13:42:52 |

**Provider Progress/Narrative Note**
SOAP note Providers

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By NEWKIRK, MIRANDA on 11/29/2021 13:42:52

2 of 2

## Bottom Bunk Assessment

**Subjective:**

Approved for bottom bunk pass for left knee pain pending further evaluation. Only for 60 days from 11/29/21.

**Height:**
NO ANSWER PROVIDED

**Weight:**
NO ANSWER PROVIDED

**Age:**
38

**The patient has:**
NO ANSWER PROVIDED

### Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment

**Does the patient have any of the objective findings below present:**

☑ Other restrictions

> **Specify Other restrictions:**
> Left knee pain pending further evaluation. Only for 60 days from 11/29/21.

\* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses. Physicians and other providers are not involved in the ordering of bottom bunks or comfort items.

**Interpreter Needed:**
☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| NEWKIRK, MIRANDA, NP | 11/29/2021 13:44:13 |

---

**Bottom Bunk Assessment**
Bottom Bunk Assessment

**Patient Name: GOMEZ III, SANTOS**
**Patient Number: 07175363**
**Location: D2-7-9T**
**DOB: 6/15/1983**
**Facility: TEXAS CIVIL COMMITMENT CENTER**
**Electronically Signed By NEWKIRK, MIRANDA on 11/29/2021 13:44:13**

## Provider Progress/Narrative Note

**Type of Note:**
☑ Narrative

### Narrative

**Narrative Note:**
Pt with left knee pain since August 2021. Has an MRI scheduled. walks with limp. Has much pain with lateral pressure to knee.

A/P:

1. Pt has an MRI scheduled placed by Mrs Pena. I feel this pt needs oertho consdit.

2. Bottom bunk until knee issue resolved.

### Plan

**Follow-up:**
☑ No Follow-up needed at this time

**Medication:**
*NO ANSWER PROVIDED*

**Vital(s)/Treatment(s) being ordered:**
☑ No

**Order Labs:**
☑ No

**Order Other Diagnostics (i.e. X-Ray, ECG, Sonogram):**
☑ No

**Order Immunization(s):**
☑ No

**Order Outside Referrals/Consults:**
☑ Yes

**Specify Outside Referrals/Consults needing to be ordered:**
needs ortho consult concerning left knee.

**Type of Outside Referral/Consult:**
☑ Routine

**Interpreter:**
☑ No

---

**Provider Progress/Narrative Note**
SOAP note Providers

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By GUY, ERIC on 05/20/2022 11:01:34**

## Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| GUY, ERIC, MD | 05/20/2022 11:01:34 |

**Provider Progress/Narrative Note**
SOAP note Providers

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By GUY, ERIC on 05/20/2022 11:01:34

2 of 2

# EXHIBT 34

GOMEZ III, SANTOS  #07175363                                    DOB: 6/15/1983 (39y)  Location: D2-7-9T

## Bottom Bunk Assessment

**Subjective:**

Patient had a normal knee xray with continued pain, abnormal knee mri now pending orthro consult.

**Height:**

NO ANSWER PROVIDED

**Weight:**

183

**Age:**

39

**The patient has:**

NO ANSWER PROVIDED

### Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment

**Does the patient have any of the objective findings below present:**

☑ Other restrictions

**Specify Other restrictions:**

knee injury verified by mri

\* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses.

**Interpreter Needed:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| URBINA, JENNIFER MARIE, | 06/17/2022 10:20:05 |

**Bottom Bunk Assessment**
Bottom Bunk Assessment

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By URBINA, JENNIFER MARIE on 06/17/2022
10:20:05

GOMEZ III, SANTOS  #07175363
DOB: 6/15/1983 (39y)   Location: D2-7-9T

## Provider Progress/Narrative Note

**Type of Note:**

☑ Narrative

### Narrative

**Narrative Note:**

Mri results noted, his shoe inserts and knee brace are ordered. Orthro consult placed, he hasn't responded to conservative therapy. Bottom bunk request.

