UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SANTOS GOMEZ, III, <br><br> Plaintiff, <br><br> v. <br><br> KARON GONZALES, *et al.*, <br><br> Defendants. | No. 5:23-CV-00148-H |

## OPINION AND ORDER

In 2016, Plaintiff Santos Gomez, III was found to be a "sexually violent predator" under Texas Health & Safety Code § 841.003 and a civilly committed to a housing facility for treatment and supervision. Gomez is currently housed in the Texas Civil Commitment Center (TCCC) in Littlefield, Texas, which is managed by Management & Training Corporation (MTC) and supervised by the Texas Civil Commitment Office (TCCO). Proceeding pro se, Gomez filed a 78-page complaint and 131 pages of exhibits. Dkt. No. 1. Gomez alleges that Defendants, all of whom work at TCCC, violated his constitutional rights in several instances. He seeks to recover damages and declaratory and injunctive relief from Defendants in their individual and official capacities under 42 U.S.C. § 1983.

Defendants Wayne Schmoker, James Winckler, and Stenson Fisher (MTC Defendants) filed a motion to dismiss Gomez's claims under Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 31. They argue that, for various reasons, Gomez has failed to state a plausible Section 1983 claim against them. Defendant Karon Gonzales, an employee of the TCCO, filed a similar motion. Dkt. No. 32. Gomez filed a one-paragraph reply to both motions, insisting in a conclusory manner that he has stated plausible claims against Defendants. Dkt. Nos. 34, 35. Gomez also filed two motions seeking court orders compelling the defendants to properly serve him with pleadings and remove Defendant Gonzales as his case manager. Dkt. Nos. 33, 36.

As explained below, the Court concludes that Defendants' motions should be granted in part and denied in part. The Court also denies Gomez's motions.

1.   **Background**

The following facts and timeline of events are based on the allegations made by Gomez in his complaint and gleaned from the exhibits attached to it. At this stage of litigation, the Court must accept them as true and view them in the light most favorable to Gomez.

The TCCO is responsible for providing appropriate and necessary treatment and supervision for civilly committed sexually violent predators.[1] Treatment is delivered in five tiers. Tiers One through Four are located at the TCCC. Tier Five is delivered while the client is residing in a home plan in the community. Progression through the tiers is self-paced, and, as the client progresses through the tiers, he or she can earn more privileges and may be moved to less restrictive housing within the TCCC.

In July 2021, Defendant Karon Gonzales, Gomez's case manager, recommended that Gomez, based on his treatment progress and good behavior, be promoted from Tier Four to Tier Five/A.G.E. status. Dkt. No. 1 at 13, 80–84. In late July or early August, 2021, Gomez sustained an injury to his left knee. *Id.* at 13–14. On August 23, 2021, Gonzales accused Gomez of using his cell phone to have an inappropriate affair with his attorney and confiscated his cell phone. *Id.* at 14. After the incident, Gomez's attorney contacted the TCCO to confirm that she was representing Gomez in personal matters unrelated to his commitment. *Id.* On August 30, 2021, Gonzales returned Gomez's phone to him. *Id.* On October 18, 2021, Gonzales denied Gomez's request to call the courthouse about his bi-annual review. *Id.* at 86.

On October 23, 2021, Gomez sent a text to his mother and sister that referenced his daughter, who is a victim of his underlying criminal offense. *Id.* at 17. On November 4, 2021,

---

[1] See https://tcco.texas.gov/sites/default/files/documents/civil-commitment-program-overview.pdf, which is an official State of Texas website; *see also* Tex. Health & Safety Code §§ 841.081–841.085.

Gonzales discovered the text and immediately notified Lamb County law-enforcement authorities of Gomez's unlawful attempt to contact one of his victims in violation of his commitment requirements under Section 841.082(a)(2) and TCCC Rule No. 4. *Id.* The same day, Gonzales filed an incident report, and Gomez was placed in solitary confinement pending the potential criminal prosecution and disciplinary action. *Id.* The following day, on November 5, Gonzales and Charles Gill, Gomez's TCCC treatment provider, signed a form demoting Gomez from Tier Four to Tier Two with Tier One privileges. *Id.* at 121. According to the form, the change to Gomez's tier status would not become effective until November 15, 2021. *Id.*