### Plan

**Follow-up:**

☑ No Follow-up needed at this time

**Medication:**

*NO ANSWER PROVIDED*

**Vital(s)/Treatment(s) being ordered:**

☑ No

**Order Labs:**

☑ No

**Order Other Diagnostics (i.e. X-Ray, ECG, Sonogram):**

☑ No

**Order Immunization(s):**

☑ No

**Order Outside Referrals/Consults:**

☑ Yes

> **Specify Outside Referrals/Consults needing to be ordered:**
> Ortho consult- bakers cyst, possible bucket handle mensiqus tear,
>
> **Type of Outside Referral/Consult:**
> ☑ Routine

**Interpreter:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| URBINA, JENNIFER MARIE, | 06/17/2022 10:30:44 |

Provider Progress/Narrative Note
Note Providers

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By URBINA, JENNIFER MARIE on 06/17/2022 10:30:44

## Medical Records Note

**Narrative Notes:**

Received Bottom Bunk orders from Urbina, NP. Attempted to mark Bottom Bunk in "Manage Restrictions/Special Needs" and Sapphire will not save changes. Chief Winkler and Sgt. Arnivaz have both been notified. Placed on PT and will begin 06/18/2022. Ortho orders rec'd as well.

**Referrals Needed:**

☑ No Referrals needed at this time

**Interpreter:**

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| MENDOZA, NANCY, MRS | 06/17/2022 11:18:51 |

---

**Medical Records Note**
Progress Note for Med Records usage - both SOAPE and Narrative

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** MENDOZA, NANCY on 06/17/2022 11:18:51

1 of 1

# EXHIBT 35

RECEIVED 5/24/2022 12:56 PM
2016-DCL-00365 / 64801714
LAURA PEREZ-REYES
Cameron County District Clerk
By Vilma Garcia Deputy Clerk

NO. 2016-DCL-00365

| | |
|---|---|
| IN RE THE CIVIL COMMITMENT | IN THE DISTRICT COURT |
| OF | 103RD JUDICIAL DISTRICT |
| SANTOS GOMEZ, III | CAMERON COUNTY, TEXAS |

**ORDER TO NULLIFY MOVEMENT TO MORE RESTRICTIVE HOUSING**

It being called to the attention of the Court that SANTOS GOMEZ III, in the above-numbered and styled cause is entitled to have his clinical or treatment status restored to his status prior to October 23, 2021 (Tier 4 with AGE pending), in the 5-Tier Program under the direction of the Texas Civil Commitment Office at the Texas Civil Commitment Center in Littlefield, Texas which is managed by Management Training Corporation. This includes restoration of Tier 4 housing, removal of ankle monitoring, and ending all remedial measures. The Court finds that the incident and follow-up actions were NOT in compliance with Texas Health and Safety Code, Chapter 841.0834 (d) as a hearing was not held within 90 days, and the actions were not warranted.

The Court ORDERS The Civil Commitment Office's decision to move Santos Gomez III to a more restrictive setting nullified. Further, to ensure no future negative consequence to Santos Gomez III as a result of this matter, the court ORDERS the Texas Civil Commitment Office, Texas Civil Commitment Center, and Management Training Corporation to redact this matter in their records.

The clerk is hereby ORDERED to send a certified copy of this Order to the parties.

Signed this _____ day of _____ 5/25/2022 8:28:26 AM _____ 2022.

JANET LEAL, JUDGE PRESIDING

cc: 6/1/2022(emailed)
Hon Samantha Torres
Hon Douglas E Moyer Sr.

FILED
2016-DCL-00365      NO. 2016-DCL-00365
June 1, 2022        8:49 a.m.
LAURA PEREZ-REYES
CAMERON COUNTY DISTRICT CLERK
BY:Munoz, Adriana

# EXHIBT 36

## Bottom Bunk Assessment

**Subjective:**

Approved for bottom bunk pass for left knee pain pending further evaluation. Only for 60 days from 11/29/21.

**Height:**

NO ANSWER PROVIDED

**Weight:**

NO ANSWER PROVIDED

**Age:**

38

**The patient has:**

NO ANSWER PROVIDED

### Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment

**Does the patient have any of the objective findings below present:**

☑ Other restrictions

**Specify Other restrictions:**

Left knee pain pending further evaluation. Only for 60 days from 11/29/21.

* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses. Physicians and other providers are not involved in the ordering of bottom bunks or comfort items.

**Interpreter Needed:**

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| NEWKIRK, MIRANDA, NP | 11/29/2021 13:44:13 |

**Bottom Bunk Assessment**
Bottom Bunk Assessment

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By NEWKIRK, MIRANDA on 11/29/2021 13:44:13

GOMEZ III, SANTOS   #07175363                                    DOB: 6/15/1983 (39y)   Location: D2-7-9T

## Bottom Bunk Assessment

**Subjective:**

Approved for bottom bunk pass for 60 days awaiting further treatment.