On November 10, 2021, Gomez was removed from solitary confinement and brought before the MTC/TCCC Behavioral Management Committee (BMC) for a disciplinary hearing. *Id.* at 18. Gomez alleges that he did not receive prior notice of the disciplinary charge or hearing and was not advised of or afforded his constitutional rights at the hearing. *Id.* at 18. At the hearing, Gomez admitted to sending the text message. *Id.* at 122. Defendant James Winckler and other BMC members ultimately found Gomez guilty of attempting to communicate with his victim daughter by text message through two of his approved contacts. *Id.* at 122. As punishment, the BMC imposed "7-day wing restriction with time served;" "30-day dorm restriction;" and "180 days of package ineligibility." *Id.* at 168. Gomez alleges that, on the same day, after the hearing, Lamb County Deputy Weston informed him that there was no basis to bring any criminal charges against him based on the incident. *Id.* at 19. Five days later, Gomez's tier demotion, which had been approved on November 5 (five days before the BMC hearing), became effective. *Id.* at 121.

Gomez subsequently filed several internal grievances about his demotion in tier status, which were ultimately denied by the TCCO. *Id.* at 88–101. Specifically, on November 18, 2021, Gomez filed a Step 1 grievance complaining that, in light of the fact that there was no

3

probable cause to criminally charge him for the underlying incident, the sanctions imposed against him were excessive. *Id.* at 89–90. Defendant Wayne Schmoker denied the grievance on the grounds that the BMC had determined that Gomez's actions were sufficient to find that he had violated a TCCC rule and that "conduct by outside law enforcement agency does not impact the TCCC administrative process." *Id.*

On November 29, 2021, a TCCC nurse practitioner, Miranda Newkirk, approved a "bottom bunk pass" for Gomez for 60 days to accommodate his left-knee pain. *Id.* 188. The record states that "the only person who can override this protocol is the Health Services Administrator/Directors of Nurses. Physicians and other providers are not involved in the ordering of bottom bunks or comfort items." *Id.* On March 16, 2022, Nurse Newkirk approved a bottom bunk pass for Gomez for an additional 60 days. *Id.* at 189. On May 20, 2022, Dr. Eric Guy examined Gomez, noted his left-knee pain and scheduled a MRI, and stated "bottom bunk until knee issue resolved." *Id.* at 179.

On May 25, 2022, Judge Janet Leal of the 103rd Judicial District Court, Cameron County, Texas entered an order nullifying the TCCO's decision to demote Gomez's treatment tier. *Id.* at 186. Judge Leal found that the demotion was not warranted because the "incident and follow-up actions were not in compliance with Texas Health and Safety Code, Chapter 841.0834(d) as a hearing was not held within 90 days." *Id.* Judge Leal ordered the TCCO to restore Gomez's status to Tier Four housing and redact the matter in its records to ensure that Gomez would not face any future negative consequences because of the incident. *Id.*

On June 6, 2022, because no change had been made in his tier level, Gomez presented Judge Leal's order to Defendants Gonzales and Schmoker and asked them if and when they were going to comply with it. *Id.* at 25. The next day, Defendant Schmoker and Sergeant Michael Arnivas forced Gomez to move to a top bunk by threatening to place him in "SMU" and bring a major disciplinary action against him if he did not. *Id.* at 60. Gomez alleges that

4

Defendant Captain Fisher made similar threats and told him that Nurse Practitioner Jennifer Urbina had rescinded his bottom bunk pass. *Id.* at 25, 61. Gomez alleges Fisher lied and that there are no medical records to show that his bottom bunk pass was ever rescinded or altered. *Id.* at 61.

On June 9, 2022, Gomez was attempting to climb up onto his top bunk and fell five feet onto the ground, causing him to sustain pain in his left elbow and right knee. *Id.* at 61–62; 196–98. On June 13, 2022, Defendant James Winckler told Gomez that he did not care what Dr. Guy said because Winckler felt it was unfair for Gomez to have a bottom bunk while older patients at TCCC did not have one. *Id.* at 63. On June 15, 2022, Gomez was transported to Lamb County Healthcare Center for an MRI of his left knee. *Id.* at 202. The radiologist noted a small Baker cyst and "concern" for a lateral-meniscus tear. *Id.* On June 17, 2022, Nurse Jennifer Urbina issued further bottom bunk orders, and Winckler was notified of them. *Id.* at 184.