**Height:**

NO ANSWER PROVIDED

**Weight:**

179

**Age:**

38

**The patient has:**

NO ANSWER PROVIDED

## Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment

**Does the patient have any of the objective findings below present:**

☑ Other restrictions

**Specify Other restrictions:**

Treatment for knee

* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses. Physicians and other providers are not involved in the ordering of bottom bunks or comfort items.

**Interpreter Needed:**

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| NEWKIRK, MIRANDA, NP | 03/16/2022 11:29:29 |

---

**Bottom Bunk Assessment**
Bottom Bunk Assessment

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** NEWKIRK, MIRANDA on 03/16/2022 11:29:29

# EXHIBT 37

## Bottom Bunk Assessment

**Subjective:**

Patient had a normal knee xray with continued pain, abnormal knee mri now pending ortho consult.

**Height:**

*NO ANSWER PROVIDED*

**Weight:**

183

**Age:**

39

**The patient has:**

*NO ANSWER PROVIDED*

### Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment

**Does the patient have any of the objective findings below present:**

☑ Other restrictions

**Specify Other restrictions:**

knee injury verified by mri

\* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses.

**Interpreter Needed:**

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| URBINA, JENNIFER MARIE, | 06/17/2022 10:20:05 |

..

**Bottom Bunk Assessment**
Bottom Bunk Assessment

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** URBINA, JENNIFER MARIE **on** 06/17/2022 10:20:05

GOMEZ III, SANTOS  #07175363                                          DOB: 6/15/1983 (39y)   Location: D2-7-9T

## Provider Progress/Narrative Note

**Type of Note:**

☑ Narrative

### Narrative

**Narrative Note:**

Late entry for 6/9/22

Patient came to the clinic upset that security had to relocate him to a top bunk due limited spacing. He was quoted saying to security staff " Who do I get to sue when I fall". On the 9th is was reported by security that patient slipped and fell and was assessed by medical staff. On assessment in office today06/09/22 patient walked into office without signs of injury. No bruising or swelling noted to either knee and gait is stable. He was carrying a large speaker around his neck and was noted to sit and stand with ease out of chair. He reports that naproxen has helped some with pain. He reports to provider that he is able to climb on to top bunk but that he needs a more stable appliance that allows him to climb. This request was made to security to assess and to see if he is able to get a more stable appliance. Patient requested if he could get moved to another location with a bottom bunk such as medical or smu. He then declined either option when he learned that he would lose either rec or the use of some belongings due to policies in those areas. Patient was educated that the moves are temporary until new buildings are open to use. He verbalized understanding and is awaiting to be moved to another location.

### Plan

**Follow-up:**

☑ No Follow-up needed at this time

**Medication:**

NO ANSWER PROVIDED

**Vital(s)/Treatment(s) being ordered:**

☑ No

**Order Labs:**

☑ No

**Order Other Diagnostics (i.e. X-Ray, ECG, Sonogram):**

☑ No

**Order Immunization(s):**

☑ No

**Order Outside Referrals/Consults:**

☑ No

**Interpreter:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| URBINA, JENNIFER MARIE, | 08/16/2022 20:57:25 |

**Provider Progress/Narrative Note**
SOAP note Providers

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By URBINA, JENNIFER MARIE on 06/16/2022
20:57:25

## Provider Progress/Narrative Note

**Type of Note:**

☑ Narrative

### Narrative

**Narrative Note:**

Mri results noted, his shoe inserts and knee brace are ordered. Ortho consult placed, he hasn't responded to conservative therapy. Bottom bunk request.

### Plan

**Follow-up:**

☑ No Follow-up needed at this time

**Medication:**

*NO ANSWER PROVIDED*

**Vital(s)/Treatment(s) being ordered:**

☑ No

**Order Labs:**

☑ No

**Order Other Diagnostics (i.e. X-Ray, ECG, Sonogram):**

☑ No

**Order Immunization(s):**

☑ No

**Order Outside Referrals/Consults:**

☑ Yes

> **Specify Outside Referrals/Consults needing to be ordered:**
>
> Ortho consult- bakers cyst, possible bucket handle meniscus tear,
>
> **Type of Outside Referral/Consult:**
>
> ☑ Routine