On June 24, 2022, MTC/TCCC Health Services Administrator/Director of Nurses Ms. Graves told Gomez that he still had an authorized bottom bunk pass and that, because of the condition of his left knee, he should not be assigned to a top bunk under any circumstances. *Id.* at 65. Ms. Graves called Defendant James Winckler to express her concern, and he stated that Gomez would be moved from a top bunk as soon as the facility's "COVID Limited Movement Protocol Status" was lifted. *Id.* at 66. On June 30, 2022, after such status was lifted, Ms. Graves called Winckler to reiterate that Gomez needed a bottom bunk. *Id.* On October 3, 2022, Gomez was returned to a bottom bunk. *Id.* at 66.

In September or October of 2022, Gomez asked fellow civil detainee Gerald Wilson if he could help him file a civil-rights lawsuit under 42 U.S.C. § 1983. *Id.* at 28. Wilson agreed to do so without compensation. *Id.* Gomez alleges that, at this point in time, Defendants had still not complied with Judge Leal's May 25, 2022 order to restore him to Tier Four housing and

treatment. *Id.* at 30. On September 26, 2022, following a hearing, Judge Leal entered a second order instructing that Gomez be returned to Tier Four housing and supervision. *Id.* at 119.

On November 10, 2022, Officer Javier Vega, as part of an investigation of an allegation that Wilson was getting paid to do other residents' homework and legal work, confiscated Wilson's word processor that contained Gomez's legal work. *Id.* at 29. On November 18, 2022, Officer Vega returned Wilson's computer and directed him to not do any legal work for clients and delete every document in his word processor that had another client's name on it. *Id.* at 112–115. When Wilson later reviewed the files and documents on his computer, he noticed that Gomez's Section 1983 complaint documents had been deleted or reformatted.

Gomez alleges that, as of July 11, 2023, when he filed his complaint, Defendants "continue to disregard and utterly defy" Judge Leal's September 26, 2022 order to return him to Tier Four housing and supervision. *Id.* at 31.

2.   **Legal Standards**

   A.   **Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Terwilliger v. Reyna*, 4 F.4th 270, 279 (5th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.

Under this standard, all well-pleaded facts are viewed in the light most favorable to the plaintiff, but the plaintiff must allege facts that support each element of the cause of action in order to state a valid claim. *See City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 154–55 (5th Cir. 2010). Factual allegations must be enough to raise a right to relief above the

speculative level. *City of Clinton, Ark.*, 632 F.3d at 153 (citing *Iqbal*, 556 U.S. at 678). The court does not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (citations omitted). Further, any ambiguities in the controlling substantive law must be resolved in the plaintiff's favor. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citing *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001)).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint; (2) documents attached to the complaint; and (3) matters of which judicial notice may be taken under Federal Rule of Civil Procedure 201. *Walker*, 252 F.3d at 735 (citations omitted). Judicial notice may be taken of matters of public record. *Id.*

B.   **Section 1983**

To state a claim for relief under 42 U.S.C. § 1983, the plaintiff must allege that (1) some person has deprived him of a federal right; and (2) that the person acted under color of state or territorial law. *See Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).

A Section 1983 plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation. *James v. Texas Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008) (citing *Anderson v. Pasadena Inep. Sch. Dist.*, 184 F.3d 439, 445 (5th Cir. 1999)). A supervisor is not personally liable for his subordinate's actions in which he had no involvement. *Anderson*, 184 F.3d at 443–44.

3.     Analysis[2]

Gomez claims that Defendants violated his First, Eighth, and Fourteenth Amendment rights. He also claims that Defendants unlawfully retaliated against him and violated the ADA.

### A.     Fourteenth Amendment

The purpose of civil commitment is to treat the individual's mental health and protect him and society from his potential dangerousness. *Richards v. McLane*, No. 21-20450, 2023 WL 6533453, at *7 (5th Cir. Oct. 6, 2023) (citing *Jones v. United States*, 463 U.S. 354, 368 (1983)). Civilly committed persons are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982). "Additionally, 'due process requires that the conditions and duration of confinement bear some reasonable relation to the purpose for which persons are committed.'" *Richards* 2023 WL 6533453, at *7 (ellipses omitted) (quoting *Selling v. Young*, 531 U.S. 250, 265 (2001)).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who would seek to invoke its procedural protections must establish that one of these interests is at stake." *Richards*, 2023 WL 6533453, at *7 (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). Courts use a two-step inquiry when considering procedural due process claims. "The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* (quoting *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010)).