**Interpreter:**

☑ No

## Save Log

| User Name | AuditDateAndTime |
|---|---|
| URBINA, JENNIFER MARIE, | 06/17/2022 10:30:44 |

---

**Provider Progress/Narrative Note**
SOAP note Providers

**Patient Name:** GOMEZ III, SANTOS
**Patient Number:** 07175363
**Location:** D2-7-9T
**DOB:** 6/15/1983
**Facility:** TEXAS CIVIL COMMITMENT CENTER
**Electronically Signed By** URBINA, JENNIFER MARIE **on** 06/17/2022 10:30:44

# EXHIBT 38

## Nursing Narrative Note

**Type of Progress Note:**

☑ Narrative

### Narrative

**Narrative Notes:**

Around 06:45, ICS was initiated in delta 2 dorm due to resident falling off his bunk. Per security, resident was climbing on top of a box and fell off while trying to get into bed. Upon arrival to dorm, resident was seen sitting down with security present. Redness noted to left elbow, no swelling. Resident states he caught himself with his knees and elbows. States he has trouble with his left knee and is awaiting an MRI. Resident is advising he needs a bottom bunk pass as well. Resident ambulated to medical for further evaluation. In medical, V/S were obtained and WNL. Full ROM noted to lower and upper bilateral extremities. Ambulated with a steady gait. No swelling noted. Ibuprofen was administered for relief of C/O mild pain. Resident also instructed he could request/utilize an ice pack if needed. Resident verbalized understanding and ambulated back to housing unit. Urbina, NP notified of incident around 08:45.

**Referrals Needed:**

☑ No Referrals needed at this time

**Interpreter:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|---|---|
| MARTINEZ, VICTORIA, RN | 06/09/2022 10:00:04 |

**Nursing Narrative Note**
Progress Note for general staff usage - both SOAPE and Narrative

**Patient Name: GOMEZ III, SANTOS**
**Patient Number: 07175363**
**Location: D2-7-9T**
**DOB: 6/15/1983**
**Facility: TEXAS CIVIL COMMITMENT CENTER**
**Electronically Signed By MARTINEZ, VICTORIA on 06/09/2022 10:00:04**

1 of 1

# TEXAS CIVIL COMMITMENT CENTER

MTC
Management
& Training
Corporation
A Leader in Social Im

INCIDENT REPORT

INCIDENT #: _____

PAGE __1__ OF __3__

REPORT NO OPINIONS OR SPECULATION—JUST THE FACTS AS YOU KNOW THEM

Person Completing the Report: **J. Pearson**

Date/Time of Report: **6-9-22  0650**

**Type of Incident (Check All That Apply)**

| | | | | |
|---|---|---|---|---|
| ☐ Assault | ☐ Escape | ☐ Media Event | ☐ Staff Injury | ☐ Other |
| ☐ Barricading | ☐ Equip. Failure/Dmg. | ☐ Medical Emergency | ☐ Use of Force | |
| ☐ Contraband | ☐ Fire | ☐ Psychological Emergency | ☐ Violation Rules-Client | |
| ☐ Death | ☐ Legal Event | ☒ Client Injury | ☐ Violation Rules-Staff | |

Location of Incident: **Delta 2 RM 7**

Date/Time of Incident: **6-9-22 / 0650**

Primary Client Involved: **Gomez, Santos**

TCCC#: **07175363**

| STAFF PRESENT | CLIENT(S) PRESENT | CLIENT TCCC#: |
|---|---|---|
| SO Fowler | Gomez, Santos | 07175363 |
| SO Cruz | | |
| SO Swanger | | |
| SO Saenz | | |
| RN Martinez | | |

**DETAILS-WHAT HAPPENED?** (Remember to answer who, what, when, where, why, and how):

On 6-9-22 at approximately 0650hrs, an ICS was initiated in Delta 2 Bigroom for a Client (Gomez, Santos TCCO #07175363) who had fallen out of his upper bunk. Security and Medical responded accordingly. Client Gomez was found to be in a sitting position on the floor. He said that he tried to get up into his bunk and fell because his knee "gave out." Client Gomez did not have any obvious visible injuries and was able to get up and walk to MTC Medical for evaluation without any problems. Client Gomez immediately complained about his bottom bunk pass being taken away and that he was just moved into a top bunk. This was his main concern. ICS was terminated at 0655hrs.