Gomez claims that Defendants violated his Fourteenth Amendment right to due process. He contends that he has a protected liberty interest in progressive treatment and eventual release

---

[2] The Court notes at the outset that Defendants, in their motions, do not thoroughly address Gomez's alternative factual bases for his various constitutional claims. Nor do they cite any cases that specifically address the standards that apply to constitutional claims raised by civilly committed sexually violent predators.

from civil commitment under the tiered supervision and treatment program established by the Texas Health & Safety Code. *See* Tex. Health & Safety Code §§ 841.083, 841.0831. He also claims that his change in tier status negatively impacted his ability to earn income under the "MTC Vocational Work Program." His claims are based on two events: (1) the November 10, 2021 disciplinary hearing related to his attempt to contact a victim; and (2) the earlier November 5, 2021 decision to demote his tier status based on the same incident. Gomez alleges that, at the disciplinary hearing, he was not afforded all the process to which he is entitled under *Wolff v. McDonnell*, 418 U.S. 539 (1974) and that the decision to demote his tier status was made by an arbitrary use of power with no process whatsoever.

### i. MTC Defendants

The MTC Defendants argue that Gomez's claim fails because he has no liberty interest in the privileges that he lost, his temporary dorm restriction, or his tier status. Dkt. No. 31 at 21–22. Alternatively, they argue that, even if Gomez has stated an underlying liberty interest, he was afforded all the process due to him under *Wolff*.

The Court agrees that Gomez fails to state a plausible due process claim against the MTC Defendants based on the November 10, 2021 disciplinary hearing. The exhibits attached to Gomez's complaint show that, as of November 10, 2021, although Gomez had been temporarily placed in the "SMU," he was still designated as Tier Four. *Id.* at 121–122. The punishment imposed by the BMC against Gomez because of the disciplinary hearing only included a "7-day wing restriction with time served;" "30-day dorm restriction;" and "180 days of package ineligibility." *Id.* at 122. It did not include a change in his tier status. Importantly, Gomez does not complain about the specific punishment imposed by the BMC or contend that he has a protected liberty interest in the privileges that he temporarily lost.

The MTC Defendants do not meaningfully address Gomez's claim based on the November 5, 2021 change to his tier status, which was made prior to and pursuant to an administrative process that appears to be separate and distinct from the disciplinary hearing. Instead, they cite *Malchi v. Thaler*, 211 F.3d 953 (5th Cir. 2000) for the general proposition that

9

Gomez does not have a constitutional expectancy of early release. In *Malchi*, the Fifth Circuit analyzed whether a state prisoner has a constitutional expectancy of early release under Texas parole law and its mandatory supervised release program. *Malchi*, 211 F.3d at 957–958. Because Gomez is not a prisoner and this case involves his treatment under a civil statute, the Court, at this stage of litigation, is not persuaded that caselaw related to prison-disciplinary hearings govern the adjudication of Gomez's claims. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 323–24 (5th Cir. 2021) (acknowledging that the Fifth Circuit has not expressly decided which standard should apply to procedural due process claims by civilly committed SVPs). However, because Gomez does not plead any facts to show that any of the MTC Defendants were personally involved in the November 5 decision to change his tier status, he fails to state a plausible due process claim against them based on that decision. Moreover, the documents attached to Gomez's complaint reflect that Defendant Gonzales and Gomez's treatment provider, Charles Gill, made that decision five days before the disciplinary hearing. *Id.* at 121.

### ii.   Defendant Gonzales

#### a.   Official Capacity

Gonzales first argues that, to the extent that Gomez seeks to recover monetary damages from her in her official capacity, he fails to state a plausible Section 1983 claim against her. The Court agrees. Because "officials" do not qualify as "persons" for purposes of Section 1983, Gomez may not bring an action seeking monetary damages from an official in her official capacity under that statute. *See Martinez v. McLane*, 792 F. App'x 282, 285 (5th Cir. 2019) (citing *Will v. Mich. Dep't of Sate Police*, 491 U.S. 58, 71 (1989)).