CCTV video was reviewed and is showed Client Gomez attempt to get into his bunk in a reverse seated position. He appears to slip and fall forward to the floor. Client Gomez was evaluated by MTC Medical and returned to regular housing.

By my signature, I hereby certify that the information contained in this report is true to the best of my knowledge and that I was involved in or witnessed the event described herein.

Signature of Reporting Person: **J. Pearson /** ~~_____~~

Number of Pages: **3**

Actions Taken: ____ Secure Management   ____ Wing Restriction   ____ Duty Officer Notified   ____ Clinical Notified

**X** Medical Notified   ____ 911 Called   ____ Transported to Outside Medical

1

IR 2206-13
2 of 3

MTC Management & Training Corporation
A Leader in Social Impact

# Injury Report

**Client Name:** Santos Gomez

**Client Number:** 07175363   **DOB:** 6/15/83

**Date/Time injury:** 6/9/22 0645

**Date/Time reported:** 6/9/22 0645

**Where did injury happen (be as specific as to location):** Delta 2

**A) Cause of Injury (client's statement of how injury occurred):** Fell off bed while climbing onto bunk

**B) Symptoms (as reported by the client):** Right knee pain & left elbow pain

**C) Was injury visible at time of screening?** (Y) N   **If yes, which area of body injured?** Redness to left elbow

**D) Observations or findings from examination)** Redness to left elbow; Ø swelling

**E) Vital Signs: Temp** 963 **Pulse** 111 **Resp.** 18 **B/P** 147/88 **Pulse Ox:** 97 **Weight** 179

**Treatment:**

☐ Transfer to ER per Provider Order   Transport via:   ☐ Van   ☐ 911/EMS Activate

☐ Place in Medical Housing for_____until_____

☐ Cleared to Return to Current Housing in Facility per Provider:_____

☑ Other: returned to housing after evaluation in medical   **Date/Time**

**Injuries Required:**
☐ No Injuries Noted
☑ Minor First Aid
☐ Treatment Beyond First Aid
☐ Transport to Off-Site Medical

☑ **Brief Description of Treatment** Ibuprofen given for c/o pain

**Medical Staff Printed:** Victoria Martinez   **Title:** RN

**Medical Staff Signature:** _____   **Date:** 6/9/22

**Security Supervisor Printed:** J. Pearson

**Security Supervisor Signature:** _____   **Date:** 6-9-23

# TEXAS CIVIL COMMITMENT CENTER

MTC
Management
& Training
Corporat
A Leader in Social Ir

W-27-D-13

## FACILITY MANAGEMENT REVIEW AND RESPONSE

| SHIFT SUPERVISOR/ASSISTANT SHIFT SUPERVOSOR (Print Name) | **Report for information.** |
|---|---|
| Captain J. Pearson | Signature: _____  Date: 6-9-22 |
| TREATMENT ADMINISTRATOR/ DESIGNEE (Print Name) | Signature: _____  Date: |
| CHIEF OF SECURITY/DESIGNEE (PRINT NAME) Winckler, J | Reviewed  Signature: _____  Date: 6/15/22 |
| OTHER (PRINT NAME) | Signature: _____  Date: |

3

# EXHIBT 39



**LHC** LAMB HEALTHCARE CENTER

1500 South Sunset ● Littlefield, Texas 79339
(806) 385-6411
FAX (806) 385-8454

**365961**

## FAX

To: MTC Medical AT          From: Julie

Fax: 485-8186              Pages: 5T Cover

Email: _____      Email: _____

Phone: _____      Date: 6-17-22

RE: _____          CC: _____

☐ Urgent   ☐ For Review   ☐ Please Comment   ☐ Please Reply   ☐ Please Recycle

Comments: Pt. Gomez III Santos DOB- 6-15-83
OP- DOS- 6-15-22
MRI
Thanks you
Med. Recs

**CONFIDENTIAL NOTICE:** The information contained in this facsimile or email message is confidential information intended only for the individual or entity named above. If the reader of this message is not the intended recipient, you are respectfully notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you have received this communication in error, please notify me immediately at phone (806) 385-8454.