Next, Gonzales argues that the Court lacks jurisdiction to adjudicate Gomez's claim for declaratory and injunctive relief brought against her in her official capacity because they constitute claims against the State of Texas, which is immune from suit under the Eleventh Amendment. The Court disagrees, at least for now.

The Court acknowledges that the Eleventh Amendment generally shields a state from suits brought by its own citizens. However, in *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court carved out a significant exception to this immunity. The Court held that, because acts by state officials that are contrary to federal law cannot be authorized or ratified by the states, suits seeking to enjoin such wrongful acts are not suits against the state, and a federal court's injunction against such wrongful acts is not a judgment against the state itself. *See Saltz v. Tennessee Dep't of Emp. Sec.*, 976 F.2d 966, 968 (citing *Young*, 209 U.S. at 123). To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory and injunctive in nature and prospective in effect. *Aguilar v. Texas Dep't of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (citations omitted).

Here, Gomez brings claims for injunctive and declaratory relief against Gonzales in her official capacity as an agent of the State of Texas. And, for the reasons explained below, the Court finds that Gomez has stated a plausible due process claim against Gonzales. In turn, the Court finds that Gomez's related claims for declaratory and injunctive relief brought against Gonzales in her official capacity are not, at this stage of litigation, barred by the Eleventh Amendment.

### b. Individual Capacity

Gonzales argues that Gomez fails to state a plausible due process claim against her for the same reasons argued by the MTC Defendants. Dkt. No. 32. Like them, her motion only addresses the process afforded to Gomez at the November 10, 2021 disciplinary hearing. Again, because Gomez does not specifically complain about the punishment that he received by the BMC or otherwise establish that he has a protected liberty interest in the temporary privileges he lost as a result, the Court agrees that Gomez fails to state a plausible due process claim against Gonzales based on the disciplinary hearing.

Gomez's claim against Gonzales based on the November 5, 2021 change to his tier status is a different matter. As noted by Gomez, Section 841.0834 of the Texas Health & Safety

11

Code establishes a procedure by which a civilly committed sexually violent predator may be transferred between programming tiers. Gomez alleges that his committing court was never contacted or notified about the change in his programming tier, which he contends was required under the statute. In her motion, Gonzales does not acknowledge or attempt to refute Gomez's legal contention that he has a protected liberty interest in progressive treatment and eventual release from civil commitment under the statue. Nor does she address what, if any, process Gomez was entitled to receive before or after his tier status was changed.

Gonzales authorized the November 5 change to Gomez's tier status. Judge Leal later determined that it was improper. She issued two orders directing the TCCO to return Gomez to Tier Four treatment and housing. In the first order, Judge Leal specifically found that "the incident and follow-up actions were NOT in compliance with Texas Health and Safety Code, Chapter 841.0834(d) because a hearing was not held within 90 days, and the actions were not warranted." Dkt. No. 1 at 103. Four months later, following a hearing, Judge Leal entered a second order instructing the TCCO to return and transfer Gomez to Tier Four. *Id.* at 119. Gomez alleges in his complaint that Gonzales refuses to comply with Judge Leal's orders, which impedes his treatment progress.

Viewing the evidence in the light most favorable to Gomez, the Court concludes that he has stated a plausible due process claim against Gonzales based on the November 5, 2021 change to his tier status.

    **B.**    **Eighth Amendment**

Gomez next claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when they moved him to a top bunk in contravention of valid medical restrictions. Gomez alleges that he was forced to use a top bunk for approximately four months—from June 7 to October 3, 2022. During that time, Gomez fell to the floor while attempting to climb up to his top bunk, causing him to sustain pain.

### i. MTC Defendants

The MTC Defendants argue that Gomez fails to state a plausible claim because he fails to show that they were deliberately indifferent to his serious medical needs. They contend that denying him a bottom bunk amounts to negligence or a disagreement with medical treatment, which insufficient to establish an Eight Amendment violation. While that may be true, as explained below, it is unclear what standard applies to medical claims raised by civilly committed plaintiffs in this circuit. It is also unclear whether having access to a bunk bed constitutes medical care. Defendants do not address these matters.