LAMB HEALTHCARE CENTER     1500 S SUNSET     LITTLEFIELD    TX 79339

**RECORD OF ADMISSI**

| ENTRY DATE 6/15/22 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| PATIENT NAME GOMEZ III SANTOS | | ROOM NO. | HOSP. NO. 365961 | ADDRESS LINE - 1 2600 SOUTH SUNSET | | | ADDRESS LINE - 2 | |
| AGE 39 | BIRTHDATE 06/15/1983 | SEX M | BIRTHPLACE | CITY LITTLEFIELD | | STATE TX | ZIP CODE 79339 | COUNTY CODE 107 |
| SSAN | NATIONALITY H | CIVIL ST. MILITARY N | RELIGION | | | CHURCH | | PATIENT TELEPHONE 806-485-8100 |

| NAME OF HUSBAND OR NAME OF WIFE | SPOUSE BIRTHPLACE | | SPOUSE EMPLOYER NAME |
|---|---|---|---|
| SPOUSE ADDRESS | | | SPOUSE EMPLOYER TELEPHONE |

| NAME OF FATHER | BIRTHPLACE | NAME OF MOTHER | BIRTHPLACE |
|---|---|---|---|

| PATIENT EMPLOYER NAME TEXAS CIVIL COMMITMENT | EMPLOYMENT UNKNOWN | ADDRESS 2600 S SUNSET A LITTLEF TX | EMPLOYER TELEPHONE 806-485-8100 |
|---|---|---|---|
| UNEMPLOYED | EMPLOYER ADDRESS | | GUARANTOR OCCUPATION |

| GUARANTOR NAME TEXAS CIVIL COMMITMENT | GUARANTOR TELEPHONE 806-485-8100 | GUARANTOR SOCIAL SECURITY NO. | |
|---|---|---|---|
| GUARANTOR ADDRESS - 1 2600 S SUNSET AVE | CITY LITTLEFIELD | TEXAS CIVIL COMMITME 00000000000000 | |
| GUARANTOR ADDRESS - 2 | STATE TX | ZIP CODE 79339 | NAME | FIRM | PLACE | RIGHT |

| ATTENDING PHYSICIAN PENA M | CONSULTING PHYSICIAN | ADMITTING SERVICE X-RAY | NUMBER 4 | MRI | | NOTIFYING DIAGNOSIS | |
|---|---|---|---|---|---|---|---|
| ALLERGIES | | | | | | | |

| FINANCIAL CLASS TB | MEDICAL RECORDS NUMBER 30035445 | ADMISSION CODE 31/EL FR | | DATE LAST ADM. 10/02/18 | PREV. ADM. NO. 312532 | ADMISSION DATE 6/15/22 | TIME OF ADMISSION 1:38 PM | INITIALS CC | DISCHARGE 615 |
|---|---|---|---|---|---|---|---|---|---|
| | | | ROOM | HOME HOSPITAL | SKILLED NURSING FACILITY | LARGE NURSING FACILITY | MEDICAL SURGICAL CHILD BIRD | DISCHARGE NUMBER | LEFT AMA | DOA | OTHER | TIME 1:38 |

PRINCIPAL DIAGNOSIS:

         ADVANCE DIRECTIVE = N        CODE

SECONDARY DIAGNOSIS:

PRINCIPAL OPERATION/DATE:

SECONDARY OPERATIONS:

Consultation With

Results: ☐ Recovered   ☐ Improved   ☐ Not Improved   ☐ Not Treated   ☐ Diagnosis Only   ☐ Died   ☐ Released Against Advice

Cause of Death

       Autopsy: ☐ Yes   ☐ No

I have examined and approved this complete medical record on

Signed

             Attending Physician

ADMISSION — SUMMARY SHEET

LAMB HEALTHCARE CENTER
LITTLEFIELD, TX 79339

```
-----------NAME-----------     NUMBER  SEX AGE    ADMIT     DISC.   XRAY#  F/C   TYPE
  GOMEZ III SANTOS            365961    M   39  6/15/22  6/15/22  3003544TB       O/P
     DATE OF BIRTH: 06/15/1983    M/R# 30035445        PH#: 806-485-8100   RM
```

LOCATION:
MRI KNEE LT W/O 73721                 73721        TRANSCRIBED: 06/15/22 20:27 MT
{REASON FOR PROCESS:   CHRONIC LT KNEE PAIN          COMPLETED:06/15/22 15:42 LM   5893C

PHYSICIAN: LHC

---

## RADIOLOGY REPORT

---

PERFORMING LOCATION:  LAMB HEALTHCARE CENTER

EXAM: MRI KNEE LT W/O 73721 - 06/15/2022

HISTORY:
Patient hurt knee standing from a chair sitting position.  Knee pain.