The Fourteenth Amendment provides a civilly committed individual the rights to adequate living conditions and medical care. *Welsh v. Cammack*, No. 23-10961, 2024 WL 3649583, at *4 (5th Cir. Aug. 5, 2024) (citing *Youngberg v. Romero*, 457 U.S. 307 (1982)). The *Youngberg* Court explained that civilly committed individuals are afforded more considerate treatment and conditions of confinement than prisoners whose conditions of confinement are designed to punish. *Id.* (citations omitted). Balancing the rights of those involuntarily committed and the State's legitimate interest in confinement, the Court crafted the *Youngberg* test, under which "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." *Id.* On the other hand, the deliberate indifference standard, which is an extremely high standard to meet, requires that the official knew of and consciously disregarded an excessive risk to health or safety. *Id.* (citing *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 755 (5th Cir. 2001)). The Fifth Circuit has not yet decided the appropriate standard to apply to medical care claims from civilly committed plaintiffs. *Id.* (citing *Miguel v. McLane*, No. 22-10517, 2024 WL 747232 (5th Cir. Feb. 23, 2024) (per curiam)).

After viewing the facts and any ambiguities in the law in the light most favorable to Gomez, the Court finds that he has stated a plausible Section 1983 medical care claim against Defendant Winckler only. After Gomez's June 9, 2022 fall from the top bunk, Winckler was

notified on multiple occasions by Gomez himself and Nurses Urbina and Graves that, to accommodate Gomez's left knee injury, TCCC medical staff had issued orders that Gomez remain in a bottom bunk until his knee issues were resolved. Despite this knowledge, Winckler refused to return Gomez to a bottom bunk until four months later. In his motion, Winckler offers different reasons for denying Gomez a bottom bunk. However, at this stage of litigation, the Court must view all facts in the light most favorable to Gomez.

The Court agrees that Gomez has failed to state such a plausible medical care claim against Defendants Schmoker and Fisher. Although Gomez pleads facts to show that Schmoker and Fisher were involved in moving him to a top bunk, he does not plead sufficient facts to show that, when they did so, they had personal knowledge of his medical restrictions or the extent of his knee injury.

### ii. Defendant Gonzales

Defendant Gonzales argues that Gomez fails to state a plausible medical care claim against her because he does not plead sufficient facts to show her personal involvement. The Court agrees. Gomez does not plead any facts to show that Gonzales had personal knowledge of the medical staff orders that Gomez remain in a bottom bunk until his knee issues were resolved. Nor does Gomez plead any facts to show that Gonzales was personally involved in the decision to move him to a top bunk or otherwise deny him any type of medical care.

### C. First Amendment

Gomez then claims that Defendants violated his First Amendment right to access the courts. His claims are based on two events: (1) Gonzales confiscating his cell phone during a conversation with his attorney; and (2) Defendant Fisher directing resident Wilson to delete any legal work related to Gomez's civil-rights action from his computer.

To prevail on a claim of a denial of right of access to the courts, a civilly committed sexually violent predator must show that his ability to pursue a nonfrivolous claim was hampered by the defendants' actions and that his position as a litigant was prejudiced by the alleged violation. *See Welsh v. Correct Care Recovery Sols.*, 845 F. App'x 311, 319 (5th Cir. 2021) (citing

*Lewis v. Casey*, 518 U.S. 343, 351–53 & n.3 (1996)); *see also Day v. Seiler*, 560 F. App'x 316, 318–19 (5th Cir. 2014) (applying *Lewis* to an access-to-courts claims raised by civilly committed sexually violent predator).

The MTC Defendants and Defendant Gonzales argue that Gomez fails to state a plausible First Amendment claim against them because he fails to plead any facts to show that, as a result of their actions, his position as a litigant was prejudiced. The Court agrees. Despite Defendants' actions, Gomez has successfully gained access to his committing state court and this court.

### D.    Retaliation

Liberally construing Gomez's complaint, he alleges that Defendants retaliated against him for exercising his First Amendment rights. His claims appear to be based on (1) the November 5, 2021 change to tier status; (2) his June 7, 2022 movement to a top bunk; and (3) Defendants' ongoing refusal to restore him to Tier Four.

A valid retaliation claim requires a plaintiff to allege that: (1) he exercised a specific constitutional right; (2) the defendant intended to retaliate against him because he exercised that right; (3) he experienced a retaliatory adverse act; and (4) the adverse act would not have occurred but for a retaliatory motive. *Cammack*, No. 23-10961, 2024 WL 3649583, at *4 (citing *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999)). An actionable retaliatory adverse act is one capable of deterring a person of ordinary firmness from further exercising his constitutional rights. *Id.* (citations omitted). A plaintiff must offer direct evidence of motivation or allege a chronology of events from which retaliation may plausibly be inferred. *Id.*

#### i.    MTC Defendants

The MTC Defendants argue that Gomez fails to state a plausible retaliation claim against them because Gomez does not plead any facts to show that they (1) were personally involved in the decision to demote Gomez's tier status; or (2) in moving Gomez to a top bunk, had intent to retaliate against him for exercising a constitutional right. The Court agrees in part.

Because Gomez does not plead any facts to show that the MTC Defendants were, at any point in time, personally involved in either making the November 5, 2021 decision to reduce

Gomez's tier status or later refusing to restore him to Tier Four, he fails to state a plausible retaliation claim against them based on those events.

However, after reviewing the facts in the light most favorable to Gomez, the Court concludes that he has stated a plausible retaliation claim against Defendants Schmoker and Fischer based on his movement to a top bunk. On June 6, 2022, Gomez presented a copy of Judge Leal's May 25, 2022 order to restore his treatment status to Tier Four to Gonzales and Schmoker. Gomez asked them if and when they would comply with it. The next day, Schmoker and Fisher, along with Sergeant Michael Arnivas, forced Gomez to move to a top bunk by threatening to place him in "SMU" segregation and lodge a disciplinary action against him if he did not. In addition, Fisher falsely told Gomez that his bottom bunk pass had been rescinded. This chain of events, when considered in conjunction with Gomez's allegations that Fisher lied and the medical staff never rescinded any of its orders that he be afforded a bottom bunk, plausibly infer a retaliatory animus on behalf of Schmoker and Fisher.

Because Gomez does not plead any facts to show that Defendant Winckler was personally involved in the initial arguably adverse act of moving him from a bottom bunk to a top bunk, he fails to state a plausible retaliation claim against him based on that event.

### ii. Defendant Gonzales

Gonzales argues that Gomez fails to state a plausible retaliation claim against her because he fails to demonstrate a chronology of events from which retaliatory intent may be inferred. The Court disagrees.

As Gomez's case manager, Gonzales approved the November 5 change to Gomez's tier status. Gomez challenged the legality of the change in his committing state court. He was successful. On May 25, 2022, Judge Leal found the demotion in Gomez's tier status was not authorized and nullified the TCCO's decision to move him to more restrictive housing. Dkt. No. 1 at 103. On June 6, 2022, Gomez presented that order to Gonzales and Schmoker and asked them if and when they were going to comply with it. The next day, despite a standing

16

medical order that Gomez be afforded a top bunk until his knee issue resolved, Gomez was forced to move to a top bunk under the threat of segregation and disciplinary action.

In September 2022, Judge Leal entered a second order instructing that Gomez be returned to Tier Four housing and supervision. In September or October 2022, Gomez began preparing a civil-rights complaint with the help of fellow resident Wilson, who was later forced to delete any legal work related to Gomez. As of July 11, 2023, when Gomez filed this complaint, Gonzales was still refusing to comply with Judge Leal's orders.

It is unclear whether Gonzales had any influence or personal involvement in making the decision to move Gomez to a top bunk or knowledge that he was preparing a civil-rights lawsuit against her. But at this stage of litigation, the Court must view and draw any reasonable inferences from the facts in the light most favorable to Gomez. Having done so, the Court finds that the chronology of events is sufficient to infer plausible retaliatory intent on behalf of Gonzales. The crux of Gomez's complaint is that Gonzales unlawfully changed his tier status. Gomez sought and obtained appropriate relief in state court. Afterward, in an attempt to seek redress and compliance with Judge Leal's order, Gomez confronted Gonzales and Schmoker with a court order that substantiated his complaint and confirmed Gonzales's error. The very next day, Gomez was moved to a top bunk by Schmoker and others under hostile circumstances. Since that time, Gonzales continually refuses to restore Gomez to Tier Four, which has delayed his treatment progress and release from TCCC.

### E.     ADA

Gomez also claims that Defendants failed to accommodate his limited mobility and dexterity caused by his knee injury, in violation of the Americans with Disabilities Act (ADA). Dkt. No. 1 at 26. His claim appears to stem from the fact that he was denied a bottom bunk and, when forced to move to a top bunk, was not provided proper equipment that allowed him to safely access it.

To establish a valid ADA claim, a plaintiff must show that (1) he has a qualifying disability; (2) he is being denied the benefits of services, programs, or activities for which the

17

public entity is responsible, or is otherwise discriminated against by the public entity; and (3) such discrimination is by reason of his disability. *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 574 (5th Cir. 2018). A plaintiff can establish the third prong by showing that the defendants have failed to make reasonable accommodations. *See Valentine v. Collier*, 993 F.3d 270, 290 (5th Cir. 2021). A plaintiff proves a failure to accommodate by showing that the disability and its consequential limitations were known by the covered entity, and the entity failed to make reasonable accommodations. *Id.*

### i. The MTC Defendants

The MTC Defendants argue that Gomez fails to state a plausible ADA claim against them in their individual capacities because they cannot be sued individually under the ADA. They also argue that Gomez's ADA claim otherwise fails because he does not plead any facts to show that he was denied a bottom bunk because of his disability.

The Court agrees with the MTC Defendants in part. Because a plaintiff cannot sue defendants in their individual capacities under the ADA, Gomez fails to state a plausible claim for relief under the ADA against the MTC Defendants in their individual capacities. *See Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999). However, as previously noted, a plaintiff can establish the requisite discrimination by showing a failure to accommodate. Because the MTC Defendants do not address this point and do not otherwise respond to Gomez's ADA claims brought against them in their official capacities, the Court will allow these claims to proceed at this time.

### ii. Defendant Gonzales

Because Gonzales does not address Gomez's ADA claim in her motion, to the extent that Gomez intends to bring one against her, the Court will allow Gomez to proceed with his claim against her in her official capacity only.

**4.   Gomez's Motions**

Gomez's request for the Court to order TCCO Director, Marsha McLane, to reassign him a new TCCC case manager in light of this ongoing litigation involving Gonzales is denied. Dkt. No. 36. Director McLane is not a named party to this action, and Gonzales fails to demonstrate that such extraordinary injunctive relief is authorized or warranted at this stage of litigation. *See* Fed. R. Civ. P. 65. Although Gomez will be allowed to proceed with some of his claims against Gonzales, the Court, at this early stage of litigation, without having the benefit of discovery, expresses no opinion as to whether Gomez will be able to prevail on his claims against her. The Court will adjudicate Gomez's claim for injunctive relief, as stated in his complaint, in due course. He has not demonstrated that he is entitled to preliminary injunctive relief at this time.

Gomez's request for the Court to order that counsel for all named defendants always send him full copies of any pleadings to his physical address is dismissed as unnecessary. Dkt. No. 33. After reviewing the docket sheet, it appears that Defendants have properly served all pleadings on Gomez.

**5.   Conclusion**

For the reasons discussed above, the MTC Defendants and Defendant Gonzales's motions to dismiss are granted in part and denied in part. Dkt. Nos. 31, 32.

Gomez's following claims are dismissed with prejudice for failure to state a plausible Section 1983 claim: (1) Fourteenth Amendment claims against the MTC Defendants; (2) Fourteenth Amendment claim for damages brought against Defendant Gonzales in her official capacity; (3) Medical care claims against Defendants Schmoker, Fisher, and Gonzales; (4) Retaliation claim against Defendant Winckler; and (5) ADA claims against the MTC Defendants and Defendant Gonzales in their individual capacities.

Gomez will be allowed to proceed with the following claims: (1) Fourteenth Amendment claim for declaratory and injunctive relief brought against Defendant Gonzales in her official capacity; (2) Fourteenth Amendment claim for damages brought against Defendant Gonzales in her individual capacity; (3) Medical care claim against Defendant Winckler; (4) Retaliation claims against Defendants Schmoker, Fisher, and Gonzales; and (5) ADA claims against the MTC Defendants and Defendant Gonzales in their official capacities.

Additionally, Gomez's motion for the Court to reassign him a new TCCC case manager, Dkt. No. 36, is denied, and his request for the Court to order service of pleadings, Dkt. No. 33, is dismissed as unnecessary.

So ordered.

The Court will enter a separate scheduling order setting deadlines for completion of discovery, other pretrial matters, and the filing of dispositive motions.

Dated March 10, 2025.

                                                James Wesley Hendrix
                                                United States District Judge