TECHNIQUE:  Multi-echo, multiplanar unenhanced images of the left
knee.

COMPARISON:  None.

FINDINGS:
The quadriceps and patellar tendon are intact.  The anterior and
posterior cruciate ligaments are intact.  No joint effusion.  Small
Baker cyst is present.  Myxoid degenerative signal is present in the
medial meniscus.  There is reduced volume of the body of the lateral
meniscus and a clumped appearance of the anterior medial aspect of
the lateral meniscus concerning for a degree of bucket-handle tear.
No bone marrow edema.  Collateral ligaments, iliotibial band, and
popliteus tendon are intact.

IMPRESSION:
* Findings concerning for bucket-handle tear of the lateral meniscus.
* Small Baker cyst.

CAC/ac
DATE DICTATED: 06/15/2022
DATE TYPED:        06/15/2022

1

Radiologist: Cox, Cody M.D.
Electronically Signed: 06/15/2022 08:27 PM


Electronically Signed By:
DCTNAME, RADCRED
Date/Time: SIGNDATE

# EXHIBT 40



Management
& Training
Corporation
A Leader in Social Impact

# Texas Civil Commitment Center

Rev. 54

## CLIENT BANK TRUST FUND WITHDRAW FORM

| From: (Client Name) | Gomez III, Santos |
|---|---|
| Client Number | 07175363 |

Check Request:
Please accept this memo as my request to withdraw: _____ $1.00 _____ from my client trust fund account for the

purpose of _picture X2 of bruises on right leg. ASAP, please._

_____

Please make the Trust Fund check payable to: _____

_____

Please mail the check to: _____

_____

Requested By: (Client Name) _____     6-21-22
Requested Date

Received By: (Finance Department) _____     Date _____     ☐ Sufficient Funds
☐ Insufficient Funds
☐ Approved ☐ Disapproved

Finance Manager _____     Date _____

Trust Fund Check Number Issued: _____     Date Mailed: _____

received
on
6-23-2022

No picture to be taken

SBaker

5/8/2019

# EXHIBT 41

## Bottom Bunk Assessment

**Subjective:**

Patient had a normal knee xray with continued pain, abnormal knee mri now pending ortho consult.

**Height:**

NO ANSWER PROVIDED

**Weight:**

183

**Age:**

39

**The patient has:**

NO ANSWER PROVIDED

### Assessment Decision/Plan

If Yes, a bottom bunk pass is approved.
If No, a bottom bunk is not authorized by medical staff Bottom Bunk Assessment
**Does the patient have any of the objective findings below present:**

☑ Other restrictions

**Specify Other restrictions:**

knee injury verified by mri

* If Bottom Bunk assigned, this should affect work and recreation

The only person who can override this protocol is the Health Services Administrator / Director of Nurses.

**Interpreter Needed:**

☑ No

### Save Log

| User Name | AuditDateAndTime |
|-----------|------------------|
| URBINA, JENNIFER MARIE, | 06/17/2022 10:20:05 |

..

**Bottom Bunk Assessment**
Bottom Bunk Assessment

Patient Name: GOMEZ III, SANTOS
Patient Number: 07175363
Location: D2-7-9T
DOB: 6/15/1983
Facility: TEXAS CIVIL COMMITMENT CENTER
Electronically Signed By URBINA, JENNIFER MARIE on 06/17/2022
10:20:05

# UNITED STATES POSTAL SERVICE ®

# PRIORITY MAIL

Santos Gomez III
07175363
Texas Civil Commitment
2600 South Sunset Ave
Littlefield, TX 79133

RECEIVED JUL 11 2023

## MAILING ENVELOPE
FOR DOMESTIC AND INTERNATIONAL

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

## TRACKED ■ INSURED



PS00000133100

EP14 July 2022
OD: 15 x 11.625

US POSTAGE & FEES PAID
PRIORITY MAIL
LEGAL FLAT RATE ENVELOPE
ComBasePrice

## P USPS PRIORITY MAIL ®

Santos Gomez
07175363
2600 S SUNSET AVE
LITTLEFIELD TX 79339

SHIP
TO:   UNITED STATES DISTRICT COURT
      Northern District of Texas
      1205 TEXAS AVE RM 209
      LUBBOCK TX 79401-4027

USPS TRACKING #



9406 5112 0620 3733 8133 